of such investigation, HANDELSBANKEN was forced to terminate Defendants' merchant agreement, halting the processing of credit-card funds.

32. On information and belief, HANDELSBANKEN, even after Visa/Mastercard's reprimand and demand for termination of accounts, did not fire the two employees responsible for having improperly opened Defendants' accounts; to the contrary, the two employees, Paul Breakspeare and Sarah Gustafsson, were merely reassigned to London, and Sweden, respectively. In effect, to this day, on information and belief, HANDELSBANKEN maintains it is continuing to "investigate" its role in the Defendants transactions, but with no apparent conclusion or resolution. In addition, Plaintiff is informed and believes, and thereupon alleges, that HANDELSBANKEN continues to permit JOHANSSON to operate and transact other business through the FACTOR EUROPE account, which conveniently remains open.

### DEFENDANT JOHANSSON'S HISTORY OF BANKING FRAUD

33.. Defendant JOHANSSON'S acquisition of the essential Visa/Mastercard merchant account with HANDELSBANKEN, complete with the aura of legitimacy conveyed thereby, enabled Defendants to access and appropriate Plaintiff's funds. On information and belief, Defendant JOHANSSON had been refused such accounts at various other banking institutions. In effect, JOHANSSON was only able to secure the HANDELSBANKEN account through various bribes/kickbacks, as well as profit-sharing arrangements with HANDELSBANKEN, which motivated the banking entity to provide substantial assistance to Defendants' fraudulent scheme.

34. Indeed, JOHANSSON'S history of fraudulent banking transactions alone should have more than foreclosed his ability to secure a merchant account at any institution, including HANDELSBANKEN. For example, on information and belief, until mid-2003, JOHANSSON was sole shareholder and owner of Bank Crozier in Granada, which lost its banking license in April 2003, and was liquidated by court-order on July 24, 2003 as a result of rampant fraud and abuse of depositors' money.

COMPLAINT                                        11

35.  At the time of liquidation, the court-appointed liquidator issued multiple reports accusing JOHANSSON of converting $11.5 million from depositors' funds for his own use, including helping himself to numerous unsecured loans from depositors' accounts. The liquidator's reports concluded that "The CEO Mr. Peter Johansson and his friends used the bank as a vehicle to extract funds from legitimate depositors and to utilize these funds for their own purpose. Clearly steps must be taken to ensure that legal proceedings are instituted against these individuals with regard to their outstanding balances and loans that are unpaid," and further stated that "millions of dollars were transferred to Peter Johansson, either directly or through vehicles in which they had a beneficial interest." On information and belief, JOHANSSON was also accused of using the Bank of Crozier to launder money.

36.  Plaintiff is informed and believes and thereupon alleges that JOHANSSON'S involvement in the Bank of Crozier scheme was no isolated incident; rather Defendant JOHANSSON has been arrested and jailed multiple times due to various accusations of fraud, including with respect to internet banking ventures.

37.  Plaintiff is also informed and believes and thereupon alleges that JOHANSSON and the other Defendants are being investigated by the Swedish Economics Crime Bureau, and Scotland Yard, with the latter in particular, specifically, investigating HANDELSBANKEN'S involvement in Defendants' multi-million dollar fraudulent scheme.

39.  On further information and belief, in the context of the Bank Crozier collapse, JOHANSSON also apparently failed to pay Mastercard nearly $500,000 in fees, causing Mastercard to terminate membership. Mastercard only recovered these funds after JOHANSSON was removed from the Bank of Crozier. Accordingly, Plaintiff is informed and believes that HANDELSBANKEN'S merchant relationship with JOHANSSON was contrary to Mastercard's mandatory rules, and therefore remained intentionally undisclosed and unknown to Visa/Mastercard.

COMPLAINT                                                                                         12

40. Plaintiff is informed and believes and thereupon alleges that Defendant NOLTER'S background history reveals a similar pattern of criminal activity, including through numerous online processing entities that have been accused of stealing funds. On further information and belief, NOLTER also has a felony criminal record, and ties to collapsed banking entities in Granada, as well. ERIC NOLTER also, on information and belief, has extensive involvement in online credit card processing schemes, and has accordingly changed his name to ARYKSIN NOBLE in an attempt to conceal his background.

## ECS' AGREEMENT WITH DEFENDANTS

41. Beginning on or about July 29, 2004, having been induced by Defendants' purportedly approved Visa/Mastercard banking relationship through HANDELSBANKEN, ECS entered into an agreement with Defendants for processing of ECS' merchant credit card transactions. Accordingly, beginning in August 2004 and ending in July 2005, Defendants processed ECS' merchants' credit-card transactions through their relationship with HANDELSBANKEN. HANDELSBANKEN, acting on Defendants' behalf, indeed acquired the funds from Visa/Mastercard, eventually settling them in JOHANSSON'S account in the name of FACTOR EUROPE located in HANDELSBANKEN'S London branch.

42. By June 2005, Defendants had secured from Visa/Mastercard, but failed to turn over to Plaintiff some $6,236,372 in funds. On information and belief, at HANDELSBANKEN's instruction, Visa/Mastercard had indeed dispersed these funds into the FACTOR EUROPE account; however, as had occurred with accounts at the Bank of Crozier, these funds mysteriously disappeared on Defendant JOHANSSON'S watch.

43. Despite repeated demands that the Defendants turn over to ECS the $6 million in funds in issue, and repeated representations from Defendants, including JOHANSSON and NOLTER, that such funds were forthcoming, Defendants continued

COMPLAINT                                                13

and continue to retain such sums. At the outset, Defendants claimed that the funds were being held back to protect against charge-backs, referring to customer returns or refunds that might need to be eventually credited back to Visa/Mastercard. ECS relied on this representation; however, with the elapse of greater and greater periods of time, it became clear that this representation was false.

44. Accordingly, in a March 20, 2006 e-mail to JOHANSSON, ECS noted that six months had elapsed since processing had ceased, all banking funds should have been released to Defendants, and all chargebacks long accounted for -- thus, demanding that the unaccounted for $6,236,372 be immediately turned-over to ECS and its merchants. Notwithstanding the same, Defendants have failed and refused to return any of these funds, offering no explanation for such willful conduct.

45. As a result of Defendants' conduct, ECS' merchants have been deprived and denuded of millions, and hundreds of New York consumers, who made purchases from ECS' merchants online, likewise await the return of funds to their New York issuing banks.

46. Defendants have acted maliciously and wantonly, with oppression, insult, wanton or reckless disregard of the Plaintiff's rights in looting $6 million of merchant funds, entitling Plaintiff to punitive damages in the form of a percentage of Defendants' profits, but no less than $25 million.

**FIRST CLAIM FOR RELIEF**
**(Against JOHANSSON, NOLTER, ERIC NOLTER and FACTOR EUROPE)**
**(Conversion)**

47. Plaintiff incorporate paragraphs 1 - 46 herein as if set forth in full.

48. On or about March 20, 2006, Defendants converted $6,236,372 of Plaintiff's funds. The funds in issue belonged to ECS and its respective merchants, who were the owners of such monies and entitled to immediate possession thereof.

49. Defendants initially took possession of the funds lawfully pursuant to an agreement that related entities would process Plaintiff's credit cards, settle such funds

from Visa/Mastercard, and deposit them into a merchant account at HANDELSBANKEN. These funds were then to be wired to ECS' account at Lloyd's TSB Bank.

50. Over the course of the period from August 23, 2004, till July 17, 2005, Defendants came into possession of $6,236,372 of Plaintiff's money, which funds were eventually settled by Visa/Mastercard into Defendants' HANDELSBANKEN account in London in the name of FACTOR EUROPE, but never surrendered to ECS or its merchants.

51. On March 20, 2006, ECS demanded the return of the $6,236,372 in funds.

52. Notwithstanding such demand, Defendants have failed and refused to return any of these funds. ECS' funds, which were settled into Defendants' FACTOR EUROPE account, have been removed and transferred elsewhere by Defendants, and never surrendered to ECS.

53. Defendants have unlawfully converted $ 6,236,372 to their own use. Accordingly, Plaintiff has been damaged in the amount of $6,236,372, plus special damages in an amount to be proven at trial as a result of damage to Plaintiff's business reputation and credit.

54. Plaintiff is also entitled to punitive damages because Defendants acted maliciously and wantonly, with oppression, insult, wanton or reckless disregard of the Plaintiff's rights or other circumstances of aggravation in converting millions of dollars from ECS' merchants. Defendants engaged in intentional and deliberate wrongdoing; with aggravating or outrageous circumstances; had a fraudulent or evil motive; or engaged in a conscious act that willfully and wantonly disregarded the rights of Plaintiff, justifying such award.

## SECOND CLAIM FOR RELIEF
### (Against HANDELSBANKEN)
### (Aiding & Abetting Conversion)

55. Plaintiff incorporate paragraphs 1 - 46 herein as if set forth in full.

56. Defendants JOHANSSON, NOLTER, ERIC NOLTER, and FACTOR EUROPE unlawfully converted $6,236,372 in funds to their own use, which funds belong to ECS and its merchants.

57. Defendant HANDELSBANKEN, in turn, aided and abetted such conversion by providing the other Defendants with substantial assistance. HANDELSBANKEN had actual knowledge that Defendants were engaged in the process of converting Plaintiff's funds.

58. Via the payment of assorted kickbacks or bribes and/or by allowing HANDELSBANKEN employees to participate in the profits of their fraudulent scheme, JOHANSSON was able to secure a necessary and indispensable banking 'relationship' with HANDELSBANKEN, complete with the all-crucial "merchant account," and access to Visa/Mastercard. In the same vein, HANDELSBANKEN, by opening such merchant accounts, permitted the other Defendants to appear as if they were sponsored by and approved of by Visa/Mastercard, allowing all Defendants to exploit this apparent stamp of legitimacy and induce greater and greater access to merchant funds.

59. HANDELSBANKEN further aided and abetted Defendants' conversion by concealing and overlooking Defendants' considerable history of fraudulent banking transactions, which should have precluded their ability to secure a merchant account at any institution, including HANDELSBANKEN. In fact, on information and belief, as HANDELSBANKEN was well aware, among other things, that only a year or so earlier, JOHANSSON had been accused of converting $11.5 million from depositors' funds for his own use, causing the collapse of the Crozier Bank. Defendant had also been CEO and sole shareholder of an entity whose merchant relationship was terminated by Mastercard. On information and belief, HANDELSBANKEN'S merchant relationship

COMPLAINT                                                                 16

1  with JOHANSSON was contrary to Mastercard's mandatory rules, and therefore went
2  intentionally undisclosed and unknown to Visa/Mastercard, thus, permitting Defendants
3  to enjoy an account to which they otherwise had no right, and without which they could
4  not have converted millions of dollars in Plaintiff's funds.

5    60.    On information and belief, under Visa/Mastercards rules and procedures,
6  HANDELSBANKEN, as the acquiring bank, was obligated to subject Defendants
7  JOHANSSON, NOLTER, ERIC NOLTER, and FACTOR EUROPE, as well as SNL and
8  Scandor.com, to a mandatory, comprehensive verification process prior to execution of
9  any merchant agreement. On information and belief, it was further obligated to monitor
10 and certify that Defendants continued to meet all mandatory screening procedures,
11 including via credit checks, background investigations etc. Accordingly,
12 HANDELSBANKEN was therefore well aware, but did not convey to Visa/Mastercard,
13 among other things, that Defendants' companies were not established entities; that
14 Defendants, including Defendants NOLTER and JOHANSSON, as principals in such
15 entities, had a background in expediting massive fraudulent schemes; and that Defendant
16 JOHANSSON had previously been party to a merchant agreement that Mastercard had
17 terminated. On information and belief, by failing to convey such mandatory information
18 to Visa/Mastercard, HANDELSBANKEN substantially assisted Defendants in not only
19 acquiring, but holding onto their merchant account, thus, evading Visa/Mastercard's
20 termination.

21    61.    Defendant HANDELSBANKEN, having accepted bribes/kickbacks and
22 invested in the very scheme that it sought to protect and conceal, enabled Defendants to
23 implement and continue with their conversion of Plaintiff's funds, ultimately allowing
24 them to raze $6 million over time.

25    62.    Defendant HANDELSBANKEN rendered substantial assistance in the
26 achievement of JOHANSSON, NOLTER, ERIC NOLTER and FACTOR EUROPES'
27 conversion of $ 6,236,372. While concealing the true facts from Visa/Mastercard,
28

COMPLAINT                                    17

HANDELSBANKEN permitted Defendants to secure a merchant account, fully aware that Defendants were not entitled to such account pursuant to Visa/Mastercard's security protocols. Defendant JOHANSSON'S acquisition of the essential merchant account with HANDELSBANKEN, complete with the aura of legitimacy conveyed thereby, enabled Defendants to access and loot $6 million dollars of Plaintiff's money.

63. HANDELSBANKEN affirmatively assisted Defendants in the conversion and Plaintiff's injury was a direct or reasonably foreseeable result of the complained of conduct.

### THIRD CLAIM FOR RELIEF
### (Against HANDELSBANKEN)
### (Aiding & Abetting Fraud)

64. Plaintiff incorporate paragraphs 1 - 46 herein as if set forth in full.

65. On or about July 29, 2004, in order to induce ECS into entering into an credit-card processing agreement, Defendants, acting through Scandor.com personnel Walid el Houri in Florida, represented that Defendants had an approved Visa Mastercard relationship through HANDELSBANKEN. Defendants further represented that they were legitimately "a company active as a third party processor in cooperation with international acquiring banks for the purpose of processing Internet online Visa and Mastercard credit card transactions." Defendants also represented that their superior credit card processing technology would permit for fewer settlement delays and more timely receipt of merchant credit-card funds. These representations were made by Walid el Houri acting on the Defendants' behalf.

66. Defendants concealed the material fact that their Visa/Mastercard banking relationship through HANDELSBANKEN was established only recently through the payment of various kickbacks and bribes, and on information and belief, in violation of Visa/Mastercard's rules and regulations. Defendants, further, at no time disclosed that the company had only acquired that banking relationship one month earlier, and that Defendants had a long-standing history of fraudulent banking practices. Instead,

Defendants represented as a material fact that they would supply ECS' merchants with a credit card processing network that would permit merchants to secure Visa/Mastercard funds in an expedited and more complete manner.

67. These representations were false when made, and Defendants knew them to be false. Defendants were not a company active as a third-party processor, in that they had only established a relationship with HANDELSBANKEN a mere month earlier. Defendants' banking relationship with HANDELSBANKEN had not come as a result of the standard compliance with Visa/Mastercards rules and regulations, and therefore with Visa/Mastercard's approval, but rather through a course of bribes, kickbacks and profit sharing conspiracies. Defendants had a long history of fraudulent activities, including, taking funds from online processing schemes. Moreover, Defendants' promise that their system would provide for the quicker and more precise settlement of funds was a false promise, in that it was made without the intention of performing it. Defendants' actual intent was to appropriate millions of dollars of ECS' merchant funds for their own use, consistent with the long history of fraudulent banking activities perpetrated by Defendants. Defendants intended ECS to rely on such misrepresentations, and process its merchant funds with Defendants.

68. Plaintiff relied on Defendants' representations, and entered into a processing agreement, providing Defendants with access to millions of dollars in merchant credit-card funds in the process. Plaintiff's reliance was justified in that Defendants had an apparent "approved" relationship with Visa/Mastercard through HANDELSBANKEN, and there was no reason to believe that Defendants had been able to secure such a relationship through bribes, and despite their shady and sub-par banking history, complete with accusations of at least $11 million worth of stolen funds.

69. Defendants JOHANSSON and NOLTER continued to make these same representations and omissions throughout this same period.

COMPLAINT 19

70. At this stage of the action, Plaintiff is unable to state the circumstances of the fraudulent scheme in more detail because that information is exclusively in Defendants' possession; however, on or about March 20, 2006, Defendants, including in particular JOHANSSON and FACTOR EUROPE stole $6,236,372 of Plaintiff's funds, by failing to turn over such ECS funds, which funds were withdrawn from the FACTOR EUROPE account, but never forwarded to ECS' account. Despite knowledge of such bribes and kickbacks, HANDELSBANKEN allowed and continues to allow the FACTOR EUROPE account to remain open.

71. Defendant HANDELSBANKEN aided and abetted the other Defendants in the perpetration of their fraud. Defendant HANDELSBANKEN affirmatively assisted, concealed, and failed to act when required to do so, in order to enable the other Defendants' acts of fraud to advance and progress.

72. Defendant HANDELSBANKEN had actual knowledge that the other Defendants were engaged in perpetrating such fraud, but concealed and failed to act to stop such conduct. Instead, HANDELSBANKEN'S employees were vested in the continued propagation of such fraud, as a result of their receipt of various forms of profits, kickbacks/bribes and fees. On information and belief, HANDELSBANKEN, thus, not only set up the merchant banking relationship that facilitated the entire fraud, but concealed from Mastercard JOHANSSON'S role in the implosion of the Bank of Crozier, and JOHANSSON'S participation in a prior Mastercard terminated merchant agreement. On information and belief, HANDELSBANKEN'S merchant relationship with JOHANSSON was contrary to Mastercard's mandatory rules, and therefore went intentionally undisclosed and unknown to Visa/Mastercard, to avoid termination of Defendants' agreement and account.

73. On information and belief, under Visa/Mastercard rules and procedures, HANDELSBANKEN, as the acquiring bank, was obligated to subject Defendants, including JOHANSSON and FACTOR EUROPE to a mandatory, comprehensive

COMPLAINT                                                                                                           20

verification process prior to execution of any merchant agreement, and thereafter. By failing to report Defendants' noncompliance with these mandatory rules, HANDELSBANKEN facilitated and extended the life of the fraud. Accordingly, among other things, HANDELSBANKEN failed to convey to Visa Mastercard that FACTOR EUROPE was barely established; that Defendants JOHANSSON and NOLTER, as principals in such entities had a background in expediting massive fraudulent schemes; and that Defendant JOHANSSON'S previous merchant agreement had been terminated. Accordingly, Defendant HANDELSBANKEN was well aware that the other Defendants were engaged in attempting to convert Plaintiff's funds through a course of fraud, and accepted the bribes/kickbacks in return for permitting, facilitating and benefitting from Defendants' perpetration of such fraud.

74. Defendant HANDELSBANKEN rendered substantial assistance in the achievement of JOHANSSON and FACTOR EUROPE's fraudulent appropriation of $6,236,372. While concealing the true facts from Visa/Mastercard, HANDELSBANKEN permitted Defendants to secure a merchant account, fully aware that they were not entitled to such account pursuant to Visa/Mastercard's rules and security protocols. Defendant JOHANSSON's acquisition of the essential merchant account with HANDELSBANKEN, complete with the aura of legitimacy conveyed thereby, enabled the very mechanism by which Defendants were able to access Plaintiff's money and perpetrate their multi-million dollar fraud.

75. HANDELSBANKEN affirmatively assisted Defendants in the fraud and Plaintiff's injury was a direct or reasonably foreseeable result of the complained of conduct.

76. Plaintiff is entitled to compensatory damages according to proof, as well as exemplary or punitive damages because Defendant's wrongful act is egregious, done willfully, wantonly, or maliciously, or is characterized by other aggravating circumstance.

COMPLAINT 21

## FOURTH CLAIM FOR RELIEF
### (Negligence)
### (Against HANDELSBANKEN)

77. Plaintiff incorporate paragraphs 1 - 46 herein as if set forth in full.

78. Defendant, as a Visa/Mastercard acquiring bank, had a legal duty to Plaintiff to use due care in opening and monitoring merchant accounts. Defendant was aware that Defendants were acting as a third party processor, and therefore had a duty to Plaintiff or the class of person to which Plaintiff is a member, comprised of other merchants. In addition, HANDELSBANKEN was aware that Defendants were processing consumer credit-card transactions and had a duty to said consumers.

79. Defendant had a duty as a financial institution to investigate Defendants as a prospective merchant before allowing them to process millions of dollars of credit-card transactions through a HANDELSBANKEN account. On information and belief, Visa/Mastercard's rules and regulations, required that Defendant HANDELSBANKEN carefully screen, including via background and credit checks, etc., SNL, Scandorder.com, FACTOR EUROPE, and its principals, JOHANSSON, NOTLER and ERIC NOLTER as prospective member merchant(s) and continuing thereafter, to protect against fraud.

80. Defendant breached this duty of care by, among other things, failing to comply with Visa/Mastercard rules and regulations, and enabling Defendants, particularly JOHANSSON, to open such merchant account despite a history of fraudulent banking transactions.

81. By allowing Defendants to open and maintain merchant accounts at HANDELSBANKEN, complete with the imprimatur of legitimacy conveyed thereby, HANDELSBANKEN enabled the very mechanism by which Defendants were able to access Plaintiff's money and perpetrate their multi-million dollar fraud. Defendant HANDELSBANKEN conduct was thus a reasonably foreseeable and proximate cause of Plaintiff's loss of $6 million in funds.

## FIFTH CLAIM FOR RELIEF
(New York Uniform Deceptive Trade Practices Act; N.Y. CLS Gen. Bus. § 349)
(Against All Defendants)

82. Plaintiff incorporate paragraphs 1 - 46 herein as if set forth in full.

83. Defendants have engaged in deceptive trade practices when, in the course of their business, vocation, or occupation, they represented that the Defendants' merchant account with HANDELSBANKEN was associated with or certified by Visa/Mastercard, when in fact Defendants had merely utilized bribes and kickbacks to create this facade. In truth, on information and belief, the relationship was contrary to Visa/Mastercard rules and regulations, and when Visa/Mastercard learned of such relationship, it ordered HANDELSBANKEN to terminate said agreement and relationship.

84. Defendants' conduct caused a likelihood of confusion or of misunderstanding as to (a) the source, sponsorship, approval, or certification of their goods or services; and (b) affiliation, connection, or association with, or certification by, another. Defendants deceptively represented that they had a Visa/Mastercard approved relationship through HANDELSBANKEN, when in reality, Defendants were engaged in the practice of deceiving Visa/Mastercard, merchants, and consumers, and converting their funds.

85. Defendants' trade practices, have caused and will continue to cause damage to Plaintiff, who in reliance on such false affiliations, connections, associations with, certifications by, and representations, permitted Defendants to process millions of dollars of credit-card transactions, allowing Defendants to appropriate well-over $6 million in the process.

86. As a direct and proximate cause of Defendants' conduct as alleged herein, Plaintiff has suffered harm and injury as set forth in the preceding paragraphs and has sustained corresponding actual damages according to proof. These damages include funds due back to individual New York consumers, who number in the hundreds, and the New York issuing banks on which the consumers' credit cards are drawn.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

1. On the first cause of action, for judgment against the Defendants for $ 6,236,372, plus prejudgment interest from the time of conversion, special damages, and for punitive damages.

2. On the second cause of action, for judgment against the Defendants for $6,236,372, plus prejudgment interest from the time of conversion, special damages, and for exemplary or punitive damages.

3. On the third cause of action, for compensatory damages according to proof, for prejudgment interest, and for exemplary or punitive damages.

4. On the fourth cause of action, for compensatory damages according to proof.

5. On the fifth cause of action, for actual damages and reasonable attorneys fees.

6. For costs of suit.

7. For such other relief as this Court deems proper and just.

DATED: October 8, 2007

Respectfully Submitted,

LYNCH ROWIN LLP

_____

By: Marc Rowin
Attorneys for Plaintiff Online Payment Solutions Inc.,

DAVID STEINER & ASSOCIATES

_____

By: David Steiner, Esq.
Attorneys for Plaintiff Online Payment Solutions Inc.,

COMPLAINT                                    24