**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| Online Payment Solutions Inc., | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 07 CIV 8692 (PKL) |
| | ) | |
| -against- | ) | |
| | ) | |
| Svenska Handelsbanken AB, | ) | |
| Peter Lars Johansson, Nicholas Nolter, | ) | |
| Eric Nolter aka Aryksin Noble, | ) | |
| Factor Europe UK Limited, DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SVENSKA HANDELSBANKEN AB'S MOTION TO DISMISS

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
*Attorneys for Defendant Svenska Handelsbanken AB*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT .................................................................................................................... 4

   I.  PLAINTIFF'S CLAIMS SHOULD BE ADJUDICATED IN SWEDEN OR
      ENGLAND, NOT NEW YORK ................................................................................. 4

     A.  Plaintiff's Choice of Forum is Entitled to No Deference ............................. 5

     B.  Sweden and England are the Locus of this Action ...................................... 6

     C.  Sweden and England are Adequate Alternative Forums ............................. 7

     D.  Private and Public Interests Favor Dismissal............................................... 9

        1.  Private Interests Strongly Favor Sweden............................................... 9

        2.  Public Interests Point this Lawsuit Away From the U.S. ..................... 10

  II.  PLAINTIFF HAS NOT ESTABLISHED STANDING AS TO SVENSKA .................. 12

 III.  PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST SVENSKA ........................ 13

     A.  Plaintiff Fails to State a Claim for Aiding and Abetting Conversion ......................... 13

     B.  Plaintiff Fails to State a Claim for Aiding and Abetting Fraud ................................. 14

        1.  Plaintiff Failed to Establish Underlying Fraud ..................................... 14

          a.  Plaintiff Did Not Plead Reliance.................................................... 15

          b.  Plaintiff Cannot Demonstrate that Reliance was Reasonable......................... 15

        2.  Plaintiff Has Not Pled that Svenska Substantially Assisted Fraud ...................... 16

          a.  Plaintiff Cannot Demonstrate that Svenska Caused ECS' Injury .................. 17

          b.  Plaintiff Fails to Plead that Svenska Materially Participated in the Alleged
             Fraud .............................................................................................. 18

        3.  Plaintiff Fails to Plead Actual Knowledge............................................ 18

     C.  Plaintiff Cannot State a Claim for Negligence ......................................... 19

     D.  Plaintiff Cannot State a Claim Under the Deceptive Trade Practices Act.................. 20

  IV.  PLAINTIFF FAILS TO PLEAD WITH PARTICULARITY ......................................... 20

CONCLUSION................................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc., No. 04-CV-8832(KMK),
2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007) .............................................................14

Aiken v. Interglobal Mergers & Acquisitions, No. 05 Civ. 5503(LAP), 2006 WL
1878323 (S.D.N.Y. July 5, 2006) ..............................................................................19

Albert Trading, Inc. v. Kipling Belgium N.V./S.A., No. 00 Civ. 0478(RMB),
2002 WL 272408 (S.D.N.Y. Feb. 26, 2002)...............................................................11

Albion Alliance Mezzanine Fund v. State Street & Trust Co., 797 N.Y.S.2d 699
(N.Y. Sup. Ct. 2003) ............................................................................................18, 19

Bitton v. TRW, Inc., No. 93 Civ. 7407(PKL), 1994 WL 414368 (S.D.N.Y. Aug.
5, 1994) .................................................................................................................7, 11

BlackRock, Inc. v. Schroders PLC, No. 07 Civ. 3183(PKL), 2007 WL 1573933
(S.D.N.Y. May 30, 2007)........................................................................5, 6, 9, 10, 11

Blimpie Int'l, Inc. v. ICA Menyforetagen AB, No. 96 Civ. 3082(RWS), 1997 WL
143907 (S.D.N.Y. Mar. 25, 1997) ...............................................................................8

Century Pacific, Inc. v. Hilton Hotels Corp., No. 03-CV-8258(KMK), 2007 WL
3036172 (S.D.N.Y. Oct. 17, 2007) ............................................................................15

Chhawchharia v. Boeing Co., 657 F. Supp. 1157 (S.D.N.Y. 1987) ................................7, 8

Citadel Mgmt. Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133 (S.D.N.Y. 2000) .......13, 14

Construtora Norbeto Oderbrecht S.A. v. General Electric Co., No. 07-CV-
8014(CM), 2007 WL 3025699 (S.D.N.Y. Oct. 12, 2007) .............................................5

Cromer Finance Ltd. v. Berger, 137 F. Supp. 2d 452 (S.D.N.Y. 2001) .....................16, 18

Daly v. Castro Llanes, 30 F. Supp. 2d 407 (S.D.N.Y. 1998)......................................20, 21

Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 02 Civ.
2561(KMW), 2006 WL 335357 (S.D.N.Y. Feb. 15, 2006).........................................13

Dreieck Finanz AG v. Sun, No. 89 Civ. 4347(MBM), 1990 WL 11537 (S.D.N.Y.
Feb. 9, 1990) .............................................................................................................20

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC, 479 F. Supp. 2d 349
    (S.D.N.Y. 2007) ........................................................................................12

G&R Moojestic Treats Inc. v. Maggiemoo's Int'l, No. 03 Civ. 10027(RWS),
    2004 WL 1110423 (S.D.N.Y. May 19, 2004) ............................................11

Goshen v. Mut. Life Ins. Co., 98 N.Y.2d 314 (2002) .....................................20

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947) .............................................10

In re IAC/InterActiveCorp Sec. Litig., 478 F. Supp. 2d 574 (S.D.N.Y. 2007) ................13

Kolbeck v. LIT Am., Inc., 939 F. Supp. 240 (S.D.N.Y. 1996)...................................17, 18

Lewis v. Thompson, 252 F.3d 567 (2d Cir. 2001)............................................12

Moll v. US Life Title Ins. Co., 710 F. Supp. 476 (S.D.N.Y. 1989)....................................14

O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674 (2d Cir. 1991)...........................20

Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp.
    2d 282 (S.D.N.Y. 2000) .....................................................................21, 22

People v. World Interactive Gaming Corp., 714 N.Y.S.2d 844 (N.Y. Sup. Ct.
    1999) .........................................................................................................6

Petrohawk Energy Corp. v. Law Debenture Trust Co., No. 06 Civ. 9404(DLC),
    2007 WL 211096 (S.D.N.Y. Jan. 29, 2007) .............................................12

Renner v. Chase Manhattan Bank, No. 98 Civ. 926(CSH), 2000 WL 781081
    (S.D.N.Y. June 16, 2000)........................................................................19

Ross v. Bolton, 639 F. Supp. 323 (S.D.N.Y. 1986), aff'd, 904 F.2d 819 (2d Cir.
    1990) ...................................................................................................16, 18

Sack v. Low, 478 F.2d 360 (2d Cir. 1973) ......................................................11

Schertenleib v. Traum, 589 F.2d 1156 (2d Cir. 1978).....................................10

Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91 (2d Cir. 1997) ..........15, 16

Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp., 421 F. Supp. 2d
    741 (S.D.N.Y. 2006) .................................................................4, 5, 6, 8, 11

Tzaras v. Evergreen Int'l Spot Trading, Inc., No. 01 Civ. 10726(LAP), 2003 WL
    470611 (S.D.N.Y. Feb. 25, 2003) ........................................................................19, 20

**STATUTES**

N.Y. Penal Law § 225.00(4) (1994) ....................................................................6

Unlawful Internet Gambling Enforcement Act of 2006, 31 U.S.C. § 5301 *et seq.*
    (2006) ..............................................................................................................6

Wire Wager Act, 18 U.S.C. § 1084(a) (1994) ....................................................6

## PRELIMINARY STATEMENT

This dispute is between an English company named ECS World ("ECS") and a Swedish bank, a Swedish individual, his English company, and two individuals located in Florida. Supposedly, ECS and/or its foreign merchants, at least one of which is located in Cyprus, assigned their claims to Plaintiff, which was incorporated in New York only recently and <u>after</u> all the events at issue. Defendant Svenska Handelsbanken AB ("Svenska") respectfully submits this motion to dismiss the Complaint under Rules 12(b) and 9(b), including for *forum non conveniens* because this dispute bears absolutely no relation to New York.

Specifically, Plaintiff seeks to recover for dealings that went awry between ECS and Defendant Nicholas Nolter's company, Scandorder Inc. ("Scandorder"), a Florida company operating in Sweden. These dealings would have allowed ECS' clients, including foreign internet gambling establishments, pornography websites, and foreign internet pharmacies, to receive credit card payments from U.S. consumers. Defendant Nolter's company did not hold up its side of the bargain and as a result, ECS' clients did not receive credit card payments due to them.

In suing Svenska, one of the largest banks in Sweden, Plaintiff's allegations revolve around Swedish and English bank accounts and wrongful activities that are at least five times removed from ECS' losses. Indeed, Svenska does not even have a banking relationship with Plaintiff, ECS, Defendant Nolter, or his company, Scandorder. Nevertheless, Svenska is the <u>only</u> defendant served to date. Plaintiff sues Svenska for aiding and abetting conversion and fraud, negligence, and violations of New York General Business Law § 349.

As set forth below, this case should be dismissed for numerous reasons:

- *First*, this case presents a textbook case for dismissal on *forum non conveniens* grounds. Plaintiff is not the real party in interest and was created to receive an

assignment of claims to support venue. As such, Plaintiff's choice of forum is entitled to no deference. The real parties in interest are foreign and most of the defendants are also foreign. The vast majority of the events at issue occurred in Sweden, some in England, while New York has no connection to this dispute.

- *Second*, Plaintiff has not established standing to sue Svenska. Plaintiff is suing based on an assignment of claims that is so ambiguously pled, that it is impossible to determine whose claims Plaintiff is bringing.

- *Third*, Plaintiff fails to state any claim against Svenska upon which relief can be granted. Plaintiff cannot demonstrate conversion because it alleges that defendants took possession of the funds in question lawfully, under a contract. Absent an act of conversion, there is no claim for aiding and abetting it. Plaintiff's claim for aiding and abetting fraud also cannot stand. The Complaint itself alleges that Nicholas Nolter had a long history of fraud, making any reliance on him or his company unreasonable. Moreover, ECS' tenuous causal link to Svenska cannot support the element of substantial assistance under New York law. Plaintiff's negligence claim also fails because Svenska owed no duty to ECS or its clients. Finally, New York General Business Law § 349 does not apply because none of the allegedly deceptive acts occurred in New York.

- *Fourth*, Plaintiff's fraud and conversion–related claims are not pled with the detail demanded by Rule 9(b). Plaintiff relies on group pleading, such that Svenska cannot tell where its alleged participation in the fraud and conversion began or ended.

## **FACTUAL BACKGROUND**

In July 2004, ECS, a United Kingdom corporation, hired Scandorder, a Florida corporation, to assist ECS in its business. (Compl. ¶¶ 16, 41.)[1] As stated on its internet site, ECS is in the business of helping foreign internet merchants, including online pharmacies, online gambling, and pornography websites obtain credit card payments from consumers. (Compl. ¶¶ 14-15; Salzman Affirm. Ex. D.) Scandorder was supposed to help ECS' clients quickly obtain money from U.S. consumers through Visa and Mastercard credit card transactions. (Compl. ¶¶ 15-17.) ECS allegedly was induced into this business deal by a representation made by

---

[1] The Complaint is cited throughout as "Compl." and is attached as Exhibit A to the Affirmation of Milana Salzman, signed Dec. 21, 2007 ("Salzman Affirm."). There are three other declarations submitted in support of Svenska's motion, the Declaration of Svenska's General Counsel, Ulf Köping-Höggård, ("Svenska Decl.") signed December 18, 2007; the Declaration of Anthony John De Garr Robinson QC ("Robinson Decl.") signed December 11, 2007; and the Declaration of Claes Lundblad ("Lundblad Decl.") signed December 14, 2007.

Scandorder's Florida employee[2] (Compl. ¶ 65), who assured ECS that Scandorder could process

Visa and/or Mastercard credit card payments through Svenska.  (Compl. ¶ 17.)  Svenska is

incorporated and headquartered in Sweden.[3]  (Svenska Decl. ¶¶ 2-3.)

ECS and Scandorder were a perfect business match.  ECS' website boasts that they offer

payment processing solutions when "few merchant account providers are willing to take the

risk."  (Salzman Affirm. Ex. D.)  Correspondingly, Scandorder was a risky business partner.

Scandorder's sole officer and director is Defendant Nolter, a man with a felony criminal record

and ties to collapsed banking entities in Grenada.  (Compl. ¶¶ 16, 40.)  Some of Nolter's

fraudulent activities involved stealing funds through online payment processing entities.

(Compl. ¶ 40.)  Allegedly, in 2005 ECS' clients did not receive over $6 million in payments

processed by Scandorder.  (Compl. ¶ 43.)  One of those ECS clients is named in the Complaint

as Menzia Trading Limited ("Menzia"), an online pharmacy in Cyprus.  (Compl. ¶¶ 13-14.)

The allegedly missing funds disappeared from a London bank account of Factor Europe

U.K. Limited ("Factor Europe").  (Compl. ¶ 42.)  Factor Europe is a U.K. company located in

London, with Defendant Peter Lars Johansson ("Johansson"), a Swedish resident, as its sole

director.  (Compl. ¶¶ 5, 8; Salzman Affirm. Ex. E.)  In addition to Factor Europe, Johansson is

also connected to Scandinavian Net Logistics ("SNL"), a Swedish entity.  (Compl. ¶ 29; Salzman

Affirm. Ex. F.)  Both SNL and Factor Europe, had bank accounts with Svenska, at least one of

which was allegedly used to process the credit card payments at issue.  (Compl. ¶ 30.)  SNL's

corporate account was opened in Sweden and is subject to Swedish law, while Factor Europe's

account was opened in London and is subject to English law.  (Svenska Decl. ¶¶ 11, 13.)

---

[2] The Complaint does not say whether this representation was made via email, letter, telephone or in person.

[3] Svenska maintains one U.S. branch, located in Manhattan.  (Compl. ¶ 4.)

Plaintiff does not allege how and under what terms ECS' money ended up with Svenska. Indeed, the Complaint does not allege that Defendant Nolter or his company had any accounts with Svenska.[4] Plaintiff does allege, however, that Svenska <u>legally</u> took possession of ECS' clients' credit card funds and properly deposited them into an account opened in London for Factor Europe. (Compl. ¶¶ 27, 49.) Plaintiff further alleges that Svenska is at fault for ECS' clients' losses because it opened and operated accounts for SNL and/or Factor Europe in Sweden and/or England. (Compl. ¶ 62.) Plaintiff claims that Svenska should not have operated these accounts because they are related to Defendant Johansson, who apparently has a long history of fraudulent activities, and who allegedly may have corrupted Svenska employees in Sweden or London. (Compl. ¶¶ 29, 35-36.)

Plaintiff, Online Payment Solutions Inc. ("OPS"), was incorporated in New York in March 2007 and is connected to ECS and/or its clients through an unspecified assignment of claims. (Compl. ¶¶ 1, 3; Salzman Affirm. Ex. B.) OPS was created <u>two years after</u> the alleged wrongful acts had occurred and was not a party to any of the events in the Complaint.

## <u>ARGUMENT</u>

## I.    PLAINTIFF'S CLAIMS SHOULD BE ADJUDICATED IN SWEDEN OR ENGLAND, NOT NEW YORK

Under the doctrine of *forum non conveniens*, this Court can decline to exercise jurisdiction where, as here, "trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." <u>Strategic Value Master Fund, Ltd.</u> v. <u>Cargill Fin. Servs., Corp.</u>, 421 F. Supp. 2d 741, 753 (S.D.N.Y. 2006) (quoting <u>Piper Aircraft Co.</u> v. <u>Reyno</u>, 454 U.S.

---

[4] The Complaint alleges that Defendant Eric Nolter, Nicholas Nolter's son, somehow served as a liaison between Scandorder's programmers and Svenska's computers. (Compl. ¶ 28.) Again, the Complaint does not allege that Eric Nolter or his father had any banking relationship with Svenska.

235, 249 (1981)).  Under the Second Circuit's *forum non conveniens* analysis this Court is to: 1) determine the degree of deference to be accorded to the plaintiff's choice of forum; 2) determine whether the alternative forum proposed by defendants is adequate to adjudicate the parties' dispute; and 3) balance the private and public interests implicated in the choice of forum.  Id.  On a motion to dismiss for *forum non conveniens*, courts consider all evidence before it and do not presume the facts of the Complaint to be true.  Construtora Norbeto Oderbrecht S.A. v. General Electric Co., No. 07-CV-8014(CM), 2007 WL 3025699, at *1 (S.D.N.Y. Oct. 12, 2007).

A.      **Plaintiff's Choice of Forum is Entitled to No Deference**

Ordinarily, a plaintiff's choice of forum is entitled to deference.  As this Court has made clear, that deference disappears when plaintiff is not the real party in interest and chooses New York for forum shopping reasons, rather than convenience.  See BlackRock, Inc. v. Schroders PLC, No. 07 Civ. 3183(PKL), 2007 WL 1573933, at *4-6 (S.D.N.Y. May 30, 2007); Strategic Value, 421 F. Supp. 2d at 754-55.  OPS is precisely the type of plaintiff not entitled to deference.

OPS has no connection to the facts underlying the Complaint.  It was incorporated in New York—apparently by Plaintiff's counsel—over two years after the events at issue, a mere seven months before it filed this suit, and only 16 days before it threatened to sue Svenska. (Salzman Affirm. ¶ 3, Ex. B.)  Indeed, OPS appears to have no purpose beyond this lawsuit. (Salzman Affirm. Ex. B.)

New York also has no connection to this dispute.  Svenska is the only defendant with some connection, and that connection—a New York branch—has nothing to do with this lawsuit. None of the other defendants are located in New York and none of the events at issue took place in New York.  The only connection this lawsuit has to the U.S. are the Nolter Defendants, who reside in Florida.  (Compl. ¶¶ 6, 7.)  They, however, directed their activities at Sweden and

England, where all the alleged wrongs occurred.  See (Compl. ¶¶ 17, 28.)  The real parties in interest, ECS and its internet merchants, are all located abroad.  (Compl. ¶ 13.)  Interestingly, ECS—an English company—is not named as a plaintiff.  (Compl. ¶ 13; Salzman Affirm. Ex. C.)  Presumably, this would have destroyed diversity, as defendant Factor Europe is also an English company.[5]  (Salzman Affirm. Ex. E.)

These facts lead to an inescapable conclusion—OPS was created for forum shopping.  This Court has chastised plaintiffs for obvious forum shopping and has refused to give deference to their choice of forum.  See BlackRock, 2007 WL 1573933, at *4-6 (dismissing case where plaintiff was not the real party in interest, and was shopping for discovery procedures); Strategic Value, 421 F. Supp. 2d at 762, 775 (same).  This Plaintiff deserves the same treatment.

**B.    Sweden and England are the Locus of this Action**

The core events at issue occurred in Sweden and Svenska's key witnesses and documents will be located there.  The bulk of Plaintiff's claims revolve around credit card processing activities that could only take place in Sweden.  Based on the Complaint, it was an English company's credit card processing services handled through a Swedish resident and a Swedish bank account that ultimately went awry.  See (Compl. ¶¶ 30, 42; Svenska Decl. ¶¶ 12-13 (noting that only SNL's bank account, located in Sweden, could acquire credit card transactions).)

Indeed, the Complaint alleges that a Swedish resident looted money from a Swedish bank.  (Compl. ¶¶ 5, 42.)  Specifically, Johansson, a Swedish resident operating through a Swedish company (SNL), allegedly opened an account in Sweden with Svenska, a Swedish

---

[5] It is also possible that ECS was not named as a plaintiff because its business of providing online payment services to internet gambling companies is illegal under New York and U.S. law.  See (Compl. ¶ 15); Wire Wager Act, 18 U.S.C. § 1084(a) (1994); N.Y. Penal Law § 225.00(4) (1994); People v. World Interactive Gaming Corp., 714 N.Y.S.2d 844, 850-65 (N.Y. Sup. Ct. 1999); see also Unlawful Internet Gambling Enforcement Act of 2006, 31 U.S.C. § 5301 et seq. (2006).

bank.  (Compl. ¶¶ 4-5, 30, Salzman Affirm. Ex. F; Svenska Decl. ¶¶ 2-3, 11.)  SNL's account agreement with Svenska was entered into in Sweden, is in Swedish, and is subject to Swedish law.  (Svenska Decl. ¶ 11.)  The bank representative responsible for opening that account is in Sweden.  (Compl. ¶ 32.)  The agreement allowing SNL to acquire credit card transactions through Svenska was also entered into in Sweden and is in Swedish.  (Svenska Decl. ¶ 12.)  The Swedish Economics Crime Bureau and Svenska are allegedly investigating the facts underlying the Complaint.  (Compl. ¶¶ 32, 37.)  That activity would occur in Sweden and in Swedish.  (Svenska Decl. ¶ 4.)

After Sweden, England has the next strongest connection to this lawsuit.  According to the Complaint, Nicholas Nolter's Florida employee allegedly made misrepresentations to ECS, a company located in London.  (Compl. ¶ 65; Salzman Affirm. Ex. C.)  ECS's bank, to which money was supposed to be wired under the agreement between ECS and Scandorder, is Lloyd's TSB, a prominent English bank.  (Compl. ¶ 49.)  Scotland Yard, in England, is also allegedly investigating this matter.  (Compl. ¶ 37.)  Furthermore, it was Svenska's English branch that opened a corporate account for Factor Europe, an English company in London (with a Swedish resident as its sole director).  (Compl. ¶¶ 5, 8, 30; Salzman Affirm. Ex. E.)  Factor Europe's corporate account with Svenska is in London, has a London account representative, and is subject to English law.  (Compl. ¶ 32; Svenska Decl. ¶ 13.)

### C.    Sweden and England are Adequate Alternative Forums

An alternative forum is adequate when defendants are subject to service of process there and the forum permits litigation on the subject matter of the dispute.  See Bitton v. TRW, Inc., No. 93 Civ. 7407 (PKL), 1994 WL 414368, at *1, *3 (S.D.N.Y. Aug. 5, 1994) (releasing claims to Israel, noting that the defendant is willing to accept service in Israel); Chhawchharia v. Boeing

Co., 657 F. Supp. 1157, 1160, 1163 (S.D.N.Y. 1987) (releasing claims to India, noting that defendant consented to jurisdiction there). Here, Svenska will accept service of process in Sweden or England. Other named defendants may also be sued in both forums. (Lundblad Decl. ¶¶ 11-12, 16, 19; Robinson Decl. ¶ 89.)

Courts in this District have recognized that Sweden and England are well-developed legal systems and adequate alternative forums. Strategic Value, 421 F. Supp. 2d at 762-63; Blimpie Int'l, Inc. v. ICA Menyforetagen AB, No. 96 Civ. 3082 (RWS), 1997 WL 143907, at *5 (S.D.N.Y. Mar. 25, 1997). This case is no different. Plaintiff can litigate the facts at issue under various theories at Swedish law. (Lundblad Decl. ¶¶ 21-29.) Plaintiff's case will be heard in Sweden by a panel of three judges from which appeals are available. (Lundblad Decl. ¶¶ 39-40.) A Swedish court can extend jurisdiction to all named defendants and can apply foreign law. (Lundblad Decl. ¶¶ 11-12, 16, 19, 45.) In Sweden, OPS can even be represented by an American attorney, if it so desires. (Lundblad Decl. ¶ 42.) Sweden has procedures for production of documents and can seek testimony from witnesses located in the U.K. and other jurisdictions. (Lundblad Decl. ¶¶ 48-49.) Similarly, an English court also could adjudicate the fact alleged under various theories. (Robinson Decl. ¶¶ 67-70, 72-76.) An English court may assert jurisdiction over all defendants and is well-equipped to efficiently address Plaintiff's claims. (Robinson Decl. ¶¶ 32, 77-91.) Like Sweden, England can apply foreign laws, and is a party to an agreement that facilitates fast access to witnesses located in Sweden. (Robinson Decl. ¶¶ 52, 54-58.)

### D.    <u>Private and Public Interests Favor Dismissal</u>

#### 1.    <u>Private Interests Strongly Favor Sweden</u>

Private interest factors include: (1) "the relative ease of access to sources of proof;" (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;" (3) the "possibility of view of premises, if view would be appropriate to the action;" and (4) "all other practical problems that may make trial of a case easy, expeditious and inexpensive."  <u>BlackRock</u>, 2007 WL 1573933, at *8 (quoting <u>Iragorri</u> v. <u>United Techs. Corp.</u>, 274 F.3d 65, 73-74 (2d Cir. 2001).  Here, all private interest factors heavily favor dismissal.

<u>None</u> of the evidence is located in New York.  The vast majority of witnesses are located in Sweden and England, and Swedish banking documents are likely to be in Swedish.  If Svenska were forced to defend itself here, it would have to bear the inconvenience and the expense of obtaining and transporting willing witnesses, including the cost of intercontinental travel and the translation of Swedish documents and testimony.

As between Sweden and England, all practical considerations point squarely at Sweden. Svenska is Swedish and is the <u>only</u> defendant that Plaintiff served with process.  Indeed, Plaintiff refused to allow Svenska's response to the Complaint to be tied to the service of other defendants.  (Stip. & Order, filed Nov. 6, 2007.)[6]  In light of this, Svenska should be allowed to defend itself in Sweden—where Svenska is headquartered, where key bank-related activities allegedly occurred, where many key witnesses to that bank-related activity will be located, and where the bulk of documentary proof will be.  Indeed, only one of Svenska's representatives is alleged to be in England.  (Compl. ¶ 32.)  Moreover, in England, Svenska will continue to bear

---

[6] This citation refers to the Stipulation and Order Extending Defendant Svenska Handelsbanken AB's Time to Respond to Complaint, signed by this Court on November 5, 2007 and filed on November 6, 2007.

the expense and the delay of translating Swedish documents and testimony into English.

Swedish courts, on the other hand, are well-versed in English and may not require translation of

all English documents.  (Lundblad Decl. ¶ 41.)

The availability of compulsory process over unwilling witnesses also strongly favors

dismissal.  Indeed, it is one of the most significant factors to be considered in determining *forum

non conveniens*.  See Schertenleib v. Traum, 589 F.2d 1156, 1165 (2d Cir. 1978).  The Supreme

Court has emphasized that "to fix the place of trial at a point where litigants cannot compel

personal attendance and may be forced to try their cases on deposition, is to create a condition

not satisfactory to courts, jury, or most litigants."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 511

(1947); see also BlackRock, 2007 WL 1573933, at *9 ("there is a preference in this Circuit for

live trial testimony").

The vast majority of witnesses in this action are outside the subpoena power of this

Court.  Svenska's Swedish employees, Johansson, Factor Europe, ECS, Menzia (and ECS' other

merchants) cannot be compelled to testify at trial, nor could witnesses from the Swedish

Economics Crime Bureau or Scotland Yard.  Meanwhile, Plaintiff levels accusations against

Svenska of fraud, conversion, deceit, and other tortuous acts.  Svenska has a strong interest in

vindicating itself through live testimony and will be stymied if forced to litigate here.

### 2.    Public Interests Point this Lawsuit Away From the U.S.

Public interest factors include: (1) administrative difficulties stemming from court

congestion; (2) the undesirability of imposing jury duty upon the people of a community which

has no relation to the litigation; (3) the local interest in having localized controversies decided at

home; and (4) the "potential pitfalls that stem from a diversity case being heard in a foreign

forum that must resolve conflicts of law and substantive law problems, rather than a forum

familiar with the state law to be applied to the case." BlackRock, 2007 WL 1573933, at *10;

Strategic Value, 421 F. Supp. 2d at 753. Here, all public interest factors heavily favor dismissal.

Neither New York nor the United States has any interest in deciding this case. The real

parties in interest are not U.S. corporations and the core events at issue occurred abroad.

Meanwhile, this District has repeatedly been acknowledged as one of the busiest in the nation.

See e.g., Albert Trading, Inc. v. Kipling Belgium N.V./S.A., No. 00 Civ. 0478(RMB), 2002 WL

272408, at *6 (S.D.N.Y. Feb. 26, 2002); Bitton, 1994 WL 414368, at *3. With so many

legitimate cases awaiting disposition, it is unreasonable to burden this Court with a dispute that

bears no relation to this forum. There is also no justification for burdening New York jurors with

claims based on foreign facts, foreign laws, and activities which are illegal here (non-U.S.

internet gambling).

This Court also has no reason to burden itself with the conflict of law issues presented

here. In tort cases, New York choice of law rules often point to the law of the place where the

loss is sustained. Sack v. Low, 478 F.2d 360, 366 (2d Cir. 1973); G&R Moojestic Treats Inc. v.

Maggiemoo's Int'l, No. 03 Civ. 10027(RWS), 2004 WL 1110423, at *7 (S.D.N.Y. May 19,

2004). ECS suffered losses, if any, in England, while Menzia suffered losses, if any, in

Cyprus—indeed, none of ECS' merchants are alleged to be here. In the meantime, the contracts

relating to Svenska's banking activities are governed by Swedish or English law. (Svenska Decl.

¶¶ 11, 13.)

Given Plaintiff's obvious forum shopping, and all other relevant factors pointing

elsewhere, this Court should dismiss this case on *forum non conveniens* grounds.

## II.    PLAINTIFF HAS NOT ESTABLISHED STANDING AS TO SVENSKA

Standing depends on plaintiff showing that it "suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." Petrohawk Energy Corp. v. Law Debenture Trust Co., No. 06 Civ. 9404(DLC), 2007 WL 211096, at *2 (S.D.N.Y. Jan. 29, 2007) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006)).  Standing also may depend on the claims at issue.  See Lewis v. Thompson, 252 F.3d 567, 584 (2d Cir. 2001) (setting out requirements for third-party standing); Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC, 479 F. Supp. 2d 349, 374 (S.D.N.Y. 2007) (fraud claims must be specifically assigned).  Here, the Complaint makes it impossible for Svenska to evaluate whether Plaintiff has met these standing requirements.

OPS does not have independent standing to sue Svenska.  OPS was formed well after the events at issue and had no involvement in those events.  OPS' apparent standing arises solely from allegations of an assignment.  However, the terms of the assignment are not pled, the assignment is not attached to the Complaint, and the pleading on assignment is ambiguous.  Thus, Svenska cannot tell from the face of the Complaint against whose claims it is defending.

For example, the Complaint alleges that "[t]his is an action by OPS to recover over $6 million in funds looted from ECS World ("ECS") and, more precisely its merchants, including Menzia Trading Limited ("Menzia"), whose claims have been assigned to Plaintiff."  (Compl. ¶ 1) (emphasis added).)  Possible interpretations are that:  (i) only ECS assigned its claims to OPS; (ii) only Menzia assigned its claims to OPS; (iii) Menzia assigned its claims to ECS who in turn assigned them to OPS; (iv) several of ECS' merchants assigned their claims to ECS who in turn assigned them to OPS; or (v) none of ECS' merchants assigned their claims to ECS.  The

Complaint further alleges that "OPS is a New York corporation, which has been assigned the above-listed claims of ECS, . . . <u>which include</u> the specific claims of Menzia." (Compl. ¶ 13 (emphasis added).) Again, the Complaint does not allege that Menzia assigned its claims to ECS, nor does it limit those claims to ECS and Menzia. Indeed, Plaintiff is claiming damages for "funds due back to individual New York consumers, who number in the hundreds, and the New York issuing banks on which the consumers' credit cards are drawn." (Compl. ¶ 86.) The Complaint, however, nowhere alleges anyone in New York is a party in interest here.

Absent unambiguous facts as to standing, the claims against Svenska must be dismissed.

## III.    PLAINTIFF FAILS TO STATE ANY CLAIM AGAINST SVENSKA

On a 12(b)(6) motion, dismissal is appropriate when no relief can be granted under the facts alleged by the plaintiff. <u>In re IAC/InterActiveCorp Sec. Litig.</u>, 478 F. Supp. 2d 574, 584-85 (S.D.N.Y. 2007). A court must accept as true only well-pled factual allegations. <u>Id.</u> The court should not credit conclusory statements unsupported by factual allegations. <u>Id.</u> at 585. Nor should the court accept allegations that are contradicted or undermined by other more specific allegations in the Complaint or by written materials properly before the court. <u>Id.</u> The court also may consider public documents and documents that the plaintiff either possessed or relied upon in bringing suit. <u>Id.</u>

### A.    Plaintiff Fails to State a Claim for Aiding and Abetting Conversion

To establish a claim for aiding and abetting conversion the plaintiff must allege facts to support an underlying conversion. <u>Dangerfield</u> v. <u>Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, No. 02 Civ. 2561(KMW), 2006 WL 335357, at *5 (S.D.N.Y. Feb. 15, 2006). Conversion is "the exercise of unauthorized dominion over the property of another in interference with a plaintiff's legal title or superior right of possession." <u>Citadel Mgmt. Inc.</u> v. <u>Telesis Trust, Inc.</u>, 123 F. Supp.

2d 133, 147 (S.D.N.Y. 2000).  The Plaintiff must allege that it had "ownership, possession or control of the money before its conversion."  Id. (quoting ESI, Inc. v. Coastal Power Prod. Co., 995 F. Supp. 419, 433 (S.D.N.Y. 1998)).

Here, Plaintiff alleges that Defendants "took possession of the funds lawfully pursuant to an agreement that related entities would process Plaintiff's credit cards, settle such funds from Visa/Mastercard, and deposit them into a merchant account at [Svenska]."  (Compl. ¶ 49 (emphasis added).)  New York law presumes that ownership lies with the person in possession of property or money.  Citadel, 123 F. Supp. 2d at 150.  Plaintiff has not pled facts to show otherwise.  Indeed, Plaintiff has not pled the terms of the agreement and has not established that it had ownership or control of the funds in lieu of Defendants' lawful possession.

The Complaint further alleges that, by contract, Defendants had to wire the funds to ECS' account at Lloyd's TSB Bank, but did not do so.  (Compl. ¶¶ 49-50.)  Failing to wire funds to ECS in accordance with an agreement might be a breach of contract, but it is not conversion. AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc., No. 04-CV-8832 (KMK), 2007 WL 2962591, at *6-8 (S.D.N.Y. Oct. 10, 2007) ("a breach of contract—even an 'intentional' or 'malicious' breach of contract—does not give rise to a tort action") (quoting Mayer v. Morgan Stanley & Co., 703 F. Supp. 249, 253 (S.D.N.Y. 1988)).  Having failed to state a claim for conversion, Plaintiff's claim for aiding and abetting conversion must be dismissed.

**B.     Plaintiff Fails to State a Claim for Aiding and Abetting Fraud**

**1.     Plaintiff Failed to Establish Underlying Fraud**

To establish aiding and abetting fraud, Plaintiff must plead facts to support an underlying fraud.  Moll v. US Life Title Ins. Co., 710 F. Supp. 476, 479 (S.D.N.Y. 1989).  Here, Plaintiff has failed to do so as to multiple elements.

14

### a.  Plaintiff Did Not Plead Reliance

To establish fraud, Plaintiff must show that it relied on a misrepresentation.  <u>Schlaifer Nance & Co.</u> v. <u>Estate of Andy Warhol</u>, 119 F.3d 91, 98 (2d Cir. 1997).  Plaintiff claims that ECS "relied" on a July 29, 2004 representation that Scandorder had a credit card acquiring relationship with Svenska.  (Compl. ¶¶ 65, 68.)  However, a careful reading of the Complaint reveals that Plaintiff has not alleged that it entered into its contract with Scandorder <u>after</u> that July 29th representation was made.  Thus, Plaintiff has not pled reliance.

### b.  Plaintiff Cannot Demonstrate that Reliance was Reasonable

Plaintiff's aiding and abetting fraud claim must also fail because Plaintiff cannot establish that ECS reasonably relied.  It is well-settled that reliance is not reasonable when "by the exercise of ordinary intelligence" a businessperson can discover that the representations are false.  <u>Schlaifer</u>, 119 F.3d at 98; <u>Century Pacific, Inc.</u> v. <u>Hilton Hotels Corp.</u>, No. 03-CV-8258(KMK), 2007 WL 3036172 at *16-19 (S.D.N.Y. Oct. 17, 2007).  In <u>Schlaifer</u>, the Second Circuit found that it was not reasonable for plaintiff, an established licensing company, to rely on Warhol estates' claims that it had exclusive copyright licenses when a simple search with the Copyright Office, or an investigation of the estate's files, would have disclosed that some of the art already was in the public domain.  <u>Schlaifer</u>, 119 F.3d at 99-101.

Here, Plaintiff claims that ECS relied on a statement from defendant Nicholas Nolter's employee that Scandorder had a credit card acquiring relationship with Svenska.  (Compl. ¶ 68.)  Plaintiff further claims that "there was no reason to believe that Defendants had been able to secure [a relationship with Svenska] through bribes, and despite their shady and sub-par banking history."  (Compl. ¶ 68.)  These dramatic allegations do not pass muster.

15

The Complaint itself alleges that Nolter had a long history of fraud, including a felony criminal record.  (Compl. ¶ 40.)  Indeed, this information was freely available on the Internet over a year <u>before</u> ECS entered into an agreement with Nolter's company.  (Salzman Affirm. Exs. G, H, I, J.)  By 2004, Nicholas Nolter was so infamous that in May 2004, two months <u>before</u> ECS contracted with Scandorder, one website ranked Nolter as one of the most "Hideous Figures in the World of Online Gambling."  (Salzman Affirm. Ex. J.)  This website explained that "the mere mention of his name makes industry stalwarts cringe. . . . It has been said on numerous occasions that if one were to place Nolter in a football stadium, the place would not be large enough to fill up with all of his enemies." (Salzman Affirm. Ex. J.)  Other information on Nolter was available through a simple lawsuit search.  For example, in February 2003, the U.S. government filed a forfeiture action as to almost half a million dollars from an Indiana escrow account based on various alleged domestic and international fraud schemes.  (Salzman Affirm. Ex. K.)  Some of the money in that account was related to Nicholas Nolter.  (Salzman Affirm. Ex. L.)

Now, ECS, a company in the business of serving the online gambling industry since 1999, claims that it did not know that Nolter was infamous in that industry.  As a matter of law, ECS cannot turn a blind eye to such public information.  <u>Schlaifer</u>, 119 F.3d at 98-99.

### 2.    Plaintiff Has Not Pled that Svenska Substantially Assisted Fraud

To establish substantial assistance, Plaintiff must show that the actions of the aider/abettor proximately caused its injury.  <u>Cromer Finance Ltd.</u> v. <u>Berger</u>, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001).  Plaintiff must also show that defendant affirmatively assisted in the challenged transaction and materially participated in the wrongdoing.  <u>See</u> <u>id.</u>; <u>Ross</u> v. <u>Bolton</u>, 639 F. Supp. 323, 327 (S.D.N.Y. 1986), <u>aff'd</u>, 904 F.2d 819 (2d Cir. 1990).  Here, Plaintiff

claims that its injury was a "direct or reasonably foreseeable result" of Svenska's conduct. (Compl. ¶ 75.)  The facts, however, do not show that Svenska caused ECS' losses when it opened and operated accounts for SNL and Factor Europe.

### a.    Plaintiff Cannot Demonstrate that Svenska Caused ECS' Injury

ECS—whose losses allegedly were assigned to Plaintiff—entered into a relationship with Scandorder, Defendant Nicholas Nolter's company, not SNL or Factor Europe.  Plaintiff does not allege any relationship between Nolter and Svenska.  Rather, Plaintiff alleges that Svenska had a banking relationship with Johansson, through SNL and Factor Europe.  (Compl. ¶ 29.) The Complaint also does not allege that SNL or Factor Europe was connected to Nolter.  Rather, Plaintiff only alleges that "defendants worked in concert," but no facts are pled to support this conclusory allegation.

Even assuming some relationship between Nolter and Johansson, it is too remote to establish that Svenska caused ECS' losses.  In Kolbeck v. LIT Am., Inc., 939 F. Supp. 240 (S.D.N.Y. 1996), plaintiff was suing a bank for failure to investigate its client, an investment company.  This company looted money from the plaintiff through the defendant bank.  Id. at 244. Plaintiff argued that had the bank investigated its client, it would have discovered that the investment company was not registered and the plaintiff would not have been hurt.  Id. at 249. The court dismissed the plaintiff's aiding and abetting breach of fiduciary duty claim because the "chain of causation . . . is far too long to constitute proximate cause."  Id.

As in Kolbeck, the causal link to Svenska is too remote to support causation.  In fact, the alleged causal link is five times removed.  Svenska is alleged to have a direct connection with corporate entities, SNL and Factor Europe.  These entities allegedly had a connection to Johansson.  In turn, Johansson has an unclear connection to Nolter, who is related to Scandorder.

It is <u>Scandorder</u> — with which Svenska had <u>no</u> alleged connection — that allegedly made representations to ECS and its merchants. Such a tenuous causal link cannot support substantial assistance. <u>Id.</u>

> **b.      Plaintiff Fails to Plead that Svenska Materially Participated in the Alleged Fraud**

The Complaint alleges that Svenska employees were bribed to <u>open</u> an account for entities related to Johansson. (Compl. ¶ 29.) Other than allegedly opening and operating these accounts, the Complaint alleges no other wrongdoing by Svenska. In fact, the Complaint alleges that Svenska <u>properly</u> acquired moneys from Visa/Mastercard and <u>properly</u> deposited them into the Svenska account of Factor Europe. (Compl. ¶¶ 41-42.) These bank activities cannot support the substantial assistance element. <u>See e.g.</u>, <u>Ross</u>, 639 F. Supp. at 327 (dismissing aiding and abetting claim where complaint did not specify what assistance defendant rendered other than continuing to clear transactions when it allegedly knew or should have known that its client was engaging in fraud); <u>Albion Alliance Mezzanine Fund</u> v. <u>State Street & Trust Co.</u>, 797 N.Y.S.2d 699, 706-07 (N.Y. Sup. Ct. 2003) (where bank simply accepted loan repayment even though it was aware of debtor's wrongful conduct, there is no liability for aiding and abetting the underlying wrong). To the extent the Complaint alleges that Svenska withheld or omitted information to enable Johansson to operate an account, (Compl. ¶ 72), such inaction also does not constitute substantial assistance. <u>Cromer</u>, 137 F. Supp. 2d at 470 (citing <u>Kolbeck</u>, 939 F. Supp. at 249) (where defendant does not owe a fiduciary duty directly to plaintiffs, mere inaction cannot constitute actionable participation).

> **3.      Plaintiff Fails to Plead Actual Knowledge**

A defendant must have "actual knowledge of the [wrong] alleged" to be liable for aiding and abetting. <u>Albion</u>, 797 N.Y.S. 2d at 706-07. In conclusory fashion, Plaintiff alleges that

Svenska "had actual knowledge that the other Defendants were engaged in perpetrating such fraud." (Compl. ¶ 72.) However, not a single fact is alleged to support any inference that Svenska knew of any illicit activity.

For example, Plaintiff does not allege that Svenska knew of Defendant Nicholas Nolter or his company. Thus, Svenska could not have had actual knowledge of Nolter's intent to defraud ECS. As for Defendant Johansson, the allegation is that Svenska should have known about his history through required background checks. (Compl. ¶ 60.) But even if knowledge of Johansson's history could be imputed to Svenska, that knowledge would only show that Svenska should have had a <u>suspicion</u> about Johansson. Suspicion of fraud, however, is not enough to plead actual knowledge. <u>See</u> <u>Renner</u> v. <u>Chase Manhattan Bank</u>, No. 98 Civ. 926(CSH), 2000 WL 781081, at *7-8, *12 (S.D.N.Y. June 16, 2000); <u>Albion</u>, 797 N.Y.S.2d at 706-07.[7]

### C.    **Plaintiff Cannot State a Claim for Negligence**

Svenska owed no duty to Plaintiff, ECS or its merchants. <u>See</u> <u>Aiken</u> v. <u>Interglobal Mergers & Acquisitions</u>, No. 05 Civ. 5503(LAP), 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) ("a bank generally owes no duty of care to a non-customer third party"). In <u>Aiken</u>, plaintiff alleged that the bank breached a duty to him by, among other things, failing to investigate the legitimacy of its customers. <u>Id.</u> at *1. The bank's customers defrauded plaintiff, but plaintiff had no account with the bank. <u>Id.</u> at *2. The court held that New York does not recognize a bank's duty to a non-customer third party and dismissed the negligence claim. <u>Id.</u>; <u>see also</u> <u>Tzaras</u> v. <u>Evergreen Int'l Spot Trading, Inc.</u>, No. 01 Civ. 10726(LAP), 2003 WL 470611, at *6 (S.D.N.Y. Feb. 25, 2003) (dismissing negligence claim because the bank had no duty to a non-customer plaintiff defrauded by a bank customer). In <u>Tzaras</u>, the court did not find

---

[7] The same would be true for the allegations of bribes, which only relate to the opening of the SNL and/or Factor Europe account in Sweden and/or England. There is no claim that the employees allegedly bribed knew of the ultimate fraud—let alone that any acts of these employees may be imputed to Svenska.

any negligence-related significance in the plaintiff's claim that he entered into a relationship with the bank's customer in reliance on the promise that his money would be placed in an account with the reputable defendant bank.  Id. at *1-2.

Plaintiff's negligence claims against Svenska are identical to those that failed in Tzaras and Aiken.  Moreover, as noted above, Plaintiff has failed to allege proximate cause.

### D.    Plaintiff Cannot State a Claim Under the Deceptive Trade Practices Act

New York General Business Law § 349 cannot apply here.  For the statute to apply, the deceptive transactions, misrepresentations or omissions must occur in New York.  Goshen v. Mut. Life Ins. Co., 98 N.Y.2d 314, 324 (2002) (dismissing § 349 claims where plaintiffs were solicited and purchased insurance policies outside of New York).  None of Svenska's allegedly deceptive acts occurred in New York, mandating dismissal of this claim.

## IV.    PLAINTIFF FAILS TO PLEAD WITH PARTICULARITY

Aiding and abetting conversion or fraud must be pled with particularity under Federal Rule 9(b).  Daly v. Castro Llanes, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) ("Plaintiff's claim of conversion, which is an unauthorized taking of property, rests on an allegation of fraudulent taking, and is therefore subject to the pleading requirements of Rule 9(b)"); Dreieck Finanz AG v. Sun, No. 89 Civ. 4347 (MBM), 1990 WL 11537 (S.D.N.Y. Feb. 9, 1990) (hearing a 9(b) motion to dismiss as to aiding and abetting fraud and conversion).  Rule 9(b) is "designed to provide a defendant with fair notice of [the claims against him], to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit."  O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991) (quoting Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990)).

As shown above, with regard to multiple elements of fraud, Plaintiff has provided insufficient detail. Moreover, where, as here, multiple defendants are involved, Plaintiff may not rely upon blanket references to acts or omissions by all defendants. Daly, 30 F. Supp. 2d at 414. Rather, each defendant is entitled to be apprised of the circumstances surrounding their own allegedly fraudulent conduct. Id.; Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293-94 (S.D.N.Y. 2000). Here, Plaintiff relies on little more than blanket assertions against all defendants to make out its claims against Svenska. The Complaint defines "Defendants" to include all named defendants. (Compl. at 2.) It then proceeds to claim that Svenska "was obligated to subject Defendants to a mandatory, comprehensive verification process prior to execution of any merchant agreement." (Compl. ¶ 25) (emphasis added).[8] Plaintiff makes this allegation despite the fact that no relationships are specifically pled to have existed among Svenska and all the various defendants.

The Complaint also lumps Svenska into acts by the other defendants. See e.g., (Compl. ¶ 2 ("[i]n reliance on Defendants' representations … ECS permitted Defendants to process millions of dollars in merchant payments"); Compl. ¶ 18 ("[i]n reliance on Defendants' representations . . . [ECS] agreed to use Defendants' technology"); Compl. ¶ 65 ("Defendants further represented"); Compl. ¶ 67 ("Defendants had a long history of fraudulent activities")). The Complaint, however, nowhere alleges that Svenska made any representations nor committed any fraudulent acts as to ECS.

By lumping Svenska into its fraud claims, Plaintiff has damaged Svenska's reputation and goodwill. Svenska is entitled to know where its alleged participation in the events begins and ends. Svenska also is entitled to know how it aided and abetted each defendant, if at all, and

---

[8] See also (Compl. ¶ 30 ("Defendants and [Svenska] entered into a merchant banking agreement"); Compl. ¶ 31 ("Defendants' merchant agreement"), Compl. ¶ 32 ("Defendants' accounts"); Compl. ¶ 41 ("Defendants' purportedly approved Visa/Mastercard banking relationship through [Svenska]").)

what relation, if any, each defendant had to Svenska.  See Odyssey, 85 F. Supp. 2d at 294

(Plaintiff must distinguish "how these 'facts' relate to each party").  As it stands, the Complaint

fails to comply with Rule 9(b) and must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Svenska respectfully requests that its Motion to Dismiss the

Complaint be granted with prejudice, along with such other and further relief as the Court deems

just and proper.


Dated: New York, New York
       December 21, 2007

                                        WHITE & CASE LLP


                                        By:   /s/ Owen C. Pell
                                            Owen C. Pell (OP 0118)
                                            Milana Salzman (MS 0401)
                                            1155 Avenue of the Americas
                                            New York, New York 10036
                                            (212) 819-8200

                                        *Attorneys for Defendant*
                                        *Svenska Handelsbanken AB*