UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Online Payment Solutions Inc., | ) |
| Plaintiff | ) Civil Action No. 07 CIV 8692 (PKL) |
| -against- | ) |
| Svenska Handelsbanken AB, Peter Lars Johansson, Nicholas Nolter, Eric Nolter aka Aryksin Noble, Factor Europe UK Limited, DOES 1-10, | ) **DECLARATION OF** <br> **CLAES LUNDBLAD** |
| Defendants. | ) |

**I, CLAES LUNDBLAD**, am aware and acknowledge the liability for false testimony, hereby state as follows:

1.  I am a citizen and a permanent resident of Sweden. I am a partner of a Swedish law firm, Mannheimer Swartling Advokatbyrå AB. I am a member of the firm's litigation and arbitration practice group.

2.  I respectfully submit this declaration to this Court in support of Defendant Svenska Handelsbanken AB's ("HANDELSBANKEN") Motion to Dismiss the Complaint of Online Payment Solutions Inc. ("OPS") for several reasons, including principles of *forum non conveniens*.

### Qualifications to Express Expert Opinions Regarding the Swedish Legal System

3.  I received my LL.M. from the University of Lund in 1969. I served as a law clerk at the District Court of Gothenburg, Sweden, from 1970 to 1972. I joined Mannheimer & Zetterlöf Advokatbyrå as an associate in 1972. I was admitted to the Swedish Bar Association in 1975. I also joined the International Bar Association some 25 years ago. I became a partner of Mannheimer & Zetterlöf Advokatbyrå in 1977. In 1990 my firm merged with Carl Swartling Advokatbyrå to form Mannheimer Swartling Advokatbyrå, my current firm. I attach my CV to this declaration as Exhibit 1.

4. I have represented Swedish and foreign clients in Swedish court proceedings and in arbitral proceedings for more than 30 years. On several occasions, I have appeared in cases involving fraud related claims. I can state with confidence that I possess intimate knowledge of the Swedish system of justice.

## Request for Expert Opinion

5. I have reviewed a Complaint dated 8 October 2007 (the "Complaint") wherein OPS brings action against HANDELSBANKEN *et al.* I have been informed that this Complaint has been filed with this Court. As I understand the substance of the allegations contained in the Complaint, OPS alleges that ECS World ("ECS"), whose claims have been assigned to OPS, has been deprived of funds as a result of the Defendants allegedly taking certain actions and/or making certain omissions.

6. As I understand the Complaint OPS bases its claims on the following principal legal grounds, namely: (i) conversion; (ii) aiding and abetting conversion; (iii) aiding and abetting fraud; (iv) negligence; (v) violation of the New York Uniform Deceptive Trade Practices Act (N.Y. CLS Gen. Bus. § 349), thereby causing harm and injury.

7. According to the Complaint, the Defendants are: (i) HANDELSBANKEN; (ii) Peter Lars Johansson ("JOHANSSON"); (iii) Nicholas Nolter ("NOLTER"); (iv) Eric Nolter ("ERIC NOLTER"); (v) Factor Europe UK Limited ("FACTOR EUROPE") and; (vi) DOES 1-10.

8. I have been asked by HANDELSBANKEN to provide an expert opinion regarding the following issues relating to whether Swedish courts are an "adequate alternative forum" to try OPS' claims, namely: (i) whether the Swedish courts have jurisdiction over the Defendants; (ii) whether OPS' claims may be heard by a Swedish court, (iii) what causes of action appear to be open to OPS if the court was to apply Swedish law to the merits, and; (iv) whether the Swedish courts are independent and whether there are adequate procedural rules in Swedish law as ensure due process in connection with court litigation and collection of evidence.

## Jurisdiction over the Defendants

9. As a general rule, Swedish courts have jurisdiction over a defendant domiciled in Sweden.[1] In determining whether Swedish courts have jurisdiction over a defendant who is domiciled in a foreign state, the first issue is to determine in which state the defendant is domiciled. Pursuant to Swedish international procedural law and applicable international conventions and regulations, the domicile determines which rules apply to the issue of jurisdiction. Sweden is a member state of the European Union. It follows that if the defendant is domiciled in the UK, jurisdiction is to be determined pursuant to the Brussels I-Regulation ("Brussels I").[2] However, if the defendant is domiciled in the US, jurisdiction is to be determined pursuant to Swedish international procedural law.

10. In the following I will consider the jurisdiction of the Swedish courts in respect of each of the Defendants.

## HANDELSBANKEN and JOHANSSON

11. According to the Complaint, HANDELSBANKEN is one of the major Swedish banks, registered as a banking company under Swedish law. I have procured a copy of the Articles of Association of HANDELSBANKEN from the Swedish Companies Registry, which I attach to this declaration as Exhibit 2. The Articles of Association state that HANDELSBANKEN's Board of Directors has its seat in Stockholm. HANDELSBANKEN is therefore considered to be legally domiciled in Sweden and may be sued in a Swedish court.

12. According to the Complaint, JOHANSSON is an individual residing in Sweden. In determining whether an individual is domiciled in Sweden, for the purposes of jurisdiction a Swedish court would *inter alia* consider whether the residency is of a permanent nature.[3] As the Complaint does not indicate anything to the contrary I assume that JOHANSSON is legally domiciled in Sweden. On that basis JOHANSSON may be sued in a Swedish court.

---

[1] Chapter 10, Section 1 of the Swedish Code of Judicial Procedure and Bogdan, Svensk internationell privat- och processrätt, 6th ed., p. 117.
[2] Council Regulation (EC) No 44/2001 of 22 December 2002 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil or Commercial Matter.
[3] Bogdan, *op.cit.*, p. 148.

**FACTOR EUROPE**

13. According to the Complaint, FACTOR EUROPE is a UK limited liability company. The first issue is then to determine in which state FACTOR EUROPE is domiciled. Under Brussels I, a company is to be considered domiciled in the state where it has its statutory seat, central administration or principal place of business (Article 60.1 of Brussels I). As to the UK, "statutory seat" means the registered office or, where there is no such office, the place of incorporation or, where there is no such place, the place under the law of which the formation took place (Article 60.2 of Brussels I). Pursuant to this definition, FACTOR EUROPE has its statutory seat, and is legally domiciled, in the UK. However, a company may be domiciled in more than one state.[4] According to the Complaint, JOHANSSON is the sole director of FACTOR EUROPE and is residing in Sweden. It can therefore not be ruled out that a Swedish court could find that de facto the central administration or principal place of business of FACTOR EUROPE is in Sweden. In such case, it is possible that FACTOR EUROPE would be deemed to be domiciled in both the UK and Sweden.

14. The general rule under Brussels I is that a defendant domiciled in a member state is to be sued in the courts of that member state (Article 2.1 of Brussels I). Accordingly, pursuant to that general rule, FACTOR EUROPE may be sued in the UK and, possibly, also in Sweden.

15. In the event that FACTOR EUROPE should be considered to be domiciled only in the UK, FACTOR EUROPE is, pursuant to the general rule, to be sued in that jurisdiction. However, an exception to this rule is applicable in the case at issue.

16. Under Article 6.1 of Brussels I, a defendant domiciled in a member state may also be sued, when he is one of a number of defendants, in the courts of another member state where any one of them is domiciled and sued. However, in such case it is also required that the claims against the defendants are so closely connected as to make it expedient to hear and determine them together in order to avoid the risk of irreconcilable judgments resulting from separate proceedings. The Swedish Supreme Court in *Maersk Sverige AB*[5] has held that claims are adequately closely connected if they are based on essentially the same facts and the legal grounds are closely connected. According to the Complaint, JOHANSSON is the

---

[4] Bogdan, *op.cit.*, p. 138.
[5] *Maersk Sverige AB v. Tullverket et al* (NJA 2005 p. 652).

sole director of FACTOR EUROPE. The Complaint is silent on the issue of whether any alleged acts have been undertaken on behalf of FACTOR EUROPE by someone other than JOHANSSON. It appears that the alleged liability of FACTOR EUROPE results from the alleged acts of JOHANSSON. It is my opinion that a Swedish court would find that the claims against FACTOR EUROPE and JOHANSSON are sufficiently closely connected and that FACTOR EUROPE may therefore be sued in a Swedish court together with JOHANSSON.

**NOLTER and ERIC NOLTER**

17. According to the Complaint, NOLTER and ERIC NOLTER are individuals residing in the US. I therefore assume that NOLTER and ERIC NOLTER are also legally domiciled in that jurisdiction. The jurisdiction of the Swedish courts over NOLTER and ERIC NOLTER is therefore to be determined pursuant to Swedish international procedural law.

18. The rules on domestic jurisdiction contained in Chapter 10 of the Swedish Code of Judicial Procedure (the "Code") function, by way of analogy, also as rules on international jurisdiction.[6] Where a defendant is domiciled in a foreign non-EU state, Swedish courts have jurisdiction, *inter alia*, if: (i) the defendant owns property in Sweden (Chapter 10, Section 3 of the Code); (ii) in a case of tort, when the tort occurred in Sweden or the damage occurred in Sweden (Chapter 10, Section 8 of the Code) and; (iii) where the defendant is one of several defendants, another defendant is domiciled in Sweden and the claims are based on essentially the same grounds, and provided further that the defendant has an evident connection to Sweden (Chapter 10, Section 14 of the Code). The last-mentioned rule has been addressed by the Swedish Supreme Court in *ATS-Autotechnik Spezialerzeugnisse*.[7] The court held in that case that one of the defendants, domiciled in the UK, had an evident connection to Sweden because he was a Swedish citizen, employed by a Swedish company and residing in Sweden about three months each year.

19. The Complaint does not provide any information that would allow me to determine definitively whether Swedish courts have jurisdiction over NOLTER and ERIC NOLTER under the aforementioned rules. However, to the extent that these Defendants own property in Sweden, did commit torts in Sweden, or have an evident connection to Sweden (of the type

---

[6] Bogdan. *op.cit.*, p. 114-116.
[7] *ATS-Autotechnik Spezialerzeugnisse v. Think Tank AB et al* (NJA 1986 p. 729)

described in the previous paragraph), then it is likely that jurisdiction would exist also under Swedish law.

## DOES 1-10

20. The Complaint does not provide any information that would allow me to determine whether Swedish courts have jurisdiction over DOES 1-10. As will be mentioned below a Swedish court will require that a party to a law suit be fully identified.

### Right for a Swedish Court to Hear the Claims as such

21. It is my opinion that the claims, as currently formulated in the Complaint as such, may be heard by the Swedish courts irrespective of which substantive law is considered to apply. In the following I will broadly consider the claims available to OPS if a Swedish court were to find that the case should be determined by applying Swedish substantive law to the merits.

### Causes of Action under Swedish Substantive Law

22. The Complaint involves allegations of various acts of the Defendants, namely: (i) conversion; (ii) aiding and abetting conversion; (iii) aiding and abetting fraud; (iv) negligence; (v) violation of the New York Uniform Deceptive Trade Practices Act (N.Y. CLS Gen. Bus. § 349). To my understanding, the Complaint does not explicitly accuse the Defendants of committing fraud.

23. Under Swedish law, before a civil court can award damages for acts like conversion, fraud, or aiding and abetting, the civil court would first have to determine whether a defendant's acts satisfy the definition for criminal conversion, fraud, or aiding and abetting. In so doing the civil court will not impose any criminal law sanction on the defendant. Accordingly, if OPS is successful in proving its allegations, OPS may be able to base its claims on the following.

24. OPS could base its claims on the argument that the Defendant's acts constitute criminal *conversion*. Conversion under Swedish law is defined in Chapter 10, Section 1 of the Swedish Penal Code:

> "A person who, through a contract or public or private service or a similar situation, has gained possession of property on behalf of another with the obligation to deliver it or account for it, and appropriates the property or otherwise disregards what he has to

6

comply with in order to be able to fulfill his obligation, shall, if the act results in gain for him and loss to the owner, be sentenced for conversion (*Sw: förskingring*) to imprisonment for a maximum of two years."

25. Another possible cause of action is breach of *faith committed by an agent against his principal*.[8] This crime is defined in Chapter 10, Section 5 of the Swedish Penal Code):

"A person who, by reason of a position of trust has been given the task of managing another's financial affairs or independently handling an assignment requiring qualified technical knowledge, or exercising supervision over the management of such affairs or assignment, abuses his position of trust and thereby injures his principal, shall be sentenced for *breach of faith committed by an agent against his principal* (*Sw: trolöshet mot huvudman*) to a fine or imprisonment for a maximum of two years. The foregoing does not apply if the crime is punishable under Sections 1-3.
   If the crime is gross, imprisonment for at least six months and a maximum of six years shall be imposed. In assessing whether the crime is gross, special attention shall be given to whether the offender used a false document or misleading bookkeeping or caused his principal a substantial or particularly keenly felt loss.
   A person who has been given the task of managing another's legal affairs and abuses his position of trust to the detriment of his principal, shall be sentenced in accordance with the first paragraph even if the affairs are not of a financial or technical nature. (Law 1986:123)"

26. An alternative cause of action would be *fraud*, which is defined in Chapter 9, Section 1 of the Swedish Penal Code:

"If a person by deception induces someone to commit or omit to commit some act which involves gain for the accused and loss for the deceived or someone represented by the latter imprisonment for a maximum of two years shall be imposed for *fraud* (*Sw: bedrägeri*).
   A sentence for fraud shall also be imposed on a person who, by delivering incorrect or incomplete information, or by making alterations to a program or recording or by other means, unlawfully affects the result of automatic data processing or any other similar automatic process so that gain accrues to the offender and loss is entailed by any other person. (Law 1986:123)"

27. Aiding and abetting a crime is also a criminal act and is defined in Chapter 23, Section 4 of the Swedish Penal Code:

"Punishment as provided for an act in this Code shall be imposed not only on the person who committed the act but also on anyone who furthered it by advice or deed. The same shall also apply to any other act punishable with imprisonment under another law or statutory instrument.

---

[8] Holmqvist, Leijonhuvud, Träskman, Wennberg, Brottsbalken, En kommentar, 3ed ed, 10:10.



> A person who is not regarded as the perpetrator shall, if he induced another to commit the act, be sentenced for instigation of the crime and otherwise for aiding and abetting the crime.
> Each accomplice shall be judged according to the intent or the negligence attributable to him. Punishment defined in law for the act of a manager, debtor or other person in a special position shall also be imposed on anyone who was an accomplice to the act of such person.
> The provisions of this paragraph do not apply if the law provides otherwise in special cases. (Law 1994:458)"

28. It should be pointed out that Defendant HANDELSBANKEN and FACTOR EUROPE, who are legal entities, can not be held liable to pay damages on the basis that they themselves have committed criminal acts. Instead, pursuant to Chapter 3, Section 1 of the Swedish Tort Liability Act, legal entities liability for criminal acts results from the criminal acts of its employees if committed in the performance of their employment. Acts committed during hours of duty and in the performance of the employees' normal duties are generally considered to have been committed in the performance of their employment.[9] In my opinion, there is nothing in the Complaint to suggest that the acts of Paul Breakspear and Sarah Gustafsson were not conducted in the performance of their respective employments. Further, according to the Complaint, JOHANSSON is not an employee of FACTOR EUROPE but is the company's sole director. A legal entity is also liable at civil law for acts committed by its directors.[10]

29. Under Swedish law, a defendant is liable to pay damages for any criminal act irrespective of which category the crime falls into. Accordingly, if OPS is successful in proving that the Defendants have committed the acts alleged in the Complaint it is my opinion that a Swedish court is likely to find that the Defendants are liable to pay damages based on the Defendants or their employees/directors having committed criminal acts, such as those mentioned above.

30. A few final remarks are in order regardless of whether US or Swedish law is to be applied to the merits. A claim must be adequately precise and specified so that the court can render a judgment based on the specific claim (Chapter 42, Section 2 of the Code). OPS' claim for "other relief as this Court deems proper and just" is not adequately precise. Unless

---

[9] Hellner, Radetzki, Skadeståndsrätt, 7th ed, p. 161. *Erkki M et al v. Advokatfirman Kurt L Aktiebolag et al* (NJA 2000 p. 639)
[10] Hellner, Radetzki, *op.cit.*, p. 151.

better specified in the course of the proceedings a claim so formulated would be dismissed without prejudice by a Swedish court.

31. Further, an Application for Summons is to state the name of the defendant (Chapter 42, Section 1 of the Code). If the application is incomplete the court will order the plaintiff to rectify it (Chapter 42, Section 3 of the Code). If the plaintiff fails to comply the court will dismiss the claim without prejudice (Chapter 42, Section 4 of the Code). Consequently, OPS' claims against DOES 1-10 would be dismissed without prejudice if OPS is unable to state the true name of DOES 1-10. However, if OPS were to identify DOES 1-10 in the course of the proceedings, OPS may bring suit against such further defendants together with the original Defendants if the court finds that it would benefit the conduct of the case (Chapter 14, Section 6 of the Code).[11] It is usual that the court seeks to consolidate such cases unless there are strong reasons against it.

## The Swedish Court System

## Independent, Autonomous and Impartial Courts

32. The Swedish courts dealing with civil cases are designated as general courts. General courts are organized in a three-tier system: District Courts, Courts of Appeal and the Supreme Court. A District Court is a court of first instance (Chapter 1, Section 1 of the Code).

33. An independent and impartial judicial system is guaranteed by the Code and the Instrument of Government (the "IG"). The latter forms part of the constitutional legislation of Sweden.

34. Swedish courts are independent and autonomous vis-à-vis the Riksdag, the Swedish Parliament, the Government and other public agencies. (Chapter 11, Section 2 of the IG)

35. Swedish courts are obligated to observe the equality before the law of all persons, and to act objectively and impartially. (Chapter 1, Section 8 of the IG)

36. A permanently appointed salaried judge is appointed by the Government (Chapter 4, Section 2 of the Code). A judge may be removed from office only if he has shown himself to be manifestly unfit to hold office through a criminal act or through gross or repeated neglect

---

[11] Permission by the Swedish Supreme Court is required for a court to try two cases together which were originally filed at two different courts (Chapter 14, Section 7a of the Code).

of his official duties, or if he has reached the relevant retirement age or otherwise is obligated by law to retire (Chapter 11, Section 5 of the IG).

37. A judge is to be disqualified from hearing a case if, *inter alia*, he is a party to the case, or otherwise has an interest in the matter at issue, or can expect extraordinary advantage or damage from the outcome of the case, if he is related to one of the parties, or if some other special circumstance exists that is likely to undermine the confidence in his impartiality in the case. (Chapter 4, Section 13 of the Code)

38. I can confidently state that the aforementioned rules are strictly adhered to and that the Swedish justice system is independent, autonomous and impartial. Corruption in the Swedish court system is virtually unheard of. I will focus below on some procedural issues which I believe may be of particular interest to this Court.

**Procedural Rules**

39. Civil cases before the District Courts are heard by three legally skilled judges. (Chapter 1, Section 3a of the Code)

40. A District Court judgment may be appealed on the merits to the Court of Appeal (Chapter 49, Section 1 of the Code). A Court of Appeal judgment in turn may be appealed on the merits to the Supreme Court if leave to appeal is granted (Chapter 54, Section 1 and 9 of the Code). Leave to appeal is only granted if it is of importance for the guidance of the application of the law that the Supreme Court hears the appeal, or there are extraordinary reasons justifying review such as substantive defects in the judgment or grave procedural errors or gross oversight or gross mistake in the Court of Appeal (Chapter 54, Section 10 of the Code).

41. Court hearings are public and are held in Swedish (Chapter 5, Section 1 of the Code). The general rule is that all filings made with the court are to be drafted in the Swedish language. If required, however, the court may provide for the translation of documents filed with or dispatched from the court. (Chapter 33, Section 9 of the Code) In my experience, most Swedish judges are reasonably conversant with the English language. It frequently happens that English language documents of an evidentiary nature are filed. In such case it is for the court to decide if and to what extent Swedish translations are required. Usually the

court will require translations of the more important documentary evidence. The party's costs of translation are included in the party's litigation costs.[12]

42. A party may be represented by an attorney (Chapter 12, Section 1 of the Code). To be able to act as an attorney and have the right of audience before the court, a person must be deemed suitable by the court. In determining suitability the court will give consideration to the knowledge and experience of the representative. Courts are not declined to disqualify a representative selected by a party. The attorney must, however, master the Swedish language and should in principle be resident in Sweden or another state within the European Economic Area or Switzerland. Nonetheless, other persons may act as an attorney if, with regard to the circumstances, the court considers it appropriate (Chapter 12, Section 2 of the Code). It is very likely that a Swedish court would allow OPS to be represented by an American attorney. A Swedish attorney may be assisted by an American attorney.

43. Early dismissal of the plaintiff's claim may only be rendered if it is evident to the court that the grounds stated in support of the claim do not constitute a sufficient legal basis or if it is otherwise clear that the case is unfounded (Chapter 42, Section 5 of the Code). The Swedish Supreme Court in *Ann G*[13] held that, *inter alia* by reference to Article 6.1 of the European Convention for the Protection of Human Rights and Fundamental Freedoms, this rule is to be applied with great caution. In my opinion, the risk of early dismissal in the case at issue is highly improbable.

44. The *jura novit curia*-principle applies and the parties therefore have no obligation to present proof as to the contents of Swedish law (Chapter 35, Section 2 of the Code).

45. A Swedish court can apply foreign law. If foreign law is to be applied and its content is not known to the court, it may request the party to present proof thereof (Chapter 35, Section 2 of the Code). Such request is normally directed to the party which relies on foreign law.[14] The court or the requested party may turn to the Ministry for Foreign Affairs with a request for assistance. The court may alternatively submit a request for information to the Ministry of Justice who will forward the request to the competent authority in the foreign state in

---

[12] The distribution of litigation costs is discussed in paragraph 50.
[13] *Ann G v. Swedish Match Sverige AB* (NJA 1998 p. 278)
[14] Bogdan, *op.cit.*, p. 51.

accordance with the European Convention of 7 June 1968 on Information on Foreign Law.[15] The UK is a contracting state to the Convention but the US is not. In practice, a civil litigant relying on foreign law would usually submit an expert opinion to cover the point.

46. Swedish witnesses are obliged to appear in court, take oath, testify and tell the truth.[16] Refusal to appear in court, to take oath or to testify is subject to civil sanctions (Chapter 36, Section 7 and 20-23). Perjury is subject to criminal sanction (Chapter 15, Section 1 of the Swedish Penal Code).

47. Witness examination starts with an examination-in-chief conducted by the party calling the witness (Chapter 36, Section 17, Paragraph 1 of the Code). The witness is usually first required to give testimony by continuous narrative. Leading questions are not allowed in chief. Examination-in-chief is followed by cross-examination conducted by the other party (Chapter 36, Section 17, Paragraph 2 of the Code). Leading questions are allowed during cross-examination. After cross-examination, the party that called the witness may ask supplementary questions in re-examination (Chapter 36, Section 17, Paragraph 3 of the Code). Leading questions are not allowed during re-examination unless the witness has become "hostile" during cross-examination.[17] Finally, additional questions may be put to the witness by the other party or by the court. By and large it appears that the Swedish system for examining witnesses is much closer to the Anglo-Saxon system than to the systems prevailing in continental Europe.

48. At the request of a party, the court may order the other party or a third party to produce written documents which are deemed to have evidentiary relevance to the dispute (Chapter 38, Section 2 of the Code). However, a pre-requisite for an order to that effect is that the court finds that the documents have been reasonably identified by the requesting party and that they can be assumed to have evidentiary value.[18] If the party to whom the document production request is directed claims that he is not in possession of the requested documents the court may order him to testify (Chapter 38, Section 4 of the Code). Refusal to produce written documents is subject to sanctions (Chapter 38, Section 5 of the Code). It is pertinent

---

[15] Regulation (1981:366) on the right in certain cases to request information about the content of foreign law.
[16] Testimony of foreign witnesses is discussed in paragraph 49.
[17] Lindell, Civilprocessen, 2nd ed., p. 430.
[18] Lindell, *op.cit.*, p. 444.

to mention in this context that the procedure of producing written documents is much more restrictive than compared to US-style discovery.

49. According to the Council Regulation (EC) No. 1206/2001, Swedish courts may request the taking of evidence by the competent court of another member state of the EU.[19] For instance, if a party in the case now at issue would require the testimony of Paul Breakspear who, according to the Complaint, is residing in the UK a Swedish court may submit a request to the competent court in the UK for the taking of his testimony. The parties and their attorneys have the right to be present at the taking of evidence at the court.[20] Swedish courts may also request the taking of evidence by a competent court in the US pursuant to the Hague Convention.[21]

50. The costs of the proceeding are as a general rule borne by the unsuccessful party (Chapter 18, Section 1 of the Code).

51. In some cases, a Swedish court may, at the request of the defendant, order the plaintiff to provide security for the possible payment of the defendant's litigation costs. Persons who may request security (but are not obligated to provide security) are: (i) Swedish citizens, persons domiciled in Sweden and Swedish legal persons; (ii) citizens, persons domiciled, and legal persons created under the laws of a state in the European Economic Area and; (iii) citizens or legal persons of a state signatory to an applicable international agreement.[22] The UK is a state in the European Economic Area. However, the US is not a signatory state to any applicable international agreement.[23] OPS, as a New York corporation, would be required to provide security. However, if ECS, rather than OPS, brought claims in Sweden it would not be obliged to provide security because ECS is a UK corporation. Defendants HANDELSBANKEN, JOHANSSON and FACTOR EUROPE may request security, but Defendants NOLTER and ERIC NOLTER may not.

---

[19] Council Regulation (EC) No 1206/2001 of 28 May 2001 on co-operation between the courts of the member states in the taking of evidence in civil or commercial matters.
[20] Act (2003:493) on EC's regulation on the taking of evidence in civil or commercial matters.
[21] The Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters.
[22] Sections 1 and 5 of the Act (1980:307) on the obligation of foreign plaintiffs to provide security for litigation costs.
[23] Announcement (2005:784) on the exemption in certain cases for foreign plaintiffs to provide security for litigation costs. Announcement (2007:150) on foreign signatory states to certain convention on co-operation in civil matters.

52. A judgment by a Swedish court is to be recognized and enforced in Sweden and all member states of the EU pursuant to Brussels I (Article 38 of Brussels I).

53. An appeal of a District Court judgment to the Court of Appeal is to be filed with the District Court within three weeks from the date it was rendered (Chapter 50, Section 1 of the Code). Facts and evidence not previously presented may be invoked on appeal only if the party shows probable cause for not invoking the facts or evidence in the District Court or otherwise has a valid excuse (Chapter 50, Section 25, Paragraph 3 of the Code). An oral hearing is to be held unless, *inter alia*, it is obviously unnecessary or no party requests that an oral hearing be held (Chapter 50, Section 13 of the Code). The Court of Appeal is bound by the District Court's evaluation of witness testimony unless the witness testifies again at the oral hearing (Chapter 50, Section 23 of the Code).

54. I can confidently state that the Swedish rules of procedure cater for the efficient and competent resolution of disputes.

## Conclusion

55. For all these reasons, I believe that Sweden would provide an adequate alternative forum for litigation of the type that has been brought against Defendants HANDELSBANKEN, JOHANSSON and FACTOR EUROPE. The Swedish courts would have jurisdiction over the NOLTER Defendants, subject to the assumptions set out in paragraph 19.

**I declare under penalty of perjury under the laws of the United States that the foregoing is true and accurate.**

**Executed on 17 December 2007, in Stockholm, Sweden**

Claes Lundblad