|  |  |
|---|---|
| ONLINE PAYMENT SOLUTIONS INC., a New York corporation. | **Civil Action No.: 07 CIV 8692 (PKL)** |
| Plaintiff, | |
| vs. | |
| SVENSKA HANDELSBANKEN AB, PETER LARS JOHANSSEN, NICHOLAS NOLTER, ERIC NOLTER aka ARYKSIN NOBLE, FACTOR EUROPE UK LIMITED, and DOES 1-10, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SVENSKA HANDELSBANKEN A.B.'S MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................1

SUMMARY OF THE FACTS..................................................................2

ARGUMENT..................................................................3

I.  DEFENDANT'S MOTION TO DISMISS
    ON THE GROUNDS OF FORUM
    NON CONVENIENS MUST BE DENIED..................................................3

    A.  DEFENDANT BEARS THE BURDEN OF
        ESTABLISHING ALL ELEMENTS OF THREE
        PART INQUIRY FOR A MOTION TO DISMISS
        ON GROUNDS OF FORUM NON CONVENIENS...........................3

    B.  PLAINTIFF'S CHOICE OF FORUM IS
        ENTITLED TO DEFERENCE.....................................................3

        1.  Defendant Has Not Met Its Burden of Establishing
            That Plaintiff's Choice of New York Was Motivated
            By Forum Shopping Reasons..........................................5

    C.  DEFENDANT MOTION CANNOT BE GRANTED
        AS IT HAS NOT MET ITS BURDEN OF SHOWING
        AN ADEQUATE ALTERNATE FORUM.......................................5

        1.  Defendant's Evidence Shows That Sweden is Not an
            Adequate Alternative Forum.........................................5

        2.  England Does Not Constitute an Adequate Alternative Forum...........7

    D.  PRIVATE AND PUBLIC INTERESTS
        WEIGH AGAINST DISMISSAL...............................................8

        1.  Private Interest Factors Do Not Weigh Heavily in
            Defendant's Favor And, Thus, Cannot Support
            A Motion to Dismiss....................................................8

            a.  The Vast Majority of Witnesses and Evidence
                Are Located in the U.S..........................................8

|  |  | b. | Compulsory Process Over Unwilling Witnesses And Costs of Obtaining Attendance of Witnesses Does Not Weigh Heavily In Favor of Defendant | 11 |

|  |  | 2. | Public Interest Factors Weigh Against Defendant's Motion to Dismiss On Grounds of Forum Non Conveniens | 13 |

| II. | PLAINTIFF HAS STANDING AS TO HANDELSBANKEN | | | 13 |

| III. | FAILURE TO STATE A CLAIM | | | 14 |

|  | A. | PLAINTIFF HAS STATED A CLAIM FOR AIDING AND ABETTING CONVERSION | | 14 |

|  | B. | PLAINTIFF STATED A CLAIM FOR AIDING AND ABETTING FRAUD | | 16 |

|  |  | 1. | Plaintiff Has Pled Reliance | 16 |

|  |  | 2. | Plaintiff Has Pled Reasonable Reliance | 17 |

|  |  | 3. | Plaintiff Has Pled That Svenska Substantially Assisted The Fraud | 19 |

|  |  | 4. | Plaintiff Has Pled That Handelsbanken Materially Participated in the Fraud | 20 |

|  |  | 5. | Plaintiff Has Pled Actual Knowledge | 22 |

|  | C. | PLAINTIFF STATED A CLAIM FOR NEGLIGENCE | | 22 |

|  | D. | PLAINTIFF STATED A CLAIM FOR DECEPTIVE TRADE PRACTICES | | 24 |

|  | E. | PLAINTIFF PLED WITH PARTICULARITY | | 24 |

| IV. | CONCLUSION | | | 25 |

# TABLE OF AUTHORITIES

## Cases

*AD Rendon v. Lumina*, 2007 WL 2962591 (S.D.N.Y. 2007)..........................................................15, 16

*Aiken v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323 (S.D.N.Y.2006)..........................23

*Albion Alliance Mezzanine Fund, L.P. v. State Street Bank and Trust Co.,*
8 Misc.3d 264 (N.Y.Sup.Ct. 2003).........................................................................................21, 22

*Bernstein v. La Rue,* 120 A.D.2d 476 (N.Y.A.D.1986)................................................................15

*Blackrock v. Schroders*, 2007 WL 1573933 (S.D.N.Y., 2007)...............................................5, 9, 10

*Century Pacific v. Hilton,* No. 03-CV-8258(KMK),
2007 WL 3036172 (S.D.N.Y. Oct 17, 2007)...............................................................................18

*DiRienzo v. Phillips,* 294 F.3d 21 (2d Cir. 2002).................................................................. 4, 8, 10

*Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC,*
479 F.Supp.2d 349 (S.D.N.Y.2007).....................................................................................14, 20

*Goshen v. Mutual Life,* 98 N.Y.2d 314 (2002)......................................................................... 24

*Haywin Textile . v. International Finance Inv.* 137 F.Supp.2d 431 (S.D.N.Y.2001)..................11, 13

*In re Parmalat Securities Litigation*, 477 F.Supp.2d 602 (S.D.N.Y. 2007).....................................17

*In re September 11 Property Damage and Business Loss Litigation,*
468 F.Supp.2d 508 (S.D.N.Y.2006).....................................................................................23, 24

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d. Cir 2001)......................1, 2, 3, 4, 5, 6, 8, 13

*Key Bank of New York v. Grossi*, 227 A.D.2d 841 (N.Y.A.D. 1996)...............................................16

*Klonis v. National Bank of Greece, S.A.,* 487 F.Supp.2d 351 (S.D.N.Y. 2006)...........8, 9, 10, 11, 13

*Kolbeck v. Lit*, 939 F.Supp.240 (S.D.N.Y. 1996)........................................................................20

*Leibowitz v. Cornell Univ.*, 445 F .3d 586 (2d Cir. 2006).............................................................14

*Meese v. Miller*, 79 A.D.2d 237 (N.Y.A.D. 1991).......................................................................15

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157 (2d. Cir. 1999)......................18

*Norex Petroleum Ltd. v. Access Industries, Inc.,* 416 F.3d 146 (2d Cir. 2005).....................3, 6, 7, 8

*Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt,*
684 F.2d 232, 235 (2d Cir.1982)............................................................................................12

*Petrohawk v. Law,* No. 06 Civ. 9404 (DLC),
2007 WL 211096 (SDNY Jan 29, 2007)...........................................................................13, 14

*Ramirez v. Starwood,* 448 F.Supp.2d 520 (S.D.N.Y., 2006)...................................2, 3, 4, 13

*Ross v. Bolton,* 639 F.Supp.323 (S.D.N.Y.1986).................................................................21, 22

*RSM Production vs. Fridman,* No. 06 Civ. 11512(DLC),
2007 WL 2295897 (S.D.N.Y. August 10, 2007)...............................................4, 6, 7, 8

*Schertenleib v. Traum,* 589 F.2d 1156..........................................................................................11

*Schlaifer v. Estate,* 119 F.3d 91 (2d Cir. 1997)................................................................................18

*Textiles Network v. DMC Enterprises,* No. 07 Civ. 393(DLC),
2007 WL 2460767 (S.D.N.Y. Aug. 31, 2007)................................................................14

*Tzaras v. Evergreen Intern. Spot Trading, Inc.,* 2003 WL 470611 (S.D.N.Y. 2003)...........................23

*White v. City of Mount Vernon,* 221 A.D.2d 345 (N.Y.A.D.,1995).......................................15

**Statutes**

N.Y. Gen. Oblig. Law § 13-101 (2008)..............................................................................................14

**Rules**

Fed.R.Civ.P. 8(a)(2).....................................................................................................................14

Fed.R.Civ.P. Rule 12(b)(6).............................................................................2, 14, 17, 18, 19

**Treatises**

14 N.Y. Prac., New York Law of Torts § 2:12 (2007)..............................................................15

Wright, Miller, 14D Federal Practice & Procedure § 3828.3 (2007)...........................................6, 7, 8



Marc Rowin (S.B.N. 1039239)
LYNCH ROWIN LLP
630 Third Avenue
New York, New York 10017
Telephone: 212-682-4001
Fax: 212-682-4003
Email: mrowin@lynchrowin.com

David Paul Steiner (SBN: 64638)
DAVID STEINER & ASSOCIATES
A Professional Corporation
1925 Century Park East, Suite 2350
Los Angeles, CA 90067-6019
Telephone No.: (310) 557-8422
Facsimile No.: (310) 274-8643
Cell Phone No.: (310) 556-0336
E-Mail: dpsartnetlaw@earthlink.net

Attorneys for Plaintiff
**ONLINE PAYMENT SOLUTIONS INC.,**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ONLINE PAYMENT SOLUTIONS INC., a New York corporation.

        Plaintiff,

vs.

SVENSKA HANDELSBANKEN AB,
PETER LARS JOHANSSEN, NICHOLAS
NOLTER, ERIC NOLTER aka ARYKSIN
NOBLE, FACTOR EUROPE UK LIMITED,
and DOES 1-10,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Civil Action No.: 07 CIV 8692 (PKL)**

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SVENSKA HANDELSBANKEN'S MOTION TO DISMISS

Plaintiff's Memorandum of Law in Opposition to Handelsbanken's Motion to Dismiss

1

## PRELIMINARY STATEMENT

2
3
        The allegations in the Complaint cannot be clearer in terms of showing that the
instant forum is the most proper venue for this Action, that Plaintiff has standing, and
that all causes of action have been sufficiently plead.

4
5
6
7
8
9
10
11
12
        This case involves a scheme that originated in the U.S. (Complaint at ¶¶ 16-18 );
was masterminded by two U.S. citizens (Complaint at ¶¶ 6- 7,16, 28); and operated
entirely on credit card processing technology that was not only created here by these
American Defendants, but specifically ran from computers and servers located in nearby
Florida. (Complaint at ¶28). Each and every credit card transaction that is the subject of
this suit was processed in the U.S. The funds appropriated by Defendants included those
from New York consumers and New York issuing banks. (Complaint at ¶¶ 14-15).
Indeed, the $6 million in stolen funds were neither induced by, nor turned over to, some
foreign entity deep in the bowels of Europe, but rather to a U.S. entity, namely
Scandorder, now dissolved, and, more precisely, to U.S. Defendants Nick and Eric
Nolter. Defendant has offered nothing to dispute these pivotal connections to the U.S..

13
14
15
16
17
18
19
20
21
22
23
24
25
26
        To be sure, other considerable facts establish a firm and paramount connection to
this forum.  Plaintiff OPS has been assigned the right to collect the $6 million that
Defendants appropriated.  In fact, OPS was formed by Jason Field, who was also the sole
principal of ECS World ("ECS"), now essentially defunct. (Field Decl. at ¶¶ 1, 3). Mr.
Fields has been a resident of Massachusetts since November 2006, and has been assigned
all of ECS' claims. (Field Decl. at ¶2). As of November 2006, ECS has no offices, no
employees, and conducts no business from the U.K.. (Field Decl. at ¶2).  Having been
denuded of millions by Defendants' fraud, Mr. Field merely seeks to litigate this case
(i) closer to where he resides, (ii) where the bulk of the evidence/witnesses are contained,
(iii) where defendants, including Handelsbanken and Eric and Nick Nolter, are actually
amenable to jurisdiction, and (iv) where Plaintiff can bear the expense. (Field Decl. at
¶5).   These are all legitimate factors of convenience that the Courts have found
incompatible with a claim of forum shopping, denying motions to dismiss on grounds of
forum non conveniens as a result.  *Iragorri v. United Technologies Corp.*, 274 F.3d 65,
72 (2d. Cir. 2001) (holding that the "factors that argue against forum non conveniens
dismissal include the convenience of the plaintiff's residence in relation to the chosen
forum, the availability of witnesses or evidence to the forum district, the defendant's
amenability to suit in the forum district, the availability of appropriate legal assistance,
and other reasons relating to convenience or expense.").

27
28

On an extraordinary forum non conveniens motion, Handelsbanken, as "[t]he defendant bears the burden" of showing that each and every factor in the three part analysis of forum non conveniens "tilts strongly in favor of the purported alternative forum." *See Ramirez v. Starwood,* 448 F.Supp.2d 520, 525 (S.D.N.Y. 2006). Defendant cannot meet and has not met its extraordinary burden. Indeed, it would appear that it is the Bank that is forum shopping here, seeking to have its case transferred to Sweden, where it admits it enjoys the status of being "one of the largest banks in Sweden." (Def. Memo at 1; *see Iragorri, supra,* 274 F.3d at 75) (stating that "Courts should be mindful that . . . defendants also may move for dismissal under the doctrine of forum non conveniens not because of genuine concern with convenience but because of . . . forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience."). Handelsbanken operates out of New York. (Complaint at ¶4). It also entered into a merchant banking agreement with a U.S. entity, namely Scandor.com (Complaint at at ¶30) , and received processing funds from New York banks and New York consumers.  It is more than proper for it to be held accountable in this forum, and the Bank does not question this court's jurisdiction over it.[1]  Simply said, Handelsbanken is not entitled to an extraordinary forum non conveniens dismissal. Defendant's 12(b)(6) motion is likewise improper, as is its standing motion.[2]

## SUMMARY OF THE FACTS

This case is about a credit card processing scheme that stole over $6 million in funds. The company through which the scheme was initiated and operated - Scandorder now dissolved - was a U.S. company, run by two U.S. citizens., Defendants Nicholas Nolter and Eric Nolter, residents of Florida. (Complaint at ¶¶ 6-7, 16).  Plaintiff's assignor, ECS, "entered into an agreement. . . with Scandorder Inc., ("Scandorder"), also know as Scandor.com," (Complaint at ¶16) for processing of credit card payments. ECS was induced into entering into the agreement, as a result of representations made by

---

[1] Since the Bank was properly sued in New York, if this Court does grant the forum non conveniens motion, Plaintiff respectfully requests that the Court condition the transfer on the bank's waiving its right to ask the Swedish or British court for security for costs from OPS, and that jurisdiction is taken over all Defendants.

[2] Plaintiff also asks that the Court allow it to conduct jurisdictional discovery with respect to Handelsbanken's experts, Clae Lundbald, and Tony Robertson. These witnesses have each offered opinions regarding foreign jurisdiction over Defendants that Plaintiff is entitled to explore further. Mr. Lundbald in particular has opined that he could not determine that there would be jurisdiction over the Nolter Defendants in the Sweden, something that is fatal to Defendant's case, and merits clarification.

Scandorder "acting through Scandor.com personnel Walid El Houri in Florida." (Complaint at ¶¶ 2, 16, 65), including about the existence of an authorized Visa/Mastercard ("MC") banking relationship with Handelsbanken. As it turned out Scandor.com did have a merchant banking agreement with Handlesbanken, (Complaint at ¶30), but what Plaintiff did not know was that Defendant's merchant account was opened by Handelsbanken in violation of Visa and Mastercard's rules, and as a result of payment of bribes and kickbacks. In fact, the entities party to the agreement lacked the credit card processing track record required to open a merchant account, and were run by individuals with a history of massive banking fraud. (Complaint at ¶33). Defendants merchant banking relationship with Handelsbanken thus allowed them to convert millions of dollars in Plaintiff's processing funds. (Complaint at ¶33).

<b><u>ARGUMENT</u></b>

**I.    DEFENDANTS MOTION TO DISMISS ON THE GROUNDS OF FORUM NON CONVENIENS MUST BE DENIED.**

**A.    <u>DEFENDANT BEARS THE BURDEN OF ESTABLISHING ALL ELEMENTS OF THREE PART INQUIRY FOR A MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS.</u>**

A three-part inquiry governs the analyses of motions to dismiss for forum non conveniens. *See Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146 (2d Cir. 2005); *Iragorri v. United, supra*, 274 F.3d at 65; *Ramirez v. Starwood, supra*, . 448 F.Supp.2d at 525. According to Second Circuit law, "[a]t step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests." *See Norex v. Access, supra*, 416 F.3d at 153. However, in all respects, "[t]he defendant bears the burden to establish clearly each factor ... and to demonstrate that the balance tilts strongly in favor of the purported alternative forum." *Ramirez v. Starwood, supra*, 448 F.Supp.2d at 525.

**B.    <u>PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO DEFERENCE</u>.**

Any review of a forum non conveniens motion starts with a strong presumption in favor of the plaintiff's choice of forum. *Norex v. Access, supra*, 416 F.3d at 154. Indeed, it is generally understood that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* Second Circuit case law has emphasized that "Courts should give deference to a plaintiff's choice of forum. . . . [and] a court reviewing a motion to dismiss for forum non conveniens should begin with

the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating" that each and every element of the three step test runs strongly in its favor. *Iragorri v. United*, 274 F.3d at 71; *DiRienzo v. Phillips*, 294 F.3d 21, 28 (2d Cir. 2002) (denying forum non conveniens dismissal from N.Y. to Canada).

Contrary to Defendant's assertion, a foreign plaintiff is indeed entitled to deference, though Plaintiff is not foreign, but rather an entity whose sole principal is a U.S. resident. *Iragorri v. United., supra*, 274 F.3d at 71. Deference towards a plaintiff's choice of forum extends to U.S. resident or even foreign plaintiffs, who have selected any U.S. forum for valid reasons, such as convenience. *Id* at 71-72. Where the plaintiff's choice is determined to stem more from concerns of convenience, it is entitled to greater deference. *Id.* The factors that argue in favor of such deference, and against forum non conveniens dismissal, include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." *Iragorri v. United., supra*, 274 F.3d at 71. Moreover, when "plaintiffs' choice of the 'defendant's home forum . . . is made to obtain jurisdiction over defendant ... substantial deference would still be generally appropriate." *RSM Production vs. Fridman*, No. 06 Civ. 11512(DLC), 2007 WL 2295897, at *8 (S.D.N.Y. August 10, 2007) (denying motion to dismiss on grounds of Non Conveniens from New York to Grenada).

As explained in the attached Declaration of Jason Fields, OPS was formed on behalf of Jason Fields, also the sole principal of ECS until it essentially ceased to operate in November 2006. (Field Decl. at ¶1). Mr. Field resides permanently in Massachusetts, has been assigned ECS' claim, and having been denuded of millions by this fraud, seeks to litigate this case in close proximity to where he resides, closest to key evidence and witnesses located in both New York and nea rby Florida, and in a forum where all defendants are actually amenable to jurisdiction, including Handelsbanken, (which voluntarily operates out of New York and has the benefit of established legal counsel here in White & Case). *See Irragori, supra*, 274 F. 3d at 71; Field Decl. at ¶¶ 2, 5). Plaintiff's forum selection is guided by convenience and, thus absolutely entitled to deference. *See Id.* Because, Mr. Field, as principal of OPS, permanently resides in Massachusetts -- a location that is much closer to New York than it is to Sweden or England – while Handelsbanken, and other Defendants, such as Eric and Nick Nolter, are also amenable to jurisdiction here, facts that weigh entirely in favor of Plaintiff's chosen forum of New York. *See e.g., Ramirez, supra*, 448 F.Supp.2d at 526.

1.     <u>Defendant Has Not Met Its Burden of Establishing That Plaintiff's Choice of New York Was Motivated By Forum Shopping Reasons</u>.

Defendant's contention that OPS is not "the real party in interest and chose New York for forum shopping reasons, rather than convenience," (Def. Memo. at 5) is in error.  The case law Defendant cites for the proposition that OPS is not the real party in interest in actuality makes clear that OPS is indeed a real party in interest. The *Blackrock* case cited by Handelsbanken actually says that to determine whether a Plaintiff "is the real party in interest here, the Court looks to whether it was a key member of the 'relationships and transactions that engendered the action.'" *Blackrock v. Schroders*, No. 07 Civ. 3183(PKL), 2007 WL 1573933 at *4-6. Mr. Field, the sole principal in OPS, was the former sole principal of ECS, now effectively defunct, and was a direct participant in all relationships and transactions that underlie this action. (Field Decl. at ¶¶ 6-11 ). Mr. Field assigned all of ECS claims to OPS, as a New York entity, of which Mr. Field is the sole principal.[3]  Under Defendant's own cited authority, OPS is most definitely a real party in interest, having a bona fide connection to the underlying facts of the Complaint, and entitled to deference to its chosen forum.

Second, Defendant has simply not met its burden of establishing that "plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons." *Id.*  Defendant has offered nothing to show that "plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum-the less deference the plaintiff's choice commands." *Iragorri v. United., supra*, 274 F.3d at 71.  Having failed to meet its burden of showing the specific factors outlined in this Circuit for establishing forum-shopping, Defendant's motion cannot stand

C.   **<u>DEFENDANT MOTION CANNOT BE GRANTED AS IT HAS NOT MET ITS BURDEN OF SHOWING AN ADEQUATE ALTERNATE FORUM</u>**

1.     <u>Defendant's Evidence Shows That Sweden is Not an Adequate Alternative Forum</u>

With respect to Sweden, Handelsbanken claims that all core events actually occurred in Sweden.  To accept Defendant's construction, Scandorder, Nick Nolter and

---

[3] By creating OPS, Mr. Field intent was merely to protect his reputation and that of his new business from associations with the Defendants – indeed, it is the reputational tarnish in the processing industry from the theft of millions by Defendants that contributed greatly to financial problems of Mr. Field's company, ECS. (Field Decl at ¶¶ 3, 4 ).

1    Eric Nolter, and even New York consumers and New York issuing banks would all have
2    to be erased from the face of the Complaint. In addition, Defendant alleges that Sweden
     is an adequate forum because "key witnesses and documents will be located there." (Def.
3    Memo. at 6). Yet, Defendant never identifies what key documents are actually located in
4    Sweden other than one account agreement.    It is questionable how many paper
     documents a Bank actually keeps these days.    (Field Decl. at ¶17).    Likewise,
5    Handelsbanken fails to the name of even one witness reposed in Sweden.

6        In the end, all of Defendant's arguments in support of a venue in Sweden ignore
7    the actual criteria upon which the law turns.    Under the second step of forum non
     conveniens analysis, to secure dismissal "a movant must demonstrate the availability of
8    an adequate alternative forum." *Norex, supra*, 416 F.3d at 157; *see also Iragorri, supra*,
9    274 F.3d at 73. The Second Circuit has made clear that "[i]f the movant fails to carry
10   this burden, the forum non conveniens motion *must be denied* regardless of the degree of
     deference accorded plaintiff's forum choice." *Norex, supra*, 416 F.3d at 157 (*emphasis*
11   *added*).    However, "an alternative forum is [only] adequate if the defendants are
12   amenable to service of process there, and if it permits litigation of the subject matter of
13   the dispute." *Id.*  An alternative forum "is deemed available if the case and all of the
     parties come within that court's jurisdiction." Wright, Miller, 14D Federal Practice &
14   Procedure § 3828.3 (2007). A Defendant's motion to dismiss on grounds of forum non
15   conveniens cannot be granted where Defendant has failed to demonstrate that all
16   defendants are "amenable to service in that [alternate] country." *RSM Production, supra*,
     No. 06 Civ. 11512(DLC), 2007 WL 2295897, at *8 (S.D.N.Y. August 10, 2007) (denying
17   motion to dismiss on grounds of Non Conveniens from New York to Grenada).

18       In conclusory fashion Defendant asserts that "other named defendants may also
19   be sued in both forums," referencing as its sole piece of evidence with respect to Sweden,
     a declaration from Clae Lundbald.  (Def. Memo. at 8).   However,  Mr. Lundbald's
20   declaration actually confesses that he cannot "determine definitively whether Swedish
21   courts have jurisdiction over [Nick] Nolter and Eric Nolter." (Lundbald Decl. ¶19).
22   Lundbald goes on to say that for him to even begin to entertain jurisdiction in Sweden he
     would need extraordinary facts which Defendant in no way can or has offered – such as
23   that the Nolters' owned property in Sweden, or "had an evident  connection to Sweden"
24   in the form of Swedish citizenship, a Swedish employer, or residence in Sweden for
25   around three months a year. (Lundbald Decl. ¶¶ 18-19).   It goes without saying that
     Defendant has not established that Sweden has jurisdiction over Nick or Eric Nolter.
26   Thus, Defendant's motion to dismiss on grounds of Forum Non Conviens cannot be
27   granted because it has failed to demonstrate that all defendants are subject to jurisdiction

28       Plaintiff's Memorandum of Law in Opposition to Handelsbanken's Motion to Dismiss    6

1    in the alternate country. *See RSM Production, supra*, No. 06 Civ. 11512 (DLC), 2007

2    WL 2295897, at *8; *see also* Wright, Miller, 14D Federal Practice & Procedure § 3828.3

3    (2007). While Handelsbanken may claim that it would consent to jurisdiction abroad, the

     fact of the matter is that no other Defendant has similarly given such consent. Thus, the

4    "non conveniens motion must be denied regardless of the degree of deference accorded

     plaintiff's forum choice." *Norex, supra*, 416 F.3d at 157.

5
     2.    England Does Not Constitute an Adequate Alternative Forum

6          Despite the fact that Handelsbanken already alleged that "the core events at issue

7    occurred in Sweden and Svenska's key witnesses and documents will be located there,"

8    (Def. Memo at 6), Defendant claims it is still willing to take England over the U.S.. The

     simple admission that core events, witnesses and documents are all not in England would

9    seem to foreclose a credible argument that England is a proper forum for this case.

10   Defendant even later admits that England is really not a convenient forum after all,

11   (Def. Mem at 10).    The declaration of Anthony Robinson that Defendant submits in

     support of its claim that England is an adequate alternative forum, states that "Against the

12   Nolters, the English Court would have to discretion to stay the [English] proceedings on

13   grounds of forum conveniens grounds." (Robinson Decl. at ¶89).    The Robinson

14   declaration points out that if the English Court "considers that there is another forum

     which apparently is as suitable or more suitable than England, it will normally refuse"

15   jurisdiction. (Robinson Decl at ¶87(3)).   Under the facts of the Complaint, this New

16   York forum would certainly be more suitable than England, and most certainly 'as'

17   suitable.  Neither Plaintiff nor its assignor is located in U.K..  ECS, as the assignor,

     entered into a processing transaction with a U.S. corporate entity and had all online

18   transactions actually processed through computers and technology located in Florida.

19   ECS never spoke to or engaged in any intentional formal business with any English

20   entity, such as Factor Europe. In fact, Factor Europe only became relevant to ECS after

     Plaintiff's funds went missing, and an investigation found the funds *had passed* through a

21   Factor Europe account briefly while on their way to other accounts around the world.

22   (Field Decl. at ¶15).  This hardly makes this case a dispute between ECS and Factor

23   Europe, as Defendant strains to argue, as the two never entered into a agreement or even

     had one dialogue.  Further, Factor Europe is never alleged to have been anything other

24   than an empty shell through which stolen funds temporarily passed. (Field Decl. at ¶15)

25         Defendant's admission that England contains neither important documents nor

26   witnesses, its failure to demonstrate that England is as suitable a forum as New York, and

     that all  defendants – including the Nolters – are subject to jurisdiction in England,

27

28

1    justifies dismissal of the Forum Non Conviens motion as well. *See RSM Production,*

2    *supra,* 2007 WL 2295897, at *8 See Wright Miller, *supra,* § 3828.3.

**D.**    **PRIVATE AND PUBLIC INTERESTS WEIGH AGAINST DISMISSAL.**

3       The last step in the forum non conveniens analysis requires the Court to balance

4    the relevant private and public interest factors to determine whether the plaintiff's choice

5    of forum is less convenient than the defendant's proposed alternative forum. The balance

6    of these factors must also be *"strongly in favor of defendant"* in order for dismissal to be

7    appropriate. *Norex, supra,* 416 F.3d at 154; *Klonis v. National Bank of Greece, S.A.* 487

F.Supp.2d 351, 359 (S.D.N.Y. 2006) (*emphasis added*).

8    1.    Private Interest Factors Do Not Weigh Heavily in Defendant's Favor And, Thus, Cannot Support A Motion to Dismiss.

9       The relevant private interest factors in this case are: "[1] the ease of access to

10    sources of proof; [2] the availability of compulsory process for attendance of unwilling,

11    and the cost of obtaining attendance of willing, witnesses; ... and [3] all other practical

12    problems that make trial of a case easy, expeditious and inexpensive." *Iragorri, supra,*

13    274 F.3d at 73-74; *Klonis, supra,* 487 F. Supp. 2d at 359. In considering these factors,

the court is necessarily engaged in a comparison between the hardships defendant would

14    suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as

15    the result of dismissal and the obligation to bring suit in another country. However, the

16    bottom line to this inquiry is that each factor must "weigh heavily in defendant's favor."

*Klonis, supra,* 487 F. Supp. 2d at 359. A Plaintiff may not be "deprived of their choice

17    of forum except upon defendants' clear showing that a trial in the United States would be

18    so oppressive and vexatious to them as to be out of all proportion to plaintiffs'

19    convenience." *DiRienzo v. Philip Services Corp, supra,* 294 F.3d at 30 (denying motion

to dismiss on grounds of forum non conveniens from New York to Canada). As a result,

20    Defendants' failure to show "oppressiveness and vexation ... out of all proportion to

21    plaintiff[s'] convenience," particularly in light of this Circuit's general "skepticism which

22    should accompany defendants' forum non conveniens motion," warrants absolute denial

of a motion to dismiss. *Id.*

23    a.    The Vast Majority of Witnesses and Evidence Are Located in the U.S.

      In terms of the "relative ease of access to sources of proof," *Iragorri, supra,* 274

24    F.3d at 73-74, the vast majority of witnesses and evidence are in actuality located in the

25    United States in and near close proximity of New York. Scandorder, a nonparty witness,

with whom ECS entered into this transaction, was based in Florida. All of Scandorders

26    processing technology, servers, computers and data logs contained thereon are likewise

27    in Florida. Indeed Florida is and was where two of the key Defendant's (and witnesses)

28   

Nick and Eric Nolter resided and reside. (Complaint at ¶¶ 6-7). The Nolter Defendants have even served their answer from Florida in response to this Complaint. Employees of Scandorder, including Walid El Houri, whose representations affirmatively induced the turnover of $6 million, were all based in Florida. (Complaint at ¶65).

ECS' principal, Jason Field, who acted almost entirely on ECS' behalf with respect to all the transactions and interactions with Defendant, is likewise a resident of the United States, living within close proximity of New York in Massachusetts. (Field Decl at ¶¶ 1, 2). Mr. Field holds all ECS records incident to these transactions here in the states, because ECS no longer has offices, employees or operations in the U.K. or anywhere else in the world.. (Field Decl at ¶¶ 1, 2). Jodi Ladakakos Field, former office manager for ECS, who after Mr. Field is the person most knowledgeable about the ECS and Scandorder transaction is also a resident of Massachusetts and a citizen of the U.S. (Field Decl at ¶¶ 2, 9). New York consumers and New York issuing banks are, of course, easily accessible in New York as witnesses, as is documentary evidence about their transactions. A list of the names of these witnesses has been provided by Plaintiff. (Ex. A to Field Decl). Furthermore, Mastercard, whose rules and regulations Handelsbanken is repeatedly alleged to have intentionally violated in opening the merchant processing account for Defendants, is likewise based in New York. (Field Decl at ¶7). Their rules and regulations, needed to show that the bank did not act prudently and as it was required to, are confidential materials which can only be obtained by subpoena. Mastercard's headquarters being within the Southern District of New York, means that it can be compelled to send a live witness to the trial if the case is kept here. Visa, in turn, is a globally headquartered in San Francisco (Field Decl at ¶7), also closer to New York than to Sweden or England. To be precise, none of these witnesses or evidence would be local to Sweden or England, both of which are thousands of miles removed. Not only do these facts not "weigh heavily in defendant's favor," they instead weigh heavily for Plaintiff. *See Klonis, supra,* 487 F. Supp. 2d at 359.

Even if there might be a few relevant documents abroad, "defendant has not indicated that this case is likely to involve voluminous documents or many" foreign witnesses, as would have been its duty. *Klonis, supra,* 487 F. Supp. 2d at 359. In fact, as the case law Defendant cites, *Blackrock v. Schroders,* 2007 WL 1573933 *8-*9 (S.D.N.Y. 2007) stresses, where "the bulk of the non-testimonial sources of proof in this case is documentary, and largely electronic, and thus is readily transportable" this is not a private interest factor that can weigh in Defendant's favor. A Bank's documents are likely to be electronic documents that are readily transportable, as it is doubtful that Handelsbanken has a mass of paper documents in a vault in Sweden. (Field Decl at ¶17).

Furthermore, documents in this case are not merely "concentrated in any one geographic area" as would be required for this factor to weigh in Defendant's favor anyway. *See Blackrock, supra,* 2007 WL 1573933 *9. Many documents are in Florida, many in Massachusetts, some in New York, a few may be in Sweden, while doubtfully any remain in England -- thus, again per Defendant's own cited case law, this factor simply cannot weigh in its favor. *Id.* As Defendant's *own* case law also emphasizes, where some of the documents in a case are in one language and others in another, "translation will be necessary regardless of forum" and, thus, this too cannot support granting a forum non conveniens dismissal. *See Id.* Further, Handelsbanken's claim that these documents are so burdensome to translate into English is undermined by the Bank's willingness to do so before the English Court it proposes as a forum. (Def. Mem. at 10).

In reality, Defendant has really offered only fuzzy generalizations concerning the witnesses and documentary proof it claims to be so overwhelming reposed in Sweden or England. Thus, while it claims the "inconvenience and expense of transporting willing witnesses, including the cost of intercontinental travel and the translation of Swedish documents and testimony," Defendant tellingly fails to identify even one such witness. (Def. Memo at 9). Defendant indeed only *alludes* to so much as one witness: its own employee located in England, and over whom it clearly exercises control. (Def. Memo at 9). Defendant, of course, says nothing about the comparative costs of importing all those U.S. witnesses, defendants and evidence from the U.S. to Sweden. *Id.*

The fact is that Defendant is not entitled to its unmitigated convenience at all costs, but rather is only entitled in the extreme case that it can make a clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience." *DiRienzo v. Philip Services Corp, supra,* 294 F.3d at 30 (denying motion to dismiss on grounds of forum non conveniens from New York to Canada). Thus, in a comparative assessment of hardships between the defendant (if the Court retains jurisdiction), and the plaintiff (if it suffers dismissal and the obligation to bring suit in another country), the hardships must "weigh heavily in defendant's favor." *Klonis, supra,* 487 F. Supp. 2d at 359. Suffice to say, Defendant has not met its burden on the motion.    To the contrary, it is Plaintiff who would disproportionately bear the hardship here.  Plaintiff is considerably smaller company, its principal is a U.S. resident, and has just lost $6 million as a result of a merchant account opened by Handelsbanken via receipt of kickbacks and in violation of Visa/Mastercard rules. ECS' former principal Jason Field has submitted a declaration saying that Plaintiff simply cannot afford to prosecute this action abroad. (Field. Decl at ¶5). Defendant has submitted nothing saying it cannot afford to do so here, particularly given its New York

offices. Under these exact facts, this Court has found that a declaration attesting that "plaintiff. . . cannot afford to prosecute that action" abroad evidences that "the hardship to plaintiffs that would accompany a dismissal in this case outweighs the hardship to defendant in defending this case in New York." *Id.*    Plaintiff would be far more inconvenienced by the costs of litigation abroad, far off from evidence and witnesses within vicinity of this Court, than Handelsbanken would be in a forum it keeps offices.

Finally, this Court also denies motions to dismiss for forum non conveniens when "documentary evidence and witnesses in plaintiffs' control are more conveniently delivered to New York" than the foreign forum, noting that "since it is easier to travel [to New York] from Florida than from Florida to" Europe, this factor can not weigh heavily in defendant's favor. *See Klonis, supra*, 487 F. Supp. 2d at 359. This is exactly the case here, as it is considerably easier for witnesses and evidence to travel to New York from Florida, than from Florida to Sweden or England. *See Klonis, supra*, 487 F. Supp. 2d at 359.    The same is true for witnesses and evidence going from Massachusetts to New York versus from Massachusetts to Sweden or England. Defendant has not show that this factor "weigh[s] heavily in defendant's favor."*Klonis, supra*, 487 F. Supp. 2d at 359.

> b.    Compulsory Process Over Unwilling Witnesses And Costs of Obtaining Attendance of Witnesses Does Not Weigh Heavily In Favor of Defendant.

Neither does the second factor of the test, compulsory process over unwilling witnesses, and costs, weigh heavily in favor of Defendant. First, contrary to Defendant's assertion, the *Schertenleib v. Traum* case that Defendant references does not establish that the ability to secure compulsory process over witnesses is in any way more *important* than any of the other factors in the three part forum non conveniens analysis. 589 F.2d 1156, 1165 (2d Cir. 1978).[4]    Handelsbanken claims the following witnesses are beyond the subpoena power of this Court: its own "Swedish employees, Johansson, Factor Europe, ECS, Menzia (and ECS' other merchants)" as well as witnesses from the "Swedish Economics Crime Bureau or Scotland Yard." (Def. Memo at 10).

A Defendant who fails "to identify with specificity the witnesses who will be necessary to litigate this action but whose presence in a New York court will be difficult to secure" does not satisfy the requirements for a forum non conveniens dismissal. *Haywin Textile Products, Inc. v. International Finance Inv.* 137 F.Supp.2d 431, 437

---

[4] In *Schertenleib*, unlike here, the Court specifically found that "All of the prospective witnesses, apart from [the sole Defendant] himself, either are Swiss or reside in European countries. All of these witnesses are obviously beyond the compulsory process of the district court the case here." *Id.* Indeed, of the seventeen witnesses that Plaintiff in Shertenleib claimed to need, only one was located in the U.S. – obviously these extreme facts are entirely distinguishable from the case facts here in OPS.

Plaintiff's Memorandum of Law in Opposition to Handelsbanken's Motion to Dismiss    11

(S.D.N.Y. 2001) (denying motion to dismiss on grounds of forum non conveniens from New York to Bangladesh). Thus, as for Handelsbanken's employees, Defendant has not even bothered to name any of them, and, in fact, these so-called "unwilling" witnesses would all be under Defendant's control anyway. ECS and Menzia, whom Defendant interestingly names as its witnesses, could hardly be classified as unwilling witnesses. ECS is essentially defunct, however, Jason Field, principal in ECS, and OPS, is a U.S. resident, and obviously asked for jurisdiction in New York. (Field Decl at ¶16). Menzia and any other merchants in reality have no firsthand information other than they know they lost their money, but they are hardly unwilling to see their stolen money returned to them. (Field Decl at ¶16). Defendant also fails to explain why one Johansson is worth more than two Nolters – as Eric and Nick Nolter are both Florida residents beyond the reach of a Swedish court. Similarly, simply because the Swedish Economics Crime Bureau is investigating the case, does not make it an important witness with any first hand information to report. Defendant again fails to name any witness at the Bureau, but the Bureau is not the sort of 'witness' that would somehow require live testimony due to credibility issues, and would be more than appropriate for alternate procedures, such as deposition testimony or letters rogatory. *See, e.g., Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt*, 684 F.2d 232, 235 (2d Cir.1982). Furthermore, Factor Europe is an English company, so its amenability to the subpoena power of a Swedish court remains open. However, Factor Europe is nothing more than a conduit through which funds passed, (Field Decl at ¶15), and, nothing more than shell per the Complaint.

In the end, the question remains of how Defendant's so called inconvenience is comparatively worse than that which would befall Plaintiff with respect to all the witnesses that would be beyond the subpoena power of a Swedish Court. Nick Nolter, Eric Nolter, Scandorder employees such as Walid el Houri, Jason Field as principal of ECS, Jodi Ladakakos Field, David Alexius the principal of Menzia, Mastercard employees, U.S. consumers, and U.S. issuing bank identified in Exhibit B, would all fall beyond the subpoena power of a Swedish Court. [5] However, it is Handelsbanken alone that has the entire burden of showing that the "availability of compulsory process" strongly weighs in its favor. The Bank has simply not met its necessary showing.

---

[5] Even if there might be an isolated unwilling witness or so in Sweden, this circuit recognizes that depositions and letters rogatory are an appropriate alternative to live testimony in such case.*See, e.g., Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt*, 684 F.2d 232, 235 (2d Cir.1982) (noting that "any difficulties ... regarding witnesses whose attendance the Court is unable to compel can most likely be resolved by the use of deposition testimony or letters rogatory").

2. **Public Interest Factors Weigh Against Defendant's Motion to Dismiss On Grounds of Forum Non Conveniens**.

The public interest factors to be assessed include (i) administrative difficulties caused by court congestion, (ii) the local interest in having localized controversies decided at home, (iii) the burden of jury duty on a community unrelated to the litigation, and (iv) the appropriateness of having a court familiar with the governing law adjudicate the dispute. *Iragorri, supra*, 274 F.3d at 74. Here public interest factors also counsel in favor of denial of Handelsbanken's forum non conveniens motion. Defendant has offered no evidence to suggest that this court suffers more congestion than the Swedish or English Courts, as would be necessary to support a finding that this factor weighed heavily in Defendant's favor. *See Klonis, supra*, 487 F. Supp. 2d at 359. Further, it is hard to dispute the fact that Scandorder, the Nolters, Jason Field, Jodi Ladakakos Field, as well as Handelsbanken, Mastercard, and New York consumers and issuing banks are all based within the vicinity of this forum. Plaintiff has even provided a list of names of the New York consumers. To the degree there is a local interest in resolving this dispute, it cannot be said that Sweden has a much stronger local interest than New York in the adjudication of this case, particularly as the inducements, and processing occurred in the U.S.. However, in a litigation that "is a cosmopolitan one, involving parties from different continents . . . [there] is hardly a local controversy which should be decided by a particular locality," thus, this local interest factor cannot weigh in Defendant's favor. *Haywin Textile . v. International Finance Inv.* 137 F.Supp.2d 431, 437 (S.D.N.Y. 2001)

Finally, Swedish law would hardly apply to deciding whether Florida residents running Florida based processing software, who induced, received and processed through Florida in excess of $6 million in funds, (including from New York consumers and New York issuing banks) could be held liable here. *Ramirez, supra*, 448 F.Supp.2d at 525. And even where foreign law might apply to a case, a Court "must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Id* at 531. Indeed, "in light of the strong presumption of deference to the plaintiff's choice of its home forum, this single factor [applying foreign law] is insufficient to justi fy a forum non conveniens dismissal." *Haywin v. International, supra*, 137 F.Supp.2d at 437. In view of all the relevant private and public interest factors, defendant has failed to meet its burden of showing that extraordinary dismissal on grounds of forum non conveniens is warranted here.

II. **PLAINTIFF HAS STANDING AS TO HANDELSBANKEN**

Plaintiff has standing to bring this action. As emphasized by the *Petrohawk v. Law* case Defendant prominently cites, all that the plaintiff needs to have standing is

"that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." No. 06 Civ. 9404 (DLC), 2007 WL 211096 at *2 (S.D.N.Y. Jan 29, 2007). The Complaint states that OPS was assigned the claims of ECS, including those of Menzia. (Complaint at ¶13). As further stressed in Mr. Field's declaration, he is the sole principal in OPS and the sole principal of ECS, now essentially defunct, and was a direct participant in all relationships and transactions that engendered this action. (Field Decl at ¶¶7-11). Plaintiff has been injured by Defendant, being deprived of its fees of the processing funds, and exposed to the "potential liability" to the merchants, customers & issuing banks. *Id.* Mr. Field *is* OPS and OPS has standing here.

Likewise, Defendant's *Petrohawk* case informs that for standing to plead an assignment, Plaintiff need only allege that it was "expressly assigned those claims," something that Plaintiff unequivocally has done. *See Id*; Complaint at ¶13. Causes of action are freely assignable in New York. *Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC* 479 F.Supp.2d 349, 373 (S.D.N.Y. 2007); *see also* N.Y. Gen. Oblig. Law § 13-101 (2008). The assignment was more than adequately pled.[6] A copy of it is also attached to the Field Declaration as Exhibit A.

III.    **FAILURE TO STATE A CLAIM**

Under the pleading standard set forth in Rule 8(a) of the Federal Rules of Civil Procedure, complaints must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ.*, 445 F .3d 586, 591 (2d Cir.2006). Rule 8 is "fashioned in the interest of fair and reasonable notice, not technicality, and therefore is 'not meant to impose a great burden upon a plaintiff.'" *Textiles Network v. DMC Enterprises*, No. 07 Civ. 393(DLC), 2007 WL 2460767, at * 2 (S.D.N.Y. Aug. 31, 2007). On a Rule 12(b)(6) motion, a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Id.*

A.    **PLAINTIFF HAS STATED A CLAIM FOR AIDING AND ABETTING CONVERSION.**

Defendant misreads the pleading requirements for a conversion claim. To state a conversion claim plaintiff must plead "legal ownership or an immediate superior right of

---

[6] Contrary to Defendant's assertion, the Complaint adequately informs it that this action is brought to recover "over $6 million in funds from ECS World (ECS) and more precisely its merchants, including Menzia." Defendant's argument that it cannot understand *whose* claims are being asserted lacks merit. The assignment of claims of ECS, agent for Menzia, and all other owed merchants have been expressly pled.

Plaintiff's Memorandum of Law in Opposition to Handelsbanken's Motion to Dismiss    14

possession to a specific identifiable thing" and "that the defendant exercised an unauthorized dominion over that property, which can be specific money, to the exclusion of the plaintiff's rights." *Meese v. Miller*, 79 A.D.2d 237, 243-244 (N.Y.A.D. 1991) . Thus, a cause of action for conversion requires merely "that the defendant exercised unauthorized dominion over the plaintiff's property to the exclusion of the plaintiff's rights." *White v. City of Mount Vernon*, 221 A.D.2d 345, 346 (N.Y.A.D.,1995). Where the property is money, it need only be specifically identifiable and subject to an obligation to be returned or otherwise treated in a particular manner. *Id.* The funds of a specific, named bank account are sufficiently identifiable. *Id.*

Though Defendant's argument is unclear, it apparently claims that Plaintiff failed to plead "ownership, possession or control of the money before its conversion." (Def. Memo at 14). However, Paragraph 48 of the Complaint specifically pleads "The funds in issue belonged to ECS and its respective merchants, who were the owners of such monies and entitled to immediate possession thereof." Plaintiff has thus, clearly pled "ownership" of the funds and a right of possession. (Complaint at ¶¶ 48-50). Second, Handelsbanken apparently takes issue with the fact that the Complaint pleads that Defendants "took possession of the funds lawfully pursuant to an agreement that related parties would process Plaintiff's credit cards." (Def. Memo at 14). Handelsbanken seems to argue that if Defendants had possession of the funds at any point they were presumed to be owners of those funds. (Def. Memo at 14). However, the law of Conversion holds the exact opposite to be true.

Indeed, the law makes clear that where "possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property." *White, supra,* 221 A.D.2d at 346; *Bernstein v. La Rue,* 120 A.D.2d 476, 477-478 (N.Y.A.D.,1986) (stating "[w]here the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property"); 14 N.Y. Prac., New York Law of Torts § 2:12 (2007) (instructing that under New York law "If property is legitimately held and then wrongfully retained after a demand for return of the property by the owner, a conversion has taken place."). Any use "beyond the authority which an owner confers upon a user or in violation of instructions given is a conversion." *Meese v. Miller, supra,* 79 A.D.2d at 242.; *AD Rendon v. Lumina,* 2007 WL 2962591 at *4 (S.D.N.Y. 2007) (case actually cited by Defendant).

Here the Complaint pleads that while certain Defendants "initially took possession of the funds lawfully" (Complaint at ¶49), they failed to surrender them to ECS, (Complaint ¶5), such that ECS then "demanded the return of the $6,236,372 in

Plaintiff's Memorandum of Law in Opposition to Handelsbanken's Motion to Dismiss    15

funds" (Complaint at ¶51), but "notwithstanding such demand, Defendants have failed and refused to return any of these funds." (Complaint at ¶52). Accordingly, Plaintiff has more than sufficiently pled a conversion.

Finally, Handelsbanken apparently argues that Plaintiff is foreclosed from pleading a conversion claim because of a breach of contract cause of action. (Def Memo at 14). Plaintiff has not pled a cause of action for breach of contract against any party in this Complaint. Moreover, as is also readily apparent from the pleadings, Plaintiff never entered into a contract agreement with Peter Johansson, Factor Europe or Nick or Eric Nolter -- the only parties named as Defendants to the conversion cause of action. New York Courts have said that even when a entity like Scandorder (now dissolved and not a Defendant to these proceedings) comes into possession of proceeds pursuant to an agreement, its officers' exercise of dominion and control over the proceeds inconsistent with the parties agreement that proceeds be treated "in particular manner, which included transmittal to plaintiff within a prescribed period of time . . . is sufficient to establish a cause of action for conversion separate and apart from any breach of contract." *Key Bank of New York v. Grossi*, 227 A.D.2d 841, 843 (N.Y.A.D. 1996) (holding that officers of corporation, which had entered into the contract, were guilty of conversion; that financially strapped corporation was not a necessary party to the case; and corporation's contract with plaintiff in no way precluded the successful conversion claims against the individual defendants, with whom there was no contract). As with *Key Bank*, Plaintiff does not sue Scandorder, because it is now dissolved, it sues parties with whom it never entered into any contractual arrangement, including Nick and Eric Nolter, officers of Scandorder who as in *Key Bank* exercised dominion and control over the company's transfers, as well as Factor Europe and Peter Johansson, with whom it never contracted.[7] These facts are "sufficient to establish a cause of action for conversion separate and apart from any breach of contract." *Id* at 833-844.[8]

**B.    PLAINTIFF STATED A CLAIM FOR AIDING AND ABETTING FRAUD.**

**1.    Plaintiff Has Pled Reliance.**

---

[7] At no time does the cause of action claim an agreement between ECS and Factor Europe or ECS and Johansson, or ECS and the Nolters. Plaintiff has also adequately pled the terms of the Scandorder agreement (*see e.g.* Complaint at ¶ 16-18), though it is not suing Scandorder, now dissolved and defunct.

[8] In *Ad Rendon* the Court found that Plaintiff's "conversion claim remains duplicative of its breach of contract claim," against the same Defendant. The court dismissed the conversion claim because "if Plaintiff were to recover under both claims, it would in effect be paid twice." *AD Rendon Communications, Inc. v. Lumina Americas, Inc.*, *supra*, 2007 WL 2962591 at *5. Here Plaintiff had no contractual relationship with any of the named Defendants, and never pled a breach of contract claims against anyone.

1

2    Defendant erroneously claims that Plaintiff failed to plead reliance because it did
not "allege[] that it entered into the contract with Scandorder after that July 29[th]
3    representation was made." (Def. Memo at 15). The Complaint unequivocally states that
"On or about July 29, 2004 in order to induce ECS into entering into a credit-card
4    processing agreement, Defendants . . . represented that Defendants had an approved
Visa/Mastercard relationship through HANDELSBANKEN," among other
5    representations.    (Complaint at ¶65). Afterwards, the Complaint also pleads that
6    "Plaintiff relied on Defendant's representations, and entered into a processing
7    agreement." (Complaint at ¶68). Thus, the Complaint pleads that Plaintiff "entered into
its contract with Scandorder after the July 29th representation." (Def. Memo at 15).
8    Logically, it is impossible to rely on representations in entering into an agreement, and
9    not have the representations precede the agreement. The sort of artificial technicality that
10   Defendant argues for is wholly contrary to F.R.C.P. Rule 8 pleading requirements.

     2.    Plaintiff Has Pled Reasonable Reliance.
11
     First and foremost, Plaintiff more than adequately pled reasonable reliance. The
12   Complaint describes three paragraphs of representations made directly from Florida by
13   "Walid El Houri acting on the Defendants' behalf" to ECS. (Complaint at ¶65). It then
alleges "Plaintiff relied on Defendants' representations, and entered into a processing
14   agreement, providing Defendants with access to millions of dollars in merchant credit-
15   card funds in the process." (Complaint at ¶68). The Complaint reads "Plaintiff's reliance
16   was justified in that Defendants had an apparent 'approved' relationship with
Visa/Mastercard through Handelsbanken, and there was no reason to believe that
17   Defendants had been able to secure such a relationship through bribes, and despite their
18   shady and sub-par banking history, complete with accusations of at least $11 million
19   worth of stolen funds." (Complaint at ¶69). This sufficiently pleads reasonable reliance.
In fact, a court deciding a Rule 12(b)(6) motion "accepts as true all well-pleaded factual
20   allegations in the complaint and draws all reasonable inferences in the plaintiffs' favor."
21   *See In re Parmalat Securities Litigation*, 477 F.Supp.2d 602, 607 (S.D.N.Y. 2007). Thus,
"dismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no
22   set of facts in support of [their] claim which would entitle [them] to relief." *Id.*
23   Defendant's contention that Plaintiff failed to plead reasonable reliance is erroneous.

24   Second, Defendant's motion is procedurally flawed. While giving notice of a
25   Rule 12 Motion, Defendant brings the equivalent of an unnoticed Rule 56 Motion for
Summary Judgment.    In effect, Handelsbanken essentially attempts to turn a 12(b)(6)
26   motion into a full evidentiary contest by offering extrinsic evidence to support its
27   argument that Plaintiff cannot prove (as opposed to plead) that ECS' reliance was

28

1   reasonable. (Def. Memo at 15). In support of this Rule 12(b)(6), Handelsbanken submits
2   documents outside of the pleadings, including printouts of Internet chat room pages,
    insisting that Plaintiff's reliance on Defendant's representations could not be *proved*
3   reasonable because Plaintiff had a duty to Google the Internet for information on
4   Nicholas Nolter four years earlier.  This is not appropriate evidence on a motion to
    dismiss.  In fact, quite tellingly, all of the cases Defendant's cites in support of its
5   argument that Plaintiff failed to "establish" reasonable reliance, are non-Rule 12 cases.
6   Thus, *Century Pacific v. Hilton* actually involved a motion for summary judgment.  No.
7   03-CV-8258(KMK), 2007 WL 3036172 at *16 (S.D.N.Y. Oct 17, 2007).  Likewise,
    *Schlaifer v. Estate* pertained to a Motion for Judgment as a Matter of Law. 119 F.3d 91,
8   98 (2d Cir.,1997). Clearly, while *proving* reasonable reliance with extrinsic evidence is
9   proper on a Summary Judgment Motion or a Motion for Judgment as a Matter of Law,
10  such evidence is simply inconsistent with a Fed.R.Civ.P. Rule 12(b)(6) motion.  To be
11  precise, Federal Rule of Civil Procedure Rule 12(d) provides the following:

12       "Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule
         12(b)(6) . . . matters outside the pleadings are presented to and not excluded by
13       the court, the motion must be treated as one for summary judgment under Rule
         56. All parties must be given a reasonable opportunity to present all the material
14       that is pertinent to the motion."

15  Obviously, if this 12(b)(6) Motion were to be converted into a Summary Judgment
16  Motion, Handelsbanken would be hard pressed to meet the considerable burden imposed
    on Summary Judgment, particularly with the sort of scant evidence it has submitted.
17  After all, it is "the moving party [who] bears a heavy burden of demonstrating the
18  absence of any material issues of fact," and "[a] motion for summary judgment may not
19  be granted unless the court determines that there is no genuine issue of material fact to be
    tried and that the facts as to which there is no such issue warrant judgment for the
20  moving party as a matter of law." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n,*
21  *Inc.,* 182 F.3d 157, 160 (2d. Cir. 1999). Taking into account Defendant's few Internet
22  chat board printouts, Defendant would be unable to meet a Summary Judgment standard
    of establishing that there was no genuine issue of material fact to be tried with respect to
23  the reasonableness of Plaintiff's reliance.  Plaintiff respectfully requests that the Court
24  not entertain Defendant's extrinsic evidence (and also objects and moves to strike it).

25       In addition, the evidence Handelsbanken offers simply does not support the
26  conclusion that Plaintiff was unreasonable in its reliance on Defendant's representations.
    As admitted in Defendant's own moving papers, the Complaint pleads that Plaintiff
27  relied on the representation made by Walid El Houri in Florida that Defendants had an

28       Plaintiff's Memorandum of Law in Opposition to Handelsbanken's Motion to Dismiss   18

1   Visa/Mastercard approved banking relationship through Handelsbanken, and "entered
2   into a processing agreement," as a result. (Complaint at ¶¶ 65, 68; Def. Memo at 15-16).
    In marked contrast to Defendant's assertion, no Internet search would have discovered
3   this representation to be untrue, as there was no way for Plaintiff to have searched and/or
4   discovered that Defendant had bribed the bank into opening a merchant account in
5   violation of Visa/Mastercard rules.  Defendant offers no evidence to dispute this fact.
    Instead Defendant focuses entirely on the irrelevant question of whether an Internet
6   search would have located information about Nicholas Nolter back in 2004, before
7   Plaintiff agreed to the credit-card processing. In reality, there is nothing in the Complaint
    alleging that Plaintiff knew of Nick Nolter (or Peter Johansson) prior to the execution of
8   the Agreement. In fact, ECS did not.  (Field Decl at ¶9). Obviously, it makes little sense
9   for Defendant to claim a duty on the part of Plaintiff to perform Internet searches on
10  names of people not then known to Plaintiff. While Mr. Field did investigate Scandorder
    and found nothing in the least bit negative, he had no reason to do similar searches on
11  Nick Nolter. (Field Decl. at ¶9).[9]  The printouts are irrelevant.

12  3.    **Plaintiff Has Pled That Svenska Substantially Assisted The Fraud.**

13        Defendant erroneously contends that the Complaint never alleges that
    Handelsbanken had a connection with Scandorder, arguing that the absence of this link
14  somehow "cannot support substantial assistance." (Def. Memo at 18).   Instead,
15  Defendant claims the Complaint only says that Handelsbanken "had a banking
16  relationship with Johansson, through SNL and Factor Europe." Defendant also alleges
    ECS only "entered into a relationship Scandorder." Defendant, thus, concludes that the
17  connection between the Bank and ECS is too remote to establish that the Bank *caused*
18  ECS' losses. (Def. Memo at 17).  However, this is not what the Complaint alleged!

19        The Complaint specifically states that Handelsbanken entered into a merchant
    banking agreement with Scandor.com (Complaint at ¶30). The Complaint also
20  straightforwardly alleges that "ECS . . .entered into a relationship with Scandorder."
21  (Def. Memo at 17). In addition, the Complaint clarifies that "Scandorder Inc., . . .[is]
22  also known as Scandor.com." (Complaint at ¶16). Thus, unmistakably, this Complaint

23
    ─────────────────────
24      [9] There is no reason to believe that a search on the Internet back in early 2004 would have turned
    up the materials that counsel found in December 2007. There is no proof in the record that a search engine
25  four years earlier would have catalogued these web pages. In addition, the name Nick Nolter when
    unconnected to Scandorder is pretty generic. (Field Decl. at ¶9). Lastly, the one page printout of the
26  Internet chatboard, labeled as Exhibit G, gives no specifics about Mr. Nolter, mentioning only an entity
    known as Worldnet, (not Scandorder), so it can hardly form the basis of a reasonableness argument with
27  such naked innuendo. Culling for lawsuits in paid databases like Westlaw or Lexis is hardly the sort of
    access to public information that an ordinary business person would have.

28

pleads that ECS contracted with Scandorder, who in turn was part of a contract with Handelsbanken – the connection is in no way remote. Accordingly, given Defendant's previous argument, Handelsbanken would seem to have to conceded that the causal link necessary to show substantial assistance has indeed been pled. (Def. Memo at 18)

In the same vein, the *Kolbeck v. Lit* case, 939 F.Supp.240 (S.D.N.Y. 1996), cited by Handelsbanken, does not support Defendant's argument that the link between Handelsbanken and ECS is too "remote to support causation." (Def. Memo at 17). First, the case involved a cause of action of aiding and abetting a breach of fiduciary duty, not fraud. Second, the case involved a commodities brokerage firm, not a bank, as Defendant claims. Most pertinently, in *Kolbeck* the clearing brokers were alleged to have merely failed to discover acts of deception by the investment advisor. Here, by contrast, Handelsbanken "is alleged to have known about and participated actively . . .[in the] scheme," by opening accounts on receipts of bribes, by receiving kickbacks for processing funds in violation of Visa/Mastercard Rules, and by sending fake corroboration to Visa/Mastercard that Defendants met all of Visa/Mastercard's rules (Complaint at ¶24) – all of which are allegations sufficient to show "causation for purposes of the substantial assistance prong." *See e.g., Fraternity Fund Ltd. v. Beacon Hill Asset* 479 F.Supp.2d 349, 372-373 (S.D.N.Y. 2007).

4.    **Plaintiff Has Pled That Handelsbanken Materially Participated in the Fraud.**

OPS' has sufficiently alleged that Handelsbanken materially participated in the fraud by rendering affirmative assistance. Defendant's Motion to Dismiss argues that Handelsbanken's activities cannot support the substantial assistance element, because "other than allegedly opening and operating these accounts, the Complaint alleges no other wrongdoing by Svenska." (Def. Memo at 18). Again, this is not what the Complaint actually pleads. OPS Complaint, in fact, asserts that by affirmatively misrepresenting to Visa/Mastercard that Defendant met its mandatory rules and security protocols for opening an account, Handelsbanken materially participated in the fraud. Thus, for example, the Complaint specifically states that "Handelsbanken, as the acquiring bank was responsible for screening, investigating, and endorsing Defendants, as one of the few select merchants from which it intended to acquire Visa/Mastercard transactions... it is Handelsbanken, therefore, that warranted to Visa/Mastercard that Defendant's originally met, and thereafter continued to meet, Visa/Mastercard's exacting rules and regulations promulgated with a view to preventing and protecting against fraud." (Complaint at ¶24). Also per the Complaint, Handelsbanken "failed to convey to Visa Mastercard that . . . Defendants Johansson and Nolter, as principals in such entities had a background in expediting massive fraudulent schemes, and that Defendant Johansson's previous

1    merchant agreement had been terminated." (Complaint at ¶73). The Complaint also
2    focally alleges that Handelsbanken took bribes and kickbacks in return for opening the
     Visa/Mastercard merchant accounts in violation of their rules and regulations, thus
3    making the Bank a vested partner with actual knowledge of the fraud. Handelsbanken is
4    also alleged to have represented to Visa/Mastercard that Defendants continued to meet
     these security protocols and standards, in turn "participat[ing] in the profits earned by
5    Defendants' credit card processing scheme." (Complaint at ¶29). Defendant's conduct in
6    this sense was not mere inaction, but rather affirmative misrepresentation and
7    concealment "designed intentionally to aid the primary fraud," *Ross v. Bolton*, 639
8    F.Supp. 323, 327 (S.D.N.Y. 1986), plus even profit sharing. The Complaint pleads that
     "Handelsbanken rendered substantial assistance" (Complaint at ¶74), and "affirmatively
9    assisted Defendants in the fraud." (Complaint at ¶75). In sum, the Bank's activities are
10   most definitely not alleged to have been limited to innocently "opening and operating
     these accounts," as Defendant's claim in their motion. (Def. Memo at 18).
11
         The other cases cited by Defendant are all distinguishable. In *Ross v. Bolton* 639
12   F.Supp.323, 327 (S.D.N.Y. 1986), the court dismissed an aiding and abetting claim
13   against a clearing agent, because the complaint failed to adequately allege any substantial
14   assistance in the commission of the primary fraud. However, the only assistance pled in
     the *Ross* Complaint was that Defendant continued to clear transactions while having only
15   a suspicion that a client was acting fraudulently, and without having actual knowledge of
16   any fraud (rather the Complaint only alleged that Defendant "knew or should have
     known" of the fraud). *Id.* The Court held that "[t]he plaintiff has failed adequately to
17   allege sufficient intention to aid the primary fraud," and thus, the complaint did not meet
18   the "substantial assistance" requirement. *Id.* Obviously, this is not the case with
19   Handelsbanken, because (i) the Complaint alleges that Handelbanken "had actual
     knowledge that the other Defendants were engaged in perpetrating such fraud,"
20   (Complaint at ¶72), and (ii) the Complaint alleges that the bank received kickbacks, and
21   bribes, and shared in the profits from the credit-card processing in order to affirmatively
22   misrepresent the true facts to Visa/Mastercard to get this account open and to keep it
     running. Handelsbanken is alleged to have been an active participant, engaging in
23   significantly more wrongful conduct than opening an account or having mere suspicions.
24       Handelbanken also shares nothing with the Defendant in *Albion Alliance*
25   *Mezzanine Fund, L.P. v. State Street Bank and Trust Co.*, 8 Misc.3d 264 (N.Y.Sup.Ct.
26   2003), which Defendant also cites. In *Albion* the Court granted a summary judgment
     motion, not a motion to dismiss, because the Plaintiff had been unable to show that
27   Defendant had actual knowledge of the fraud (contrary to Handelsbanken's citation in its
28

Motion to Dismiss)[10] and had not been alleged to have done anything other than accept repayment. In OPS' Complaint the Bank is alleged to have had full knowledge of the fraud, actually taking bribes and kickbacks in order to misrepresent information to Visa/Mastercard. This is not mere innocent inaction without actual knowledge, as with *Ross and Albion*, but rather an allegation that the Bank "affirmatively assisted, [and] help[ed] conceal" the fraud with actual knowledge of it, while being bribed, and sharing in profits from the continuing fraud.

5.  **Plaintiff Has Pled Actual Knowledge**

As noted already, the Complaint more than adequately pleads actual knowledge. The Complaint alleges that Handelsbanken "had actual knowledge that the other Defendants were engaged in perpetrating such fraud," (Complaint at ¶¶ 72-73). No mere suspicion is alleged, rather the Complaint talks about Handelsbanken affirmatively taking bribes and receiving profits from the fraudulent processing. Contrary to Defendant's allegations, the Complaint also most definitely says that Handelsbanken entered into an agreement with Scandor.com, Nolter's company. (Def. Memo at 19).

C.  **PLAINTIFF STATED A CLAIM FOR NEGLIGENCE.**

The Complaint pleads that Handelsbanken was well aware that Defendants were acting as third party processors, meaning the Bank knew it was processing funds from many different merchants, (*e.g.*, ECS merchants, including Menzia), and therefore alleges the Bank had a duty to the very merchants whose funds it was intentionally processing. (Complaint at ¶78). Furthermore, the Complaint also alleges that Handelsbanken knew that the funds in question all belonged to individual customers of those merchants, and more precisely the issuing banks on their credit cards (who would be due chargebacks on those funds), and, thus, had a duty to such parties as well. (Complaint at ¶78). As the Complaint further provides, Visa/Mastercard rules and regulations are established to protect merchants, customers and issuing banks from fraudulent processors; banks are required to perform extensive background verifications to prevent from opening accounts

---

[10] Defendant's Memorandum claims that *Albion* establishes that where a "bank simply accepted loan repayment even though it was aware of debtor's wrongful conduct, there is no liability for aiding and abetting the underlying wrong." (Def. Memo at 18). However, the very reason the Court found no liability for aiding and abetting was because Defendant lacked the actual knowledge, only having a suspicion of possible fraud, which thus fell well below the standard of actual knowledge required for establishing an aiding and abetting fraud claim. Thus the Court concluded: [L]iability for aiding and abetting requires a showing that the defendant had actual knowledge of the fraud alleged . . . As the Bankruptcy Court concluded, [Defendant's] knowledge of Sharp's misconduct was constructive. The record shows that the D & B reports confirmed the existence of some of Sharp's customers and, thus, while the other inaccuracies in Sharp's account information certainly gave the Bank reason to be highly suspicious of its veracity, such suspicions cannot be equated with actual knowledge."

1   for fraudulent processors, precisely in order to protect merchants, customers and issuing

2   banks from fraud. (Complaint at ¶¶ 24-27, 80). The Complaint has plead a duty.

3       With respect to the two cases upon which Defendant entirely relies as a basis for

    its motion to dismiss the OPS' Negligence claim – *Aiken* and *Tzaras* – these are both

4   unpublished cases, a fact which speaks for itself in terms of the significance of the cited

5   precedent. *See Aiken v. Interglobal Mergers and Acquisitions*, 2006 WL 1878323 *2

6   (S.D.N.Y. 2006); *Tzaras v. Evergreen Intern. Spot Trading, Inc.* 2003 WL 470611 *6

7   (S.D.N.Y. 2003).   Second, neither of these cases involves third party processing of

    merchant credit card payments, a transaction entirely distinct from a mere deposit into a

8   customer bank account.  Third, Defendants cases only state that "a bank generally owes

9   no duty of care to a non-customer third party." *Aiken, supra,* 2006 WL 1878323 *2.

10  However, in the case at hand, we are not talking about a mere non-customer third party,

    but rather parties with respect to whom Handelsbanken agreed to process merchant's

11  funds with full knowledge that it was processing for assorted merchants (i.e. ECS

12  merchants, including Menzia).   This is not the same as an unrelated third party on the

13  other side of a customer transaction as in *Aiken* and *Tzaras*.  ECS' merchants (and their

    users), are part and parcel of the very customers that the Bank is actually servicing. Thus,

14  Handelsbanken, most certainly assumed and owed ECS' merchants and consumers a duty

    considerably different than that it would owe a mere third party unrelated to its customer.

15      Furthermore, published case law indeed holds that under New York law

16  Defendants owe a duty of care to non-customer third parties. Such a duty is "imposed

17  where: 1) a special relationship exits between the defendant and the third party such that

    the defendant does have a duty to control the acts of the third party; or 2) a special

18  relationship exists between the defendant and the plaintiff, creating an obligation on the

19  part of the defendant to protect the plaintiff from harm inflicted by the third party." *In re*

20  *September 11 Property Damage and Business Loss Litigation*, 468 F.Supp.2d 508, 525

    (S.D.N.Y. 2006). Thus, courts have imposed a duty when the defendant "has control over

21  the third party tortfeasor's actions, or the relationship between the defendant and plaintiff

22  requires the defendant to protect the plaintiff from the conduct of others . . .The key in

    each [situation] is that the defendant's relationship with either the tortfeasor or the plaintiff

23  places the defendant in the best position to protect against the risk of harm." *In re*

24  *September 11 Litigation* 280 F.Supp.2d 279, 290 (S.D.N.Y. 2003) (finding airlines had a

25  duty not only to passengers on the flight they operate who were the airlines customers, but

    also to people on the ground who were non-customer third-parties).

26      In Handelsbanken's case, both of the above are true in terms of a special

27  relationship between Handelsbanken and Scandor.com, as the third-party tortfeasor, as

28      Plaintiff's Memorandum of Law in Opposition to Handelsbanken's Motion to Dismiss    23

1   well as a special relationship between Handelsbanken and ECS and its

2   merchants/customers. First, Handelsbanken was aware that Scandor.com was a third

3   party processor, and, thus, that there were many individual merchant's funds being

4   processed through Handelsbanken's account, as well as customers and issuing banks. It
    was also aware of Visa/Mastercard's rules concerning merchant processing accounts.

5   Handelsbanken and Scandor.com had a special relationship, such that Handelsbanken had

6   the ability and the duty to control Scandor.com's acts, either by never opening the
    merchant account in the first place, or by stopping its operation (as obligated to do so by

7   Visa/Mastercard's rules and regulations for protecting against fraud). *See In re September*

8   *11 Property Damage and Business Loss Litigation, supra*, 468 F.Supp.2d at 525. In the
    same, way, Handelsbanken and ECS' and its merchants (as OPS assignors) had their own

9   special relationship in that Handelsbanken was knowingly processing these merchant's

10  credit card funds, "creating an obligation on the part of the defendant to protect the
    plaintiff from harm inflicted by the third party." *Id.* Handelsbanken's "relationship with

11  either the tortfeasor or the plaintiff places the defendant in the best position to protect

12  against the risk of harm." *In re September 11 Litigation, supra*, 280 F.Supp.2d at 290.

13       With respect to Defendant's motion to dismiss the negligence claim on grounds of
    failing to plead proximate cause, "the issue[] of proximate . . .[is] fact-laden, requiring a

14  fully developed factual record, and not the bare-bones motion to dismiss." *In re September*

15  *11, supra*, 468 F.Supp.2d at 525. In fact, "a motion to dismiss is not the proper procedure

16  to test the legal sufficiency of plaintiffs' allegation of duty and proximate cause." *Id.*

    D.   **PLAINTIFF STATED A CLAIM FOR DECEPTIVE TRADE PRACTICES**.

17       The *Goshen v. Mutual Life* case cited by Defendant as a basis for its motion to

18  dismiss merely states that a "the transaction in which the consumer is deceived must occur

19  in New York." 98 N.Y.2d 314, 324 (2002) (dismissing claim where Plaintiff purchased a
    vanishing premium policy in Florida, and never had any connection to New York). The

20  Complaint here, however, pleads exactly that – New York transactions. It provides that

21  New York consumers accessed merchant sites in New York, (Complaint at ¶¶ 14-15),

22  utilizing their credit cards drawn on New York issuing banks, and that the "funds due
    back to individual New York consumers, who number in the hundreds" have not been

23  returned. (Complaint at ¶86). Plaintiff has stated a claim for Deceptive Trade Practices.

24  E.   **PLAINTIFF PLED WITH PARTICULARITY**.

25       Defendant has been apprised with sufficient particularity with respect to the facts
    underlying the aiding and abetting conversion and fraud claims. Thus, for example, the

26  allegations that form the basis of the Aiding and Abetting Conversion claim are contained

27  in Paragraphs 55 through 63 of the Complaint. Tellingly, Handelsbanken never attacks

28       Plaintiff's Memorandum of Law in Opposition to Handelsbanken's Motion to Dismiss    24

even **one** paragraph from that cause of action as lacking in particularity. Instead it picks random isolated paragraphs, ignoring preceding or following paragraphs, and claiming lack of particularity in *isolation,* as if the remainder of the Complaint never existed. For example, it isolates paragraph 2, the **introduction,** and claims that the introduction wasn't particular enough, as if the other 24 pages of the complaint (and of course, the aiding and abetting conversion cause of action itself) did not exist. Likewise, it singles out paragraph 25, claiming that it has no clue from the Complaint whom it "was obligated to subject to a mandatory, comprehensive verification process prior to execution of any merchant agreement." The conversion claim plainly says that "Handelsbanken as the acquiring bank was obligated to subject **Defendant JOHANSSON, NOLTER, ERIC NOLTER and FACTOR EUROPE, as well as SNL and Scandor.com to a mandatory, comprehensive verification process prior to execution of any merchant agreement."** (Complaint at ¶ 60). As for Paragraph 2 and 18, Defendant is well aware that the aiding and abetting fraud cause of action specifically pleads that the representations upon which Plaintiff relied were made by "Scandor.com personnel, Walid El Houri in Florida." It is impossible to understand how Defendant misunderstands this. Finally, Defendant claims inability to comprehend whose lengthy "history of fraudulent activities" is being referred to in Paragraph 67, when paragraph 74 specifically states that "Defendants Johansson and Nolter . . . had a background in expediting massive fraudulent schemes." In fact, Paragraph 33 through 40, incorporated by reference by Paragraph 64, also detail with great particularity both Defendants lengthy history of banking fraud. The sort of particularity by technicality Defendant seeks is not in proper under the Federal Rules.

## IV.   CONCLUSION

Based on the above, Plaintiff respectfully requests that Handelsbanken's motion be denied in full, and the Court grant such other and further relief as it deems proper and just.

Dated: March 14, 2008

Respectfully Submitted,

LYNCH ROWIN, LLP

By: Marc Rowin    MR 6758
Attorneys for Plaintiff Online Payment
Solutions Inc.,

DAVID STEINER & ASSOCIATES,

By: David Steiner, Esq.
Attorneys  for  Plaintiff  Online  Payment
Solutions Inc.,

Plaintiff's Memorandum of Law in Opposition to Handelsbanken's Motion to Dismiss     25