UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                    )
Online Payment Solutions Inc.,      )
                                    )
            Plaintiff               )     Civil Action No. 07 CIV 8692 (PKL)
                                    )
     -against-                      )
                                    )
Svenska Handelsbanken AB,           )
Peter Lars Johansson, Nicholas Nolter, )
Eric Nolter aka Aryksin Noble,      )
Factor Europe UK Limited, DOES 1-10, )
                                    )
            Defendants.             )
_____)


**SVENSKA HANDELSBANKEN AB'S REPLY MEMORANDUM
<u>OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**


White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
*Attorneys for Defendant Svenska Handelsbanken AB*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT .........................................................................................................................1

    I.  OPS' OWN PAPERS COMPEL DISMISSAL ON *FORUM NON CONVENIENS* ............1

        A.  A New York Company Created Solely to Facilitate Suit Here is Not Entitled to Deference. ...................................................................................................................1

        B.  OPS Has Not Challenged the Adequacy of English or Swedish Forums. ....................3

        C.  There is No Relevant Evidence in New York. ..............................................................4

        D.  Svenska's Real Hardship Outweighs Plaintiff's Claimed Hardship. .............................5

        E.  No Public Interest Supports OPS' Choice of Forum. ....................................................6

    II.  OPS' FAILURE TO SHOW STANDING IS FATAL TO JURISDICTION AND ITS AIDING AND ABETTING CONVERSION CLAIM ......................................7

    III.  AS A MATTER OF LAW, OPS CANNOT REMEDY THE FLAWS IN ITS AIDING AND ABETTING CLAIMS .............................................................................7

        A.  Plaintiff's Causation Argument Fails Under Rule 9(b) and 12(b)(6). ..........................7

        B.  Plaintiff Failed to Distinguish Svenska's Case Law. ....................................................9

        C.  As a Matter of Law, Plaintiff Has Not Pled Reasonable Reliance. ..............................9

    IV.  SVENSKA DOES NOT OWE A DUTY TO ECS ...........................................................10

    V.  OPS' DECEPTIVE TRADE PRACTICES CLAIM MUST FAIL FOR LACK OF ANY NEW YORK CONNECTION ............................................................10

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

Aguas Lenders Recovery Group, LLC v. Suez S.A., No. 06 Civ. 7873(RLC),
    2008 WL 612669 (S.D.N.Y. Mar. 3, 2008) ................................................................. 2

Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen AG, No. 07 Civ.
    6094(CM), 2008 WL 400895 (S.D.N.Y. Feb. 11, 2008) ............................................. 2

Guidi v. Inter-Continental Hotels Corp., 224 F.3d 142 (2d Cir. 2000) .............................. 2

Haywin Textile Prods., Inc. v. Int'l Fin. Inv., 137 F. Supp. 2d 431 (S.D.N.Y.
    2001) ........................................................................................................................... 7

In re IAC/InterActiveCorp Sec. Litig., 478 F. Supp. 2d 574 (S.D.N.Y. 2007) ................... 8

Iragorri v. United Tech Corp., 274 F.3d 65 (2d Cir. 2001) ............................................... 2

Klonis v. Nat'l Bank of Greece, S.A., 487 F. Supp. 2d 351 (S.D.N.Y. 2006) .................... 5

Kolbeck v. LIT Am., Inc., 939 F. Supp. 240 (S.D.N.Y. 1996) ........................................... 9

Mirian Ramirez de Arellano v. Starwood Hotels & Resorts Worldwide, Inc., 448
    F. Supp. 2d 520 (S.D.N.Y. 2006) ............................................................................... 2

RSM Production Corp. v. Fridman, No. 06 Civ. 11512(DLC), 2007 WL. 2295897
    (S.D.N.Y. Aug. 10, 2007) ....................................................................................... 2, 3

Ross v. Bolton, 639 F. Supp. 323 (S.D.N.Y. 1986) ........................................................... 9

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007) .................................................................. 9

In re September 11 Litig., 280 F. Supp. 2d 279 (S.D.N.Y. 2003) .................................... 10

Transunion Corp. v. Pepsico, Inc., 811 F.2d 127 (2d Cir. 1987) ....................................... 4

Wesoke v. Contract Servs. Ltd., No. 00 Civ. 1188(DAB), 2001 WL 327759
    (S.D.N.Y. Mar. 31, 2001) ........................................................................................... 2

Plaintiff Online Payment Solutions Inc.'s ("OPS") papers establish that this case has no *bona fide* connection to this forum.  Based on the briefing, it is beyond dispute that (i) OPS did not exist until <u>after</u> any alleged wrongs occurred, and was created solely to support jurisdiction; (ii) the real party in interest is <u>ECS</u>—the English company whose claims OPS was created to assert and which <u>continues</u> to offer services in England over the internet; (iii) the bank accounts at issue were in England and Sweden; and (iv) ECS' losses occurred in England based on alleged activities in Sweden and England involving three European and two Florida defendants.

Plaintiff stakes its opposition on the alleged hardship that ECS' principal, Mr. Jason Field—who created OPS—will suffer if he is forced to litigate <u>his English company's claims</u> in England or Sweden.  Field claims that he cannot litigate in Europe because he moved to Massachusetts well <u>after</u> the events at issue.  As shown below, as a matter of law, Field's move to the United States is irrelevant to the *forum non conveniens* analysis, and nothing Field says provides any relevant U.S. nexus for this action.  In short, Plaintiff has offered nothing of substance to contradict Svenska Handelbanken AB's ("Svenska") *forum non conveniens* arguments, nor are any of OPS' Rule 12 or Rule 9 arguments supported by relevant case law.

## **ARGUMENT**

**I.    OPS' OWN PAPERS COMPEL DISMISSAL ON *FORUM NON CONVENIENS***

**A.    A New York Company Created Solely to Facilitate Suit Here is Not Entitled to Deference.**

OPS' lengthy opposition papers demonstrate that OPS was in fact created solely to manufacture jurisdiction here.  OPS does not dispute that ECS is the true plaintiff here.  For all its talk about New York consumers and New York banks (<u>none</u> of whom are parties), there is not a single allegation that ECS or any defendant took any relevant action or suffered any losses in New York.  Instead, ECS' principal asks this Court to give deference to OPS, a company he

1

created in New York years <u>after</u> the events in question and only days before threatening to bring this suit, and claims that his recent move to Massachusetts somehow entitles <u>OPS</u> to deference. (Pl. Br. at 4; Field Decl. ¶ 2.)[1]

OPS is wrong as a matter of law. The residence of a company's principal is irrelevant.[2] <u>Cortec Corp.</u> v. <u>Erste Bank Ber Oesterreichischen Sparkassen AG</u>, No. 07 Civ. 6094(CM), 2008 WL 400895, at *5, 10 (S.D.N.Y. Feb. 11, 2008) (declining to give weight to the U.S. residence of a company's principal); <u>Wesoke</u> v. <u>Contract Servs. Ltd.</u>, No. 00 Civ. 1188(DAB), 2001 WL 327759, at *6, 8 (S.D.N.Y. Mar. 31, 2001) (dismissing in favor of England, even though plaintiff's principal lived here).[3] Moreover, this Circuit has repeatedly acknowledged that deference is greatly diminished where, as here, plaintiff is a foreign <u>corporation</u> which can expect to litigate in a foreign court. <u>See</u> <u>Aguas Lenders Recovery Group, LLC</u> v. <u>Suez S.A.</u>, No. 06 Civ. 7873 (RLC), 2008 WL 612669, at *6 (S.D.N.Y. Mar. 3, 2008) (quoting <u>Guidi</u> v. <u>Inter-Continental Hotels Corp.</u>, 224 F.3d 142, 147 (2d Cir. 2000)); <u>see also</u> <u>Wesoke</u>, 2001 WL 327759, at *6 ("the standard of deference normally accorded to American plaintiffs' choice of forum is weaker for corporations than for ordinary citizens").[4]

---

[1] This brief cites to OPS' Memorandum in Opposition to Svenska's Motion to Dismiss ("Pl. Br.") filed Mar. 14, 2008; the Declaration of Jason Field ("Field Decl.") filed Mar. 14, 2008; Svenska's Memorandum of Law in Support of its Motion to Dismiss ("Svenska Br.") filed Dec. 21, 2007; the Declaration of Ulf Köping-Höggård ("Svenska Decl.") filed Dec. 21, 2007; the Declaration of Anthony John De Garr Robinson QC ("Robinson Decl.") filed Dec. 21, 2007; the Declaration of Claes Lundblad ("Lundblad Decl.") filed Dec. 21, 2007; the Affirmation of Milana Salzman ("Salzman Affirm.") filed Dec. 21, 2007; Nick and Eric Nolter's Answer to the Complaint ("Nolter Answer") filed Jan. 30, 2008; and the Complaint ("Compl.") filed Oct. 9, 2007.

[2] Mr. Field, of course, is not a party. He chose OPS to serve that function, creating the company for the sole purpose of bringing this lawsuit in New York.

[3] Plaintiff cites to <u>Iragorri</u> v. <u>United Tech Corp.</u>, 274 F.3d 65 (2d Cir. 2001) for support, but that case does not say that the identity of the sole principal of a company is to be considered.

[4] <u>Mirian Ramirez de Arellano</u> v. <u>Starwood Hotels & Resorts Worldwide, Inc.</u>, 448 F. Supp. 2d 520 (S.D.N.Y. 2006) and <u>RSM Production Corp.</u> v. <u>Fridman</u>, No. 06 Civ. 11512(DLC), 2007 WL 2295897

ECS is a corporation created in England that operates in England. (Field Decl. ¶ 1.) To this day, ECS <u>continues</u> to operate a website, soliciting business in London.[5] Nothing in Mr. Field's submission changes the fact that ECS is claiming against English, Swedish, and Florida residents over losses occurring in England when money disappeared from an English bank account.[6] Surely, OPS could expect to litigate ECS' claims in England or nearby Sweden. OPS, on the other hand, was created for the <u>sole</u> <u>purpose</u> of manufacturing a New York contact, and in no way deserves to litigate here.[7] Indeed, Plaintiff's own papers confirm that OPS simply is seeking the tactical advantages offered by a U.S. forum. (<u>See</u> Pl. Br. at 2 n.1; Compl. (jury demand).)[8] Plaintiff offers nothing to rebut the rulings of this Court dismissing cases where, as here, a party attempted to manufacture federal jurisdiction. (Svenska Br. at 5-6.)

### B. OPS Has Not Challenged the Adequacy of English or Swedish Forums.

Unable to find a single expert to challenge Svenska's expert declarations,[9] OPS instead criticizes Svenska's expert declarations on narrow points, none of which alter the conclusion that England and Sweden are adequate alternative forums. (Pl. Br. at 6-7.) OPS takes issue with English courts because they have *forum non conveniens* laws, arguing that this somehow makes

---

(S.D.N.Y. Aug. 10, 2007), cited by Plaintiff (Pl. Br. at 4), are irrelevant because in those cases plaintiffs had *bona fide* New York connections.

[5] Although OPS argues that ECS no longer has English employees and is "essentially defunct" (Pl. Br. at 1), OPS is careful not to say that ECS is no longer operating. In fact, ECS' website is still soliciting business and lists ECS under a London address with London phone and fax numbers. <u>See</u> http://www.ecs-world.com/contact.asp (last visited Apr. 9, 2008).

[6] ECS apparently chose not to bring this suit in Florida because Svenska has no presence there.

[7] Field claims he created OPS to "distance" himself from the defendants. (Field Decl.¶ 4; Pl. Br. at 5, n.3.) This excuse makes no sense given that plaintiffs routinely sue in their own names. Here, ECS is not the plaintiff because that would destroy diversity.

[8] The advantages of litigating in the U.S. are well known and include juries, extensive discovery, contingency fees, etc.

[9] In a February 14, 2008 letter, Plaintiff's counsel represented that it was "finaliz[ing] an expert affidavit with respect to foreign law for the purpose of countering defendant's expert submissions." (Rowin Feb. 14 Letter to Chambers.) This suggests that Plaintiff's expert ultimately refused to so opine.

England an inadequate forum. (Pl. Br. at 7.) OPS then argues that Sweden is not an adequate forum because Mr. Lundblad could not unequivocally state whether a Swedish court would assert jurisdiction over the Nolter defendants. (Pl. Br. at 6.)

Neither criticism has any factual or legal merit, and Plaintiff offers no authority to suggest otherwise. Mr. Robinson opined that "it would be extremely difficult to persuade [an English] court that there is another forum which is as suitable or more suitable than England." (Robinson Decl. ¶¶ 88-89.) Mr. Robinson further opined that an English court would exercise jurisdiction over all defendants. (Robinson Decl. ¶ 91.) Mr. Lundblad opined that that to the extent the Nolter Defendants committed torts in Sweden, there would be jurisdiction. (Lundblad Decl. ¶ 19.) As such, both forums are adequate to the task of these claims.[10]

### C. There is No Relevant Evidence in New York.

OPS attempts to manufacture a connection to New York by arguing that New York consumers and Mastercard's New York office are relevant to this lawsuit. (Pl. Br. at 9-10.) They are not. New York consumers are not parties here and have no relevance because they in fact received the services they paid for. (Compl. ¶ 19.) It is ECS' wholly non-U.S. merchants, including pornography and gambling websites, that were allegedly injured.[11] (Compl. ¶ 46.) As

---

[10] Unable to join issue on the adequacy of Swedish or English forums, Plaintiff nonetheless seeks to burden Svenska with expert discovery. (Pl. Br. at 2 n.2.) There is, however, no factual or legal basis for discovery when plaintiff has chosen not to join issue with expert declarations submitted by learned scholars whose credentials are not challenged. See Transunion Corp. v. Pepsico, Inc., 811 F.2d 127, 130 (2d Cir. 1987) ("[m]otions to dismiss for *forum non conveniens* may be decided on the basis of affidavits").

[11] OPS cannot argue that both its foreign merchants and New York consumers were harmed because the harm is mutually exclusive. If consumers were harmed it is because consumers paid for, but did not receive services. If ECS' merchants were harmed, it is because they provided services to consumers, but did not receive payment. The Complaint claims for the latter. (Compl. ¶ 46.) Hence, the information regarding what New York consumers did (Field Decl. ¶ 8) is irrelevant. Similarly, Svenska's New York Branch and its relationship with the New York office of White & Case LLP (Field Decl. ¶ 5) have nothing whatsoever to do with anything in the Complaint.

to Mastercard, not only is it not a party,[12] but Plaintiff can offer no support for its surmise that Mastercard's New York office has documents on European banking activities.[13] Meanwhile, Svenska has demonstrated the substantial connections this case has to Sweden and England, and the relevant evidence located in those places. (Svenska Br. at 6-10; Svenska Decl. ¶¶ 2-4, 11-13.) Plaintiff has not rebutted any of these showings.

        **D.     Svenska's Real Hardship Outweighs Plaintiff's Claimed Hardship.**

Plaintiff relies heavily on Klonis v. Nat'l Bank of Greece, S.A., 487 F. Supp. 2d 351 (S.D.N.Y. 2006), to argue that Mr. Field's hardship is somehow decisive. (Pl. Br. at 8-11.) That reliance is ill-founded. In Klonis, plaintiffs were individuals suing on their own behalf, not, as here, a company suing on behalf of another company. 487 F. Supp. 2d at 353. Moreover, as noted above, a corporate principal's location does not control the *forum non conveniens* analysis. Furthermore, the Klonis plaintiffs were not forum shopping, but had a *bona fide* connection to New York—they opened the bank accounts actually at issue in New York. Id. at 354, 357-58.

Svenska—the main defendant[14]—has, on the other hand, shown real and substantial hardship to proceeding here. (Svenska Br. at 9-10.) For example, Svenska has demonstrated that to defend against allegations of deceit, conversion, and fraud, it will need live testimony[15] from: (1) Svenska's London branch employee(s) accused of taking bribes; (2) Svenska's Swedish branch employee(s) accused of taking bribes; (3) defendant Johansson, who is accused

---

[12] Plaintiff only alleges that Svenska violated Mastercard's rules and regulations. (Pl. Br. at 9.)

[13] The same is true for Visa (Pl. Br. at 9), which is not a party and is not alleged to have a New York office. Nor has Plaintiff shown that Visa's California office has documents relating to this matter.

[14] Svenska is the only deep pocket available to Plaintiff and is the subject of four of the five claims in the Complaint, while only two claims are asserted against the other defendants.

[15] Svenska has shown that depositions and letters rogatory will not be sufficient for it to defend itself against allegations of fraud, conversion, and deceit. (Svenska Br. at 10).

of bribing;[16] (4) Svenska's Swedish audit department; (5) Svenska's English audit department; (6) ECS' former and current English employees; (7) Factor Europe employees;[17] and investigators from (8) Scotland Yard and (9) Sweden's Economics Crime Bureau.[18]  It is undisputed that these witnesses cannot be compelled to testify here.[19]

In contrast, ECS does not face this type of hardship.  Field and his wife chose to run ECS out of London and have an interest in the outcome of this lawsuit.  Surely, they will appear in person to testify on ECS' behalf.  All but two of the other "witnesses" OPS names (Pl. Br. at 12) cannot offer any probative testimony or support the elements of Plaintiff's claims.[20]  As such, the balancing of hardship tips decidedly toward Svenska.

### E.   No Public Interest Supports OPS' Choice of Forum.

Balanced against Sweden and England's real interests in regulating their own corporations and residents, OPS can only point to New York consumers, who are irrelevant to the claims at issue, and Florida, which has only a minimal connection here.  (Pl. Br. at 13.)

---

[16] Plaintiff questions whether one Johansson is worth more than two Nolters.  (Pl. Br. at 12.)  He is.  Merchants' funds allegedly went missing from Johansson's company's account and it was Johansson who allegedly bribed Svenska's employees.  (See Compl. ¶ 29.)  By contrast, there is barely any mention of Eric Nolter in the Complaint, which suggests that Plaintiff named him as a defendant in a desperate attempt to bolster a tenuous U.S. connection.

[17] Having named Factor Europe as a defendant, Plaintiff scrambles to assert that they are an "empty shell."  (Pl. Br. at 7.)  Even if true, any former employees would be located abroad.

[18] Nicholas Nolter is not integral here, given his admission that he has no relationship with Svenska, a statement supported by Svenska's Declaration.  (Nolter Answer ¶ 18; Svenska Decl. ¶¶ 8-10.)

[19] It is also undisputed that Svenska would bear the expense of transporting willing witnesses, if any.

[20] OPS claims that it will need to call the principal of Menzia, Mastercard employees, U.S. consumers, and a U.S. issuing bank.  As shown above, however, U.S. consumers and their issuing banks are irrelevant here, and OPS has failed to show that any Mastercard New York employees have any probative information.  Moreover, Field's Declaration actually establishes that Menzia is not a needed witness.  (Field Decl. ¶ 16 ("Menzia had absolutely no involvement or interactions with Scandorder, the Nolters, Johnasson or any other defendant").)  Thus, the main witnesses are located in Sweden and England, and the Complaint suggests that Plaintiff needs them to make out its case.

Indeed, OPS cannot demonstrate why a New York jury should hear claims about wholly non-U.S. activity that caused losses to an English company in England.[21] Svenska has illustrated at length why New York has no interest in this lawsuit. (Svenska Br. at 10-11.)

## II.   OPS' FAILURE TO SHOW STANDING IS FATAL TO JURISDICTION AND ITS AIDING AND ABETTING CONVERSION CLAIM

In what would have been over 50 double-spaced pages, OPS offers nothing to establish standing or the element of ownership—essential to the aiding and abetting conversion claim. OPS did not produce the purported assignment agreement with ECS, nor has OPS pled the terms of any agreement under which ECS or OPS became the owner of any merchant's funds. (Svenska Br. at 12-14.)[22] OPS' aiding and abetting conversion claim also fails because, as discussed below, OPS cannot make out other elements of aiding and abetting.

## III.   AS A MATTER OF LAW, OPS CANNOT REMEDY THE FLAWS IN ITS AIDING AND ABETTING CLAIMS

### A.   Plaintiff's Causation Argument Fails Under Rule 9(b) and 12(b)(6).

Plaintiff argues that it pled causation because one group-pled paragraph in the Complaint hints that Svenska had a relationship with Scandor.com (allegedly controlled by the Nolter

---

[21] Plaintiff argues that in a case involving parties from different countries, local public interest is not a relevant factor. (Pl. Br. at 13 (citing Haywin Textile Prods., Inc. v. Int'l Fin. Inv., 137 F. Supp. 2d 431, 437 (S.D.N.Y. 2001)).) Haywin, however, found that the local public interest factor did not weigh in favor of the U.S. or Bangladesh because both had *bona fide* and equivalent interests. 137 F. Supp. 2d at 437. Further, the court noted that Bangladesh would be a better forum for the dispute if Bangladeshi law applied. Id. Svenska has shown that English law would apply here. (Svenska Br. at 11 (demonstrating that New York choice of law rules apply the law of the place where the loss occurred (i.e. England), not the law of the place of the alleged misrepresentation).) Svenska has also shown that the U.S. has little interest in ECS' claims. (Svenska Br. at 10-11.)

[22] Indeed, Field's claim that only ECS assigned its claims to OPS (Field Decl. at ¶¶ 4-5) is contradicted by OPS' brief, which claims that it is bringing ECS' merchants' claims under an agency theory or on its own behalf because "Mr. Field is OPS." (Pl. Br. at 14 & n.6.) OPS also relies on claims belonging to consumers (Pl. Br. at 24; Field Decl. ¶ 8)—who, of course, are not even parties and have no injury. The Complaint also states that missing funds are owned in whole or in part by foreign merchants. (Compl. ¶ 2, 46, 67; see also Compl. ¶ 48 (the "funds in issue belonged to ECS and its respective merchants, who were the owners of such monies").)

defendants). (See Compl. ¶ 16; Pl. Br. at 19.) A closer look at the Complaint, however, shows that Plaintiff has not pled causation as a matter of law.

On a 12(b)(6) motion, a court accepts as true only well-pled allegations and should not accept allegations that are contradicted or undermined by other more specific allegations in the Complaint. In re IAC/InterActiveCorp Sec. Litig., 478 F. Supp. 2d 574, 584-85 (S.D.N.Y. 2007). Here, specific allegations in the Complaint directly contradict the causal link Plaintiff so desperately needs. The Complaint expressly alleges that only Johansson dealt with Svenska. (Compl. ¶¶ 29, 33, 39, 74.) Not once is Johansson alleged to have worked for or through Scandorder.[23] To bridge this gap, Plaintiff relies solely on group pleading, alleging that "Defendants and Handelsbanken entered into a merchant banking agreement. The merchant agreement was set up in the names of SNL and Scandor.com." (Compl. ¶ 30 (emphasis added).)[24] This allegation is, however, at odds with Complaint ¶¶ 29, 33, 39 and 74, which suggest that Svenska did not know Scandorder and thus support Svenska's detailed account of why the causal link is five-times removed. (Svenska Br. at 17.)

Moreover, as shown in Svenska's moving brief, the group pleading on causation is only the tip of the iceberg. (Svenska Br. at 20-22.) Plaintiff has not disputed that group pleading is prohibited as a matter of law, and, in arguing that it only group pled through factual allegations, rather than its claims for relief (Pl. Br. at 24-25), Plaintiff forgot that its claims for relief expressly incorporate its factual allegations. (See Compl. ¶¶ 55, 64.)

---

[23] In fact, the Complaint alleges that Johansson worked with Svenska "through Defendant Factor Europe and a now-bankrupt entity known as [SNL]." (Compl. ¶ 29.) There is no mention of Scandorder.

[24] "Defendants" includes even the DOES. (Svenska Br. at 21 (citing Compl. at 2).)

### B. Plaintiff Failed to Distinguish Svenska's Case Law.

Plaintiff takes issue with Kolbeck v. LIT Am., Inc., 939 F. Supp. 240 (S.D.N.Y. 1996), because it deals with aiding and abetting a breach of fiduciary duty. (Pl. Br. at 20.) However, Svenska cited Kolbeck for the element of causation, which is the same for all aiding and abetting claims. (Svenska Br. at 17-18.) Next, Plaintiff claims that in Kolbeck, defendant "merely failed to discover acts of deception." (Pl. Br. at 20.) However, Kolbeck says that even if the defendant bank had actual knowledge of the alleged fraud, the bank's involvement was too remote. Kolbeck, 939 F. Supp. at 249. OPS' allegations of bribes and kickbacks thus do not remedy the fact that the causal link here is too remote and Plaintiff does not cite any cases holding otherwise. (See Svenska Br. at 17-18.)

Plaintiff also claims that allegations of bribes and kickbacks automatically establish substantial assistance and actual knowledge. (Pl. Br. at 21-22.) Plaintiff does not cite any case to support that argument.[25] As Svenska pointed out in its moving brief, at best, OPS' allegations support an inference that Svenska knew that Johansson had a questionable history, not that he intended to use Svenska to commit fraud. (Svenska Br. at 18-19.)

### C. As a Matter of Law, Plaintiff Has Not Pled Reasonable Reliance.

Plaintiff argues that Svenska improperly introduced documents showing that ECS' reliance on Nolter's company was unreasonable. (Pl. Br. at 17-19.) Plaintiff is wrong. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (on motion to dismiss court may take judicial notice of public records). Svenska has offered public records dating from 2001 containing

---

[25] Plaintiff also does not cite any case law to support its argument that this case is somehow different from Ross v. Bolton, 639 F. Supp. 323 (S.D.N.Y. 1986) or that its conclusory allegations of "actual knowledge" are enough to withstand a 12(b)(6) motion.

9

negative statements about Nick Nolter. Whether or not true, those statements undeniably undercut any claim of reasonable reliance by ECS. (See Salzman Affirm. Exs. G-L.)[26]

## IV.  SVENSKA DOES NOT OWE A DUTY TO ECS

Plaintiff argues that Svenska owed it a special duty because Svenska could have prevented ECS' harm by refusing to open the account through which ECS moved money. (Pl. Br. at 24.) Plaintiff relies in this on cases tied to September 11th. (See Pl. Br. at 23-24.) None of those cases, however, created the claimed "special duty." Rather, the holding was expressly limited to those who had suffered physical damage, and was not available to those who only had suffered financial losses. See In re September 11 Litig., 280 F. Supp. 2d 279, 292 (S.D.N.Y. 2003).[27] ECS has neither alleged nor suffered physical damage.

## V.  OPS' DECEPTIVE TRADE PRACTICES CLAIM MUST FAIL FOR LACK OF ANY NEW YORK CONNECTION

Plaintiff's sole support for this claim are general allegations about New York consumers. (Pl. Br. at 24.) These consumers, however, are not bringing claims here and have suffered no loss. (See Svenska Br. at 20.) Moreover, Plaintiff has never pled any misrepresentation by Svenska to any New York consumer. These flaws are fatal to Plaintiff's Section 349 claim.

## CONCLUSION

For the foregoing reasons, Svenska respectfully requests that its Motion to Dismiss the Complaint be granted in its entirety and with prejudice, and such other and further relief as the Court deems just and proper.

---

[26] These records are not limited to internet search results, but include court filings. (Salzman Affirm. Exs. K, L.) OPS also argues that ECS did not know of Nolter prior to entering into a business deal with Scandorder (Pl. Br. at 19), but the Complaint states that Nolter was in fact Scandorder's sole officer and director. (Compl. ¶ 16.)

[27] Indeed, the court in In re September 11 Litig. also noted that "New York courts have been cautious in extending liability to defendants for their failure to control the conduct of others, 'even where as a practical matter [the] defendant can exercise such control.'" 280 F. Supp. 2d at 290.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: New York, New York<br>April 9, 2008 | WHITE & CASE LLP<br><br>By:   /s/ Owen C. Pell<br>Owen C. Pell (OP-0118)<br>Milana Salzman (MS-0401)<br>Rebecca M. Bodony (RB-2246)<br>1155 Avenue of the Americas<br>New York, New York 10036<br>(212) 819-8200<br><br>*Attorneys for Defendant*<br>*Svenska Handelsbanken AB* |