# Exhibit A

**EKOBROTTSMYNDIGHETEN**  **ANSÖKAN OM STÄMNING**  Sida 1 (12)
STOCKHOLMS TINGSRÄTT

Vice chefsåklagare Thomas Kärrberg  Datum  Avd 3  Dnr
1:a kammaren  STOCKHOLMS TINGSRÄTT, avd 3
08-762 01 63  BESLUT 2008-08-14  2008-08-08  2008-08-11  C04-1-50-06
☒ Stämning utfärdas  Orgkod: 920
☐ off.försv, förordnas
☐ Personundersökning
Stockholms tingsrätt  ☐ utförs
Box 8307  Målnr: B 6721-06
104 20 STOCKHOLM  Handl.: EKO3
Jakob Hedenmo

| 1 | Tilltalad: efternamn och alla förnamn | Tilltalsnamn | Yrke/titel |
|---|---|---|---|
| | **Johansson, Lars Peter** | Peter | |

Personnr: 680118-8555  Medborgare i (om ej svensk)  Telefon  Tolkbehov
Adress: Trädgårdsgatan 3, 753 09 UPPSALA
Offentlig försvarare/ombud: Advokat Gösta Bergman
Frihetsberövande m.m.: Anhållen i frånvaro 060320. Gripen 060320 Kl 06.15. Häktad 060323. Häktningsbeslutet hävt av åklagare 060518 kl 09.25. Reseförbud med anmälningsplikt meddelat av åklagare 060518. Beslutet om reseförbud med anmälningsplikt hävt av åklagaren 060908.

| 2 | Tilltalad: efternamn och alla förnamn | Tilltalsnamn | Yrke/titel |
|---|---|---|---|
| | **Ahrsjö, Per Erik** | Erik | |

Personnr: 670211-0195  Medborgare i (om ej svensk)  Telefon  Tolkbehov
Adress: Norr Mälarstrand 72, 7 tr 112 35 STOCKHOLM
Offentlig försvarare/ombud: Advokat Bertil Malmlöf
Frihetsberövande m.m.: Anhållen i frånvaro 060320. Gripen 060321 kl 06.00. Häktad 060324. Häktningsbeslutet hävt av åklagare 060518 kl 09.50. Reseförbud med anmälningsplikt meddelat av åklagare 060518. Beslutet om reseförbud med anmälningsplikt hävt av åklagaren 060908.

| 3 | Tilltalad: efternamn och alla förnamn | Tilltalsnamn | Yrke/titel |
|---|---|---|---|
| | **Rosengren, Karl Magnus** | Karl | |

Personnr: 720630-7196  Medborgare i (om ej svensk)  Telefon  Tolkbehov
Adress: Riddargatan 29 A 11457 STOCKHOLM
Offentlig försvarare/ombud: Advokat Tomas Nilsson
Frihetsberövande m.m.: Anhållen i frånvaro 060319. Gripen 060321 kl 06.05. Frigiven av TR 060324 kl 13.10

| 4 | Tilltalad: efternamn och alla förnamn | Tilltalsnamn | Yrke/titel |
|---|---|---|---|
| | **Ågren, Sven Konrad Andreas** | Konrad | |

Personnr: 680924-8534  Medborgare i (om ej svensk)  Telefon  Tolkbehov
Adress: Stopvägen 80, C/O Lilliehöök 16836 BROMMA
Offentlig försvarare/ombud: Advokat Lars Engstrand
Frihetsberövande m.m.: Anhållen i frånvaro 060320. Gripen 060321 kl 06.00. Frigiven av TR 060324 kl 16.00

Postadress: Box 820, 101 36 STOCKHOLM  Gatuadress: Hantverkargatan 15  Telefon: 08-762 01 63  Telefax: 08-762 02 04

EKOBROTTSMYNDIGHETEN                    **ANSÖKAN OM STÄMNING**    Sida 2 (12)

Datum
2008-08-08

Dnr
C04-1-50-06

| | Tilltalad: efternamn och alla förnamn | Tilltalsnamn | Yrke/titel |
|---|---|---|---|
| **5** | **Lithman, Rutger Mikael Robert** | **Mikael** | |

| Personnr | Medborgare i (om ej svensk) | Telefon | Tolkbehov |
|---|---|---|---|
| 581031-1414 | | | |

Adress
C/O Cederberg, Rykesstrasse 50, 10405 BERLIN

Offentlig försvarare/ombud
Advokat Per Gotthard

Frihetsberövande m.m.

Delgivningsuppgifter

| | Tilltalad: efternamn och alla förnamn | Tilltalsnamn | Yrke/titel |
|---|---|---|---|
| **6** | **Eriksson, Bengt Peter** | **Peter** | |

| Personnr | Medborgare i (om ej svensk) | Telefon | Tolkbehov |
|---|---|---|---|
| 520211-2594 | | | |

Adress
Fakturigatan 43, 561 43  HUSQVARNA

Offentlig försvarare/ombud

Frihetsberövande m.m.
Anhållen 060320 kl 15.00. Gripen 060322 kl 09.15. Frigiven 060322 kl 15.50.

Delgivningsuppgifter
Box 61, 551 12  JÖNKÖPING

| | Tilltalad: efternamn och alla förnamn | Tilltalsnamn | Yrke/titel |
|---|---|---|---|
| **7** | **Silva Silva, Dagoberto Guillermo** | **Guillermo** | |

| Personnr | Medborgare i (om ej svensk) | Telefon | Tolkbehov |
|---|---|---|---|
| 710117-9252 | CHILE | | |

Rotsundagårdsvägen 56 2 tr    19279  SOLLENTUNA

Offentlig försvarare/ombud

Frihetsberövande m.m.

Delgivningsuppgifter

**Ansvarsyrkanden m.m.**

**Bevisning, se särskild bilaga**

## 1. BOKFÖRINGSBROTT, grovt brott och FÖRSVÅRANDE AV SKATTEKONTROLL, grovt brott (Johansson och Lithman)

Othello Holding AB, 556565-1675, med säte i Stockholm har åsidosatt bokföringsskyldigheten enligt bokföringslagen genom att felaktigt bokföra per mars månad 1999 att man hade en tillgång motsvarande 70 000 000 kr i form av en amerikansk stadsskuldväxel, samt därefter likaledes felaktigt i årsredovisningarna för räkenskapsåren 1999/2000 (24 september 2001) samt 2000/2001 (8 april 2002) uppta tillgångar motsvarande 70 000 000 kr i form av stadsskuldväxel resp. värdepapper från USA och Italien. Felaktigheten består i att Othello Holding AB inte hade dessa tillgångar och aktiekapital med motsvarande belopp.

EKOBROTTSMYNDIGHETEN                **ANSÖKAN OM STÄMNING**    Sida 3 (12)

Datum
2008-08-08

Dnr
C04-1-50-06

Peter Johansson, suppleant i bolaget, har tillsammans och i samråd/samförstånd med Mikael Lithman, ledamot i bolaget, i en gemensam brottsplan för att genomföra sk skalbolagsköp uppsåtligen låtit bokföra och i årsredovisningarna uppta de felaktiga tillgångarna och aktiekapitalet enligt ovan. Johansson har som ett led i denna brottsplan utfärdat osanna handlingar (intyg) från den av honom kontrollerade offshorebanken Bank Crozier på Grenada samt deltagit i vilseledande åtgärder med lån. Dessa osanna handlingar (intygen) har sedan legat till grund för eller verifierat de bokföringsåtgärder som vidtagits avseende tillgångar motsvarande 70 000 000 kr. Fara i bevishänseende har förelegat.

Genom åsidosättandet av bokföringsskyldigheten enligt bokföringslagen enligt vad som framgår ovan har rörelsens förlopp, resultat eller ställning inte ens i huvudsak kunnat bedömas med ledning av bokföringen. Vidare har myndighets (skatteverket) kontrollverksamhet vid beräkning eller uppbörd av skatt eller avgift allvarligt försvårats.

Brotten bör bedömas som grova med hänsyn till tillgångens mycket betydande storlek och då brottsligheten har varit av farlig art med utfärdande av osanna bankintyg, skett systematisk, och varit av organiserad art.

Lagrum

11 kap 5 § brottsbalken och 10 § skattebrottslagen 1971:69

## 2 - 4 GROVT BOKFÖRINGSBROTT, GROVT SKATTEBROTT och FÖRSVÅRANDE AV SKATTEKONTROLL, grovt brott (Johansson, Ahrsjö och Rosengren ) samt medhjälp därtill (Ågren, Silva och Eriksson)

Inledning

Scandinavian Net Logistics AB med säte i Stockholm, org nr 556650-7801, har under räkenskapsåren 031021-040831 (bolagets första räkenskapsår), 040901-050831 samt under perioden 050901-060221 enligt uppgifter lämnade i årsredovisningar tillhandahållit internetbaserade transaktionssystem och återförsäljartjänster för handel samt nedladdningsbar mjukvara. Bolaget har även bedrivit handel med digitala värdekuponger, samt agenturhandel med metallråvaror samt handel med hårdvara.

Under räkenskapsår 031021 – 040831 var nettoomsättningen enligt årsredovisningen 2 658 694 kr. För räkenskapsår 040901 – 050831 var nettoomsättningen enligt årsredovisningen 370 497 419 kr.

Bolaget försattes i konkurs 060627 vid Stockholms tingsrätt, K 14868-06.

Brottsplan

Styrelseledamoten i bolaget Karl Rosengren (formell företrädare), Peter Johansson (faktisk företrädare) och Erik Ahrsjö (faktisk företrädare) har tillsammans och i samråd/samförstånd startat upp verksamheten i bolaget och därefter drivit verksamheten med insikt om att bolaget och dess verksamhet i allt väsentligt styrdes och kontrollerades av dem gemensamt (informell styrelse) och att Rosengrens funktion i verkligheten var underordnad Johansson

EKOBROTTSMYNDIGHETEN                    **ANSÖKAN OM STÄMNING**    Sida 4 (12)

Datum
2008-08-08

Dnr
C04-1-50-06

och Ahrsjö som utgjorde bolagets verkliga företagsledning i bakgrunden med Rosengren som deras front utåt.

I brottsplanen har ingått att i bokföringen (löpande samt årsredovisning) vilseleda om vari bolagets väsentligaste intäkter kommer ifrån. Under tidsperioden 040901 – 050831 har den huvudsakliga intäkten (ca 295 000 000 kr) kommit från processingverksamhet (betalningsförmedling) gällande Internet/kreditkortskunder från USA som i huvudsak spelat /köpt tjänster mm på olika websajter (spelsajter, porrsajter o dyl). Som ett led i vilseledandet har bolaget tagit fram och tillhandahållit ett betalningsförmedlingssystem som utåt givit inlösande banker och kreditkortsföretag en vilseledande information om vad som köpts. Syftet har i huvudsak varit att medverka till att kringgå de restriktiva reglerna i USA om spel på Internet och därigenom generera vinster som inte skall framgå av bolagets bokföring.

I brottsplanen gällande processingverksamheten med internethandel har ingåtts ett hemligt Jointventureavtal mellan Scandinavian Pay System AB (Scandinavian Net Logistics AB:s tidigare firma), Nelldale Ltd i Gibraltar och ID/Positive SA i Panama om samarbete och vinstdelning/överskott där vare sig avtalet och vinstdelningen (slutlig eller preliminär) skall framgå av bokföringen i Scandinavian Net Logistics AB. Som ett led i vinstdelningen har utbetalningar skett via det av Peter Johansson kontrollerade engelska bolaget Factor Europé Ltd till bolag, banker och konton utomlands till Johansson, Ahrsjö och Rosengren och andra. Factor Europé Ltd´s funktion har i huvudsak varit att förhindra insyn i betalningstransaktioner som föranletts eller i huvudsak grundat sig på Jointventureavtalet.

I brottsplanen har generellt ingått att ur bolagets verksamhet generera utbetalningar och vinster på sådant sätt att det inte skall synas eller på annat sätt framgå av bolagets bokföring att sådana bokföringspliktiga affärshändelser ägt rum. Dessa har dolts med hjälp av osanna fakturor. Syftet har främst varit skatteundandragande för företrädarna samt anställda eller andra.

I brottsplanen har vidare ingått att från bolagets verksamhet utbetala ersättningar/löner/mutor till anställda eller andra som utfört tjänster på sådant sätt att det inte skall synas eller på annat sätt framgå av bolagets bokföring.

I brottsplanen har vidare ingått att tillgodogöra sig avdrag för ingående mervärdesskatt grundat på osanna fakturor.

Räkenskapsåren 031012 – 040831 och 040901-050831

*Vilseledande och osanna uppgifter i bokföringen*

Scandinavian Net Logistics AB har åsidosatt bokföringsskyldigheten enligt bokföringslagen genom att *bokföra oriktiga affärshändelser grundat på osanna fakturor* från – Dácord Software AB, olika Stiftarenbolag, Anwizwer IP Trade AB, Unigroup Ltd i Belize och Scandor Far East Ltd Hong Kong enligt följande. Påstådda affärshändelser som bokförts avspeglar vare sig riktiga belopp, riktig utfärdare av fakturan eller vad fakturan avser. Fakturorna och bokförda affärshändelser avspeglar ej vad som hänt och saknar verklighetsbakgrund.

EKOBROTTSMYNDIGHETEN                 **ANSÖKAN OM STÄMNING**     Sida 5 (12)

Datum
2008-08-08

Dnr
C04-1-50-06

| Bolag | Period (bokf + dekl) | Belopp kr (netto) | Ingående mervärdesskatt (deklarerad) | Totalt (brutto) |
|---|---|---|---|---|
| Dåcord Software AB | juli 04 (ink dekl) | 374 761 | 93690 (ink dekl 05) | 468 451 |
| Dåcord Software AB | juli 04 (ink dekl) | 334 843 | 83710 (ink dekl 05) | 418 554 |
| Dåcord Software AB | aug 04 (ink dekl) | 190 958 | 47 739 (ink dekl 05) | 238 698 |
| *Totalt Dåcord:* | | *900 562* | *225 139* | *1125 703* |
| | | | | |
| Stiftaren 8702 | dec 04 | 641 642 | 160 411 | 802 053 |
| Stiftaren 8704 | dec 04 | 608 249 | 152 062 | 760 311 |
| Stiftaren 8705 | dec 04 | 676 237 | 169 059 | 845 297 |
| Stiftaren 8706 | dec 04 | 501 877 | 125 469 | 627 346 |
| Stiftaren 8701 | jan 05 | 364 741 | 91 185 | 455 927 |
| Stiftaren 8701 | jan 05 | 444056 | 111014 | 555071 |
| Stiftaren 8706 | jan 05 | 468 962 | 117 240 | 586 203 |
| Stiftaren 8707 | jan 05 | 598 504 | 149 625 | 748 130 |
| Stiftaren 8708 | jan 05 | 915 334 | 228 833 | 1144 168 |
| Stiftaren 8710 | jan 05 | 404 734 | 101 183 | 505 917 |
| Stiftaren 8711 | jan 05 | 667 526 | 166 881 | 834 408 |
| Stiftaren 8712 | jan 05 | 872 424 | 218 106 | 1 090 531 |
| Stiftaren 8713 | jan 05 | 391 938 | 97 984 | 489 922 |
| Stiftaren 8714 | jan 05 | 526 476 | 131 618 | 658 095 |
| *Totalt Stiftaren:* | | *8 082 694* | *2 020 669* | *10 103 363* |
| | | | | |
| Anwizwer IP Trade AB | aug 05 (dekl sept 05) | 6 115 608 | 1 528 901 | 7 644 509 |
| | | | | |
| *Totalt Anwizwer:* | | *6 115 608* | *1 528 901* | *7 644 509* |
| | | | | |
| Unigroup Ltd | sept 04 | 5 583 797 | | 5 583 797 |
| Unigroup Ltd | okt 04 | 17 209 951 | | 17 209 951 |
| Unigroup Ltd | nov 04 | 18 803 085 | | 18 803 085 |
| Unigroup Ltd | dec 04 | 20 620 561 | | 20 620 561 |
| Unigroup Ltd | jan 05 | 33 007 020 | | 33 007 020 |
| Unigroup Ltd | feb 05 | 37 385 530 | | 37 385 530 |
| Unigroup Ltd | mars 05 | 52 828 023 | | 52 828 023 |
| Unigroup Ltd | april 05 | 47 820 606 | | 47 820 806 |
| Unigroup Ltd | maj 05 (faktura saknas) | 7 073 056 | | 7 073 056 |
| Unigroup Ltd | maj 05 | 7 073 506 | | 7 073 506 |
| *Totalt Unigroup:* | | *247 405 609* | | *247 405 609 (i bokslut kostnadsförs 244 319 529)* |
| | | | | |
| Scandor Far East Ltd | Aug 05 | 1 171 423 | | 1 171 423 |
| *Totalt Scandor:* | | *1 171 423* | | *1 171 423* |
| | | | | |
| *Totalt samtliga:* | | *263 675 902* | *3 774 710* | *267 450 623* |

*Oriktiga skattedeklarationer*

Scandinavian Net Logistics AB har i skattedeklarationer för respektive period ovan redovisat oriktig ingående mervärdesskatt med belopp som framgår ovan. De oriktiga uppgifter består i att bolaget grundat den ingående mervärdesskatten på osanna fakturor. Fara har förelegat för att skatt felaktigt tillgodoräknas eller återbetalas till bolaget med angivna belopp.

EKOBROTTSMYNDIGHETEN                    **ANSÖKAN OM STÄMNING**      Sida 6 (12)

Datum
2008-08-08

Dnr
C04-1-50-06

*Overifierade intäkter/kostnader (040901 – 050831)*

Scandinavian Net Logistics AB har åsidosatt bokföringsskyldigheten enligt bokföringslagen genom att inte tillräckligt verifiera vari de bokförda intäkterna på om 291 363 644 kr (nettoomsättning Internetvaruhandel) avser. Enligt bokföringslagen skall det framgå vad en affärshändelse avser. Av bokföringen framgår inte vad dessa affärshändelser avser. Det framgår inte vad bolaget sålt eller vem som är motpart.

Bolaget har bokfört kostnader från/i samband med internethandeln med ca 244 000 000 kr. Enligt bokföringen har Unigroupfakturorna bokförts som underlag till dessa kostnader. Unigroupfakturorna är osanna och rätteligen har bolaget via Factor Europé Ltd haft omfattande utbetalningar till sk mearchants. Det framgår vidare inte av bokföringen vilka merchants som erhållit pengar, hur mycket de erhållit eller när affärshändelserna ägt rum. Genom detta förfarande har bokföringsskyldigheten enligt bokföringslagen åsidosatt.

*Ej bokförd vinstutdelning/kostnader (040901 – 050831)*

Scandinavian Net Logistics AB har åsidosatt bokföringsskyldigheten enligt bokföringslagen genom att inte bokföra och verifiera de vinstutdelningar (preliminära eller slutliga) som aktualiserats enligt det hemliga Jointventureavtalet ovan beskrivet under brottsplan. Dessa utdelningar/utbetalningar kan beräknas till ca 20 procent av totalomsättningen av processingverksamheten (ca 295 000 000 kr) eller omkring 60 000 000 kr. Det framgår inte av bokföringen att en sådan vinstutdelning har skett och hur den beräknats eller utbetalats. Avsaknandet av avtalet i bolagets räkenskapsinformation har inneburit att ett för bolaget mycket viktigt avtal inte har funnits tillgängligt. Det har inneburit att bolagets åtaganden enligt avtalet inte kunnat följas i bokföringen eller på annat sätt bedömas för utomstående.

Dessa vinstutdelningar har dolts genom konstruktionen med Factor Europé Ltd vars syfte i huvudsak har varit att förhindra insyn i hur vinster och andra betalningsströmmar hänförliga till Jointventureavtalet hanterats samt genom de osanna bokföringsåtgärderna med Unigroupfakturorna. Genom att dölja vinstutdelningarna/utbetalningarna har betydande belopp kunnat utnyttjas av Johansson, Ahrsjö och Rosengren för dold vinstutdelning, nyinvesteringar, "svarta löner", mutor mm som ej bokförts eller på annat sätt verifierats i Scandinavian Net Logistics AB's bokföring. Dessa utbetalningar har skett från Factor Europé Ltd direkt eller via Factor Europé Ltd till personer, bolag eller bankkonton för att försvåra granskning och upptäckt av hur vinstmedlen hanterats. Som ett led i brottsplanen har bankkonton i First International Curacao Bank på Nederländska Artillerna använts och då särskilt via konton tillhöriga bolaget Verzi Maestro SA i Anquilla.

*Årsredovisningen 040901 – 050831*

Scandinavian Net Logistics AB har förutom bristerna i den löpande bokföringen enligt ovan även åsidosatt bokföringsskyldigheten enligt bokföringslagen genom att i årsredovisningen , daterad 060221, låta kostnadsföra fakturorna från Unigroup, Anwizwer IP Trade AB, Scandor Far East Ltd samt slutligen 5st av Stiftarefakturorna. Vidare saknar årsredovisningen information om Jointventureavtalet och vinstdelningen ovan med följd att bolagets åtaganden enligt avtalet inte kunnat bedömas.

EKOBROTTSMYNDIGHETEN                    **ANSÖKAN OM STÄMNING**    Sida 7 (12)

Datum
2008-08-08

Dnr
C04-1-50-06

*Effekter av bristerna i bokföringen*

Genom åsidosättandet av bokföringsskyldigheten enligt bokföringslagen enligt vad som framgår ovan har rörelsens förlopp, resultat eller ställning inte ens i huvudsak kunnat bedömas med ledning av bokföringen. Vidare har myndighets (skatteverket) kontrollverksamhet vid beräkning eller uppbörd av skatt eller avgift allvarligt försvårats.

*Brottens allvarlighet*

Bokföringsbrotten, skattebrotten och försvårandet av skattekontroll bör bedömas som grova brott då åsidosättandet avsett mycket betydande belopp, osanna handlingar har använts samt då brottsligheten utövats systematiskt och varit av särskilt farlig art.

*Ansvarsfördelning (gärningsmannaskap och medhjälp)*

Det görs gällande att Johansson, Ahrsjö och Rosengren uppsåtligen i den gemensamt beskrivna brottsplanen varit fullt införstådda med att bokföringsskyldigheten enligt bokföringslagen skulle behöva åsidosättas enligt vad som beskrivits ovan. Med denna insikt om brottsplanen har Johansson, Ahrsjö och Rosengren tillsammans och i samråd/samförstånd drivit verksamheten i bolaget för de aktuella perioderna ovan och på sätt som beskrivits ovan med uppsåt till att osanna fakturor tagits fram och lagts in i bokföringen, vinstutdelningar dolts och ej bokförts, intäkter haft bristfällig och vilseledande information i bokföringen etc, skattedeklarationer lämnats med oriktiga uppgifter och slutligen att årsredovisningen följaktligen kommit att bli vilseledande.

Johansson har tillsammans med Ahrsjö särskilt främjat brottsligheten genom att vara initiativtagare och delaktiga i framtagandet av Jointventureavtalet och hur vinstdelningen skall hanteras. Johansson har vidare särskilt främjat brottsligheten genom att som företrädare och ägare involvera bolaget Factor Europé Ltd i brottsplanen och styra över dess betalningsströmmar och på annat sätt se till att Factor Europé Ltd kom att medverka i brottsplanen.

Johansson har vidare särskilt främjat brottsligheten genom att ge direktiv och information att låta tillverka de osanna fakturorna från Unigroup Ltd.

Ahrsjö har särskilt främjat brottsligheten genom att vara initiativtagare och ansvarig för att de osanna fakturorna från Dacord Software, Stiftarebolagen, Anwizwer IP Trade AB samt Scandor Far East Ltd kom att framställas och därefter bokföras och i förekommande fall ligga till grund för den ingående mervärdesskatt som deklarerats.

Ågren har i egenskap av controller/ekonomichef uppsåtligen främjat brottsligheten genom att låta bokföra de osanna Dacordfakturorna, Stiftarefakturorna, fakturan från Anwizwer IP Trade AB och medverka till att den ingående oriktiga mervärdesskatten på dessa kom att deklareras. Ågren har vidare i samma egenskap uppsåtligen främjat brottsligheten genom att upprätta Unigroupfakturorna och därefter låta bokföra dessa. Ågren har vidare uppsåtligen främjat brottsligheten genom att medverka i bokslutsarbetet avseende räkenskapsår 040901

EKOBROTTSMYNDIGHETEN          **ANSÖKAN OM STÄMNING**    Sida 8 (12)

Datum
2008-08-08

Dnr
C04-1-50-06

– 050831 med följd att 5 Stiftarefakturor, fakturan från Anwizwer IP Trade AB, Scandor far East Ltd samt Unigroupfakturorna slutligen kom att kostnadsföras även i årsredovisningen.

Silva har i egenskap av företrädare för Dàcord Software AB uppsåtligen främjat gärningarna vad gäller grovt bokföringsbrott och grovt skattebrott genom att på Ahrsjös uppdrag utfärda de osanna fakturorna från Dácord Software AB och se till att Scandinavian Net Logistic AB erhöll fakturorna.

Eriksson har uppsåtligen främjat gärningarna vad gäller grovt bokföringsbrott och grovt skattebrott avseende Stiftarefakturorna genom att på annans uppdrag någon gång under januari månad 2005 beställa de aktuella Stiftarebolagen från en lagerbolagssäljare i Vetlanda för att sedan vidarebefordra uppgifter till annan om beställda bolag med uppgift om organisationsnummer mm så att uppgifterna kunde användas för utfärdande av de nu aktuella osanna fakturorna som legat till grund för bokföring och skattedeklarationer på sätt som angivits ovan. Eriksson har vidare uppsåtligen främjat gärningarna vad gäller grovt bokföringsbrott och grovt skattebrott avseende fakturan från Anwizver IP Trade AB genom att på annans uppdrag under våren 2005 medverka till att införskaffa bolaget (dåvarande firma Ersta Tobak) och efter införskaffandet vidtaga olika åtgärder (namnbyte, verksamhetsändring, lokal etc) för att sken av att bolaget hade en seriös verksamhet. Eriksson har som ett led i främjandet även vidarebefordrat information om bolaget till uppdragsgivaren som sedan utfärdat den osanna fakturan från Anwizver IP Trade AB.

Lagrum

11 kap 5 § brottsbalken, 2-4 och 10 §§ skattebrottslagen (1971:69) samt 23 kap 4 § brottsbalken

## 5. GROVT SKATTEBROTT (Johansson)

Johansson har som ett led i brottsplanen beskriven ovan i åtalspunkt 2-4 underlåtit att redovisa inkomster som väsentligen kommer från vinster beskrivna i brottsplanen.

Johansson har varit skyldig att till skatteverket i Sverige lämna allmän självdeklaration för beskattningsåret 2005. Någon deklaration har ej lämnats. Deklarationen skulle ha lämnats senast den 2 maj 2006. Underlåtenheten att deklarera har medfört fara för att skatt med betydande belopp undandras det allmänna. De oredovisade inkomsterna under inkomstslaget tjänst kan uppskattas till i vart fall minst 15 800 000 kr och med en skatteeffekt på minst 9 miljoner kronor.

Brottet bör bedömas som grovt då det sammanlagda undandragna beloppet är betydande och ingått som ett led i en grov organiserad brottslighet.

Lagrum

2-4 §§ skattebrottslagen (1971:69)

Datum
2008-08-08

Dnr
C04-1-50-06

### 6. GROV SKATTEBROTT (Rosengren)

Rosengren, skriven i Stockholm, har som ett led i brottsplanen beskriven ovan i åtalspunkt 2-4 underlåtit att underlåtit att redovisa inkomster år 2006 om ca 6 000 000 kr som väsentligen kommer från vinster beskrivna i brottsplanen.

Rosengren har i sin självdeklaration 2006 (inkomstår/beskattningsår 2005) till Skatteverket uppsåtligen lämnat oriktiga uppgifter om inkomstförhållanden enligt vad som framgår nedan.

*Oriktiga uppgifter om lån*

Rosengren har i sin deklaration uppgivit att han under år 2005 erhållit lån om 3 813 856 kr från Factor Europé Ltd samt lån om 360 990 kr från Scandor East Asia Ltd. Uppgifterna är oriktiga och en efterhandskonstruktion då erhållna belopp i verkligheten skall anses som ersättning/lön enligt brottsplanen i åtalspunkt 2-4 och skall beskattas under inkomstslaget tjänst.

*Oredovisade inkomster*

Rosengren har vidare underlåtit att redovisa inkomster under inkomstslaget tjänst med ytterligare minst 180 000 USD (ca 1 260 000 kr) vilket avser lön/uttag enligt brottsplanen i åtalspunkt 2-4. Dessa vinstmedel har förts över till av honom tillhöriga konton på First International Curacao Bank och disponerats kontant under år 2005.

Rosengren har underlåtit att redovisa ersättning med 550 000 kr under inkomstslaget tjänst vilket avser uttag/lön från bolaget Intergrated Capital AB.

Rosengren har genom sitt förfarande givit upphov till fara för att skatt undandras det allmänna med minst 3 000 000 kr. Brottet bör bedömas som grovt då det sammanlagda undandragna beloppet är betydande, i vissa delar grundat sig på osanna handlingar samt ingått som ett led i en grov organiserad brottslighet.

Lagrum

2-4 §§ Skattebrottslagen (1971:69)

### 7. GROVT BOKFÖRINGSBROTT, GROVT SKATTEBROTT och FÖRSVÅRANDE AV SKATTEKONTROLL, grovt brott (Rosengren)

Rosengren har i egenskap av företrädare för Intergrated capital, org nr 556670-6866, med säte i Stockholm, uppsåtligen åsidosatt bokföringsskyldigheten enligt bokföringslagen genom att inte bokföra affärshändelserna löpande under tiden 041111 – 051231. Bokföringen är upprättad i efterhand vid ett tillfälle under mars månad 2006. Vidare har bolaget den 16 maj 2005 fört över 550 000 kr till Rosengrens privata konto i Östgöta Enskilda Bank utan att det framgår av bolagets bokföring att så skett eller varför. Av bokföringen som varit vilseledande har transaktionen bokförts på så sätt att beloppet avser fordran Factor Europé Ltd (FE).

Rosengren har vidare underlåtit att rätteligen bokföra ovan nämnda utbetalning som lön till honom med följd att bolaget ej i skattedeklaration redovisat lön för redovisningsperioden maj

EKOBROTTSMYNDIGHETEN                **ANSÖKAN OM STÄMNING**      Sida 10 (12)

Datum
2008-08-08

Dnr
C04-1-50-06

2005 med 550 000 kr och arbetsgivaravgifter om 174 980 kr med fara för skatteundandragande.

Åsidosättandet av bokföringsskyldigheten har medfört att rörelsens förlopp, resultat eller ställning inte ens i huvudsak kunnat bedömas med ledning av bokföringen.

Brotten bör bedömas som grova med hänsyn till de betydande beloppen, vilseledande bokföring, systematiken samt att brottsligheten varit av farlig art.

Lagrum

11 kap 5 § brottsbalken samt 2, 4 och 10 §§ skattebrottslagen (1971:69)

## 8. GROVT SKATTEBROTT (Ahrsjö)

Ahrsjö, skriven i Stockholm, har som ett led i brottsplanen beskriven ovan i åtalspunkt 2-4 uppsåtligen underlåtit att till skatteverket i sin självdeklaration redovisa alla inkomster för inkomstår/beskattningsår 2005 och genom att lämna oriktiga uppgifter enligt vad som framgår nedan.

Ahrsjö har i sin självdeklaration 2006 underlåtit att redovisa inkomster för år 2005 med minst 3 441 337 kr varav 1 470 000 kr avser pengar som gått via Verzi Maestro SA till Limmatur KB, 1 171 337 kr från Scandinvian Net Logisics AB samt 800 000 kr som gått via Factor Europé Ltd till Limmatur KB. Utbetalda belopp skall rätteligen anses som sådan ersättning till Ahrsjö som skall beskattas under inkomstslaget tjänst.

Fara har förelegat för att skatt undandras det allmänna med betydande belopp (1 700 000 kr)

Brottet bör bedömas som grovt då det sammanlagda undandragna beloppet är betydande och ingått som ett led i en grov organiserad brottslighet.

Lagrum

2-4 §§ Skattebrottslagen (1971:69)

## 9. GROVT BOKFÖRINGSBROTT, GROVT SKATTEBROTT och FÖRSVÅRANDE AV SKATTEKONTROLL, grovt brott (Ahrsjö)

Ahrsjö har i egenskap av företrädare för Limmatur KB, org nr 969649-7040, med säte i Stockholm, uppsåtligen åsidosatt bokföringsskyldigheten enligt bokföringslagen genom att under räkenskapsår 2004 inte bokföra en lägenhetsförsäljning om 3 250 000 kr, insättningar på Handelsbanken om 733 800 kr samt uttag på från Handelsbanken om 662 735 kr samt under räkenskapsår 2005 inte bokföra uttag från Handelsbanken om 680 000 kr och insättningar på Handelsbanken om 318 697 kr.

Under år 2005 saknas vidare i bokföringen fakturaunderlag eller liknande underlag avseende inköp för 248 802 kr, samt i bokslutet för år 2005 saknas underlag för bokningen om 800 000

kr konto 2893 "EA egna insättningar". Vidare saknas underlag i bokföringen för insättningar under mars månad 2005 om 1 000 000 kr (ver 37, 38 och 43).

Åsidosättandet har medfört att rörelsens förlopp, ekonomiska resultat eller ställning inte ens i huvudsak kunnat bedömas med ledning av bokföringen.

Ahrsjö har vidare, trots skyldighet därtill, uppsåtligen underlåtit att i rätt tid till Skatteverket registrera Limmaturs KB´s verksamhet för mervärdesskatt. Den mervärdesskattepliktiga verksamheten startade den 1 december 2004 och ansökan om mervärdesskattregistrering inlämnades den 2 augusti 2006. Fara har förelegat för att skatt undandras det allmänna.

Brotten bör bedömas som grova med hänsyn till de betydande beloppen, vilseledande bokföring, systematiken samt att brottsligheten varit av farlig art.

Lagrum

11 kap 5 § brottsbalken samt 2, 4 och 10 §§ skattebrottslagen (1971:69)

## 10 . NÄRINGSFÖRBUD (Johansson, Ahrsjö och Rosengren)

Då Johansson, Ahrsjö och Rosengren grovt åsidosatt vad som ålegat dem i näringsverksamhet enligt vad som framgår enligt ovan, skall de meddelas näringsförbud enligt lagen (1986:436) om näringsförbud.

Brotten bör bedömas som grova med hänsyn till de betydande beloppen, vilseledande bokföring, systematiken samt att brottsligheten varit av farlig art.

Lagrum

1-4 §§ lagen (1986:436) om näringsförbud.

## 11. BESLAG

Följande bevisbeslag yrkas bestå tills laga kraftägande dom eller beslut föreligger i målet. Beslagsprotokollen framgår av förundersökningsprotokollet i den s k Net Log delen, bilaga D, del 4, från sid 196 – 272.

Peter Johansson
0900-2006-340: Punkt 5 (resterande del anteckningsblock); 0900-2006-350: Punkt 2-3, 18, 22, 25, 27, 33, 35, 36, 38, 39, 42, 44, 46, 48, 51-54, 58, 60, 80, 81, 82, 83, 84, 85, 88, 89, 91-105; 0900-2006-393: Punkt 1-34

Konrad Ågren
0920-06-551: Punkt 2-3

Peter Eriksson
0900-2006-380: Punkt 3, 4, 6, 7, 9

EKOBROTTSMYNDIGHETEN                    **ANSÖKAN OM STÄMNING**     Sida 12 (12)

Datum
2008-08-08

Dnr
C04-1-50-06

<u>Scandinavian Net Logistics AB i konkurs</u>
0900-2006-362: Punkt 1-58, 60-76; 0900-2006-363: Punkt 1-67, 69-72, 74-78, 81, 86, 88, 90-93;  0900-2006-364: Punkt 1-52; 0900-2006-365: Punkt 1-14; 0900-2006-366: Punkt 1-7; 0900-2006-367: Punkt 2; 0900-2006-370: Punkt 1-2; 0900-2006-371:  Punkt 1-9, 11-33; 0900-2006-372:  Punkt 1-6, 8-10; 0900-2006-373: Punkt  3-21; 0900-2006-374: Punkt 1-14, 16-19; 0900-2006-378: Punkt 1-51; 0900-2006-396: Punkt 1-2

<u>Sydsvenska Lagerbolag AB i Vetlanda</u>
0900-2006-356: Punkt 2, 4

<u>Revisor Stefan Persson</u>
0900-2006-408: Punkt 1-4

<u>Sabit Mulaj</u>
0900-2006-516: Punkt 1-2

Thomas Langrot

# English Translation

| SWEDISH NATIONAL ECONOMIC CRIMES BUREAU | APPLICATION FOR A SUMMONS | Page 1 (12) |
|---|---|---|

Assistant Chief District Prosecutor Thomas Langrot
1st chamber
08-762 01 63

| | Date | Doc. No. |
|---|---|---|
| | August 8, 2008 | C04-1-50-06 |
| | | Org. code: 920 |

Stockholm District Court
Box 8307
104 20 STOCKHOLM

District Court case: B 6721-06
Document: EK03

| 1 | Defendant: last name and all first names **Johansson, Lars Peter** | | First name **Peter** | Profession/Title |
|---|---|---|---|---|
| | Civil registration number 680118-8555 | Citizen of (if not Swedish) | Telephone | Interpreter required |
| | Address Trädgårdsgatan 3, 753 09 UPPSALA | | | |
| | Public defense counsel Attorney Gösta Bergman | | | |
| | Deprivation of liberty, etc. Arrested in absentia March 20, 2006. Apprehended March 20, 2006 at 6:15 a.m. Detained March 23, 2006. Detention order reversed by prosecutor May 18, 2006 at 9:25 a.m. Travel ban with duty to report announced by prosecutor May 18, 2006. Decision concerning travel ban with duty to report reversed by prosecutor September 8, 2006. | | | |
| | Service of process information | | | |
| 2 | Defendant: last name and all first names **Ahrsjö, Per Erik** | | First name Erik | Profession/Title |
| | Civil registration number 670211-0195 | Citizen of (if not Swedish) | Telephone | Interpreter required |
| | Address Norr Mälarstrand 72, 7 tr 112 35 STOCKHOLM | | | |
| | Public defense counsel Attorney Bertil Malmlöf | | | |
| | Deprivation of liberty, etc. Arrested in absentia March 20, 2006. Apprehended March 21, 2006 at 6:00 a.m. Detained March 24, 2006. Detention order reversed by prosecutor May 18, 2006 at 9:50 a.m. Travel ban with duty to report announced by prosecutor May 18, 2006. Decision concerning travel ban with duty to report reversed by prosecutor September 8, 2006. | | | |
| | Service of process information | | | |
| 3 | Defendant: last name and all first names **Rosengren, Karl Magnus** | | First name Karl | Profession/Title |
| | Civil registration number 720630-7196 | Citizen of (if not Swedish) | Telephone | Interpreter required |
| | Address Riddargatan 29 A   11457 STOCKHOLM | | | |
| | Public defense counsel Attorney Tomas Nilsson | | | |
| | Deprivation of liberty, etc. Arrested in absentia March 19, 2006. Apprehended March 21, 2006 at 6:05 a.m. Released by District Court on March 24, 2006 at 1:10 p.m. | | | |
| | Service of process information | | | |
| 4 | Defendant: last name and all first names **Ågren, Sven Konrad Andreas** | | First name Konrad | Profession/Title |
| | Civil registration number 680924-8534 | Citizen of (if not Swedish) | Telephone | Interpreter required |
| | Address Stopvägen 80, C/O Lillihöök   16836 BROMMA | | | |
| | Public defense counsel Attorney Lars Engstrand | | | |
| | Deprivation of liberty, etc. Arrested in absentia March 20, 2006. Apprehended March 21, 2006 at 6:00 a.m. Released by District Court on March 24, 2006 at 4:00 p.m. | | | |
| | Service of process information | | | |

| Mailing address | Street address | Telephone | Fax |
|---|---|---|---|
| Box 820 101 36 STOCKHOLM | Hantverkargatan 15 | +46 8-762 01 63 | +46 8-762 02 04 |

| SWEDISH NATIONAL ECONOMIC CRIMES BUREAU | **APPLICATION FOR A SUMMONS** | Page 2 (12) |
|---|---|---|
| | Date | Doc. No. |
| | August 8, 2008 | C04-1-50-06 |

| 5 | Defendant: last name and all first names **Lithman, Rutger Mikael Robert** | | First name Mikael | Profession/Title |
|---|---|---|---|---|
| | Civil registration number 581031-1414 | Citizen of (if not Swedish) | Telephone | Interpreter required |
| | Address C/O Cederberg, Rykesstrasse 50, 10405 BERLIN | | | |
| | Public defense counsel Attorney Per Gotthard | | | |
| | Deprivation of liberty. etc. | | | |
| | Service of process information | | | |

| 6 | Defendant: last name and all first names **Eriksson, Bengt Peter** | | First name Peter | Profession/Title |
|---|---|---|---|---|
| | Civil registration number 520211-2594 | Citizen of (if not Swedish) | Telephone | Interpreter required |
| | Address Fakturigatan 43, 561 43 HUSQVARNA | | | |
| | Public defense counsel/attorney | | | |
| | Deprivation of liberty, etc. Arrested March 20, 2006 at 3:00 p.m. Apprehended March 22, 2006 at 9:15 a.m. Released March 22, 2006 at 3:50 p.m. | | | |
| | Service of process information Box 61, 551 12 JÖNKÖPING | | | |

| 7 | Defendant: last name and all first names **Silva Silva, Dagoberto Guillermo** | | First name Guillermo | Profession/Title |
|---|---|---|---|---|
| | Civil registration number 710117-9252 | Citizen of (if not Swedish) CHILE | Telephone | Interpreter required |
| | Address Rotsundagårdsvägen 56 2 tr   19279 SOLLETUNA | | | |
| | Public defense counsel | | | |
| | Deprivation of liberty, etc. | | | |
| | Service of process information | | | |

**Demand for conviction, etc.**

**Evidence, see separate appendix**

## 1. BOOKKEEPING CRIME, felony and OBSTRUCTION OF TAX SUPERVISION, felony (Johansson and Lithman)

Othello Holding AB, 556565-1675, headquartered in Stockholm has ignored its bookkeeping obligations pursuant to the Bookkeeping Act by erroneously entering into its books up to the month of March 1999 that it had an asset equivalent to SEK 70,000,000 in the form of an American city treasury bill and after that also erroneously including in the annual reports for the fiscal years 1999/2000 (September 24, 2001) and 2000/2001 (April 8, 2002) assets equivalent to SEK 70,000,000 in the form of a city treasury bill and bond from the USA and Italy, respectively. The mistake consists of the fact that Othello Holding AB did not have these assets and an equivalent amount of capital stock.

SWEDISH NATIONAL ECONOMIC CRIMES
BUREAU

APPLICATION
FOR A
SUMMONS

Page 3 (12)

Date
August 8, 2008

Doc. No.
C04-1-50-06

Peter Johansson, deputy member of the company, along with and in consultation/collusion with Mikael Lithman, member of the company, in a joint criminal plan to carry out what is called a shell company purchase deliberately allowed the erroneous assets and capital stock described above to be entered into the books and included in the annual reports. As a part of this criminal plan Johansson drew up untrue documents (certificates) from the offshore Bank Crozier in Grenada controlled by him and participated in misleading actions involving a loan. These untrue documents (the certificates) have since served as the basis for or confirmed the bookkeeping actions that were done concerning assets equivalent to SEK 70,000,000. Jeopardy of proof existed.

By ignoring the bookkeeping obligations pursuant to the Bookkeeping Act according to what is stated above, the business's course, income or position could not even be evaluated on the whole with the aid of the bookkeeping. Furthermore, the government's (the tax office) inspection activities in calculating or collecting taxes or fees have been seriously obstructed.

The crime should be considered a felony with respect to the very significant size of the assets and since the crime was of a dangerous nature in issuing untrue bank certificates, occurred systematically and was of an organized nature.

Section of a law

Chapter 11, section 5, of the Penal Code and section 10 of the Tax Penal Act 1971:69.

## 2 – 4 FELONY BOOKKEEPING CRIME, FELONY TAX CRIME and OBSTRUCTION OF TAX INSPECTION, felony (Johansson, Ahrsjö and Rosengren) as well as complicity thereto (Ågren, Silva and Eriksson)

Introduction

Scandinavian Net Logistics AB, headquartered in Stockholm, business registration no. 556650-7801, during the fiscal year October 21, 2003 – August 31, 2004 (the company's first fiscal year), September 1, 2004 – August 31, 2005 and during the period September 1, 2005 – February 21, 2006 according to information submitted in annual reports provided an Internet-based transaction system and retail services for trade and downloadable software. The company also engaged in the trade of digital gift coupons, as well as agency trade in metal raw material as well as trade in hardware.

During the fiscal year October 21, 2003 – August 31, 2004 the net revenue according to the annual report were SEK 2,658,694. For the fiscal year September 1, 2004 – August 31, 2005, the net revenue according to the annual report were SEK 370,497,419.

The company was declared bankrupt on June 27, 2006 by Stockholm District Court, K 14868-06.

Criminal plan

The company's board members, Karl Rosengren (formal representative), Peter Johansson (current representative) and Erik Ahrsjö (current representative), started the business at the company together and in consultation/collusion and thereafter operated the business with knowledge that the company and its activities were in all essentials managed and controlled jointly by them (informal board of directors) and that Rosengren's position in reality was subordinate to Johansson

| SWEDISH NATIONAL ECONOMIC CRIMES BUREAU | APPLICATION FOR A SUMMONS | Page 4 (12) |
|---|---|---|
| | Date | Doc. No. |
| | August 8, 2008 | C04-1-50-06 |

and Ahrsjö who constituted the company's real management from a distance with Rosengren as their outward front.

The criminal plan included that the bookkeeping (current as well as annual reporting) would be misleading concerning where the company's most substantial income came from. During the period of time from September 1, 2004 to August 31, 2005, the majority of income (approx. SEK 295,000,000) came from processing activity (payment intermediation) concerning the Internet/credit card customers from the United States who mostly played/purchased services, etc. on various websites (gaming sites, porn sites and the like). As a part of the misleading [activity], the company produced and offered a payment intermediation system that outwardly gave paying banks and credit card companies misleading information about what was being purchased. The purpose was primarily to aid in circumventing the restrictive rules in the United States concerning Internet gaming and thereby generate profits that will not appear in the company's bookkeeping.

In the criminal plan concerning the Internet trade processing activity a secret joint venture agreement was entered into with Scandinavian Pay System AB (Scandinavian Net Logistics AB's previous firm), Nelldale Ltd. in Gibraltar and ID/Positive SA in Panama concerning cooperation and profit distribution/surplus where neither the agreement nor the profit distribution (final or preliminary) would appear in the bookkeeping for Scandinavian Net Logistics AB. As part of the profit distribution, payments took place via the English company Factor Europé Ltd. controlled by Peter Johansson to foreign companies, banks and accounts belonging to Johansson, Ahrsjö and Rosengren and others. Factor Europé Ltd.'s role was primarily to prevent insight into payment transactions that were brought about or primarily based on the joint venture agreement.

The criminal plan generally included generating payments and profits from the company's activities in such a way that it would not be visible or otherwise clear from the company's bookkeeping that such business events, for which bookkeeping is mandatory, took place. There were concealed with the aid of untrue invoices. The purpose was primarily tax evasion for the representatives and employees or others.

The criminal plan further included paying compensations/salaries/kickbacks from the company's activity to employees or others who provided services in such a way that they would not be visible or otherwise be clear from the company's bookkeeping.

The criminal plan further included profiting from deductions for incoming VAT based on untrue invoices.

Fiscal years October 12, 2003 – August 31, 2004 and September 1, 2004 – August 31, 2005

*Misleading and untrue information in the bookkeeping*

Scandinavian Net Logistics AB ignored its bookkeeping obligations pursuant to the Bookkeeping Act by *booking incorrect business events based on untrue invoices* from Dàcord Software AB, various Donor Companies, Anwizwer IP Trade AB, Unigroup Ltd. in Belize and Scandor Far East Ltd. Hong Kong according to the following. Alleged business events that were booked do not reflect the correct amount, correct issuer of the invoice or what the invoice concerns. The invoices and booked business events do not reflect what happened and lack a basis in reality.

SWEDISH NATIONAL ECONOMIC CRIMES BUREAU

**APPLICATION FOR A SUMMONS**

Page 5 (12)

Date
August 8, 2008

Doc. No.
C04-1-50-06

| Company | Period (booked + announced) | Amount in SEK (net) | VAT paid (declared) | Total (gross) |
|---|---|---|---|---|
| Dàcord Software AB | July 04 (inc. decl.) | 374,761 | 93690 (inc. decl. 05) | 468,451 |
| Dàcord Software AB | July 04 (inc. decl.) | 334,843 | 83710 (inc. decl. 05) | 418,554 |
| Dàcord Software AB | Aug 04 (inc. decl.) | 190,958 | 47,739 (inc. decl. 05) | 238,698 |
| *Total Dàcord:* | | *900,562* | *225,139* | *1,125,703* |
| | | | | |
| Stiftaren [the Founder] 8702 | Dec 04 | 641,642 | 160.411 | 802,053 |
| Stiftaren 8704 | Dec 04 | 608,249 | 152,062 | 760,311 |
| Stiftaren 8705 | Dec 04 | 676,237 | 169,059 | 845,297 |
| Stiftaren 8706 | Dec 04 | 501,877 | 125,469 | 627,346 |
| Stiftaren 8701 | Jan 05 | 364,741 | 91,185 | 455,927 |
| Stiftaren 8701 | Jan 05 | 444,056 | 111,014 | 555,071 |
| Stiftaren 8706 | Jan 05 | 468,962 | 117,240 | 586,203 |
| Stiftaren 8707 | Jan 05 | 598,504 | 149,625 | 748,130 |
| Stiftaren 8708 | Jan 05 | 915,334 | 228,833 | 1,144,168 |
| Stiftaren 8710 | Jan 05 | 404,734 | 101,183 | 505,917 |
| Stiftaren 8711 | Jan 05 | 667,526 | 166,881 | 834,408 |
| Stiftaren 8712 | Jan 05 | 872,424 | 218,106 | 1,090,531 |
| Stiftaren 8713 | Jan 05 | 391,938 | 97,984 | 489,922 |
| Stiftaren 8714 | Jan 05 | 526,476 | 131,618 | 658,095 |
| *Total Stiftaren:* | | *8,082,694* | *2,020,669* | *10,103,363* |
| | | | | |
| Anwizwer IP Trade AB | Aug 05 *(decl. Sept. 05)* | 6,115,608 | 1,528,901 | 7,644,509 |
| *Total Anwizwer:* | | *6,115,608* | *1,528,901* | *7,644,509* |
| | | | | |
| Unigroup Ltd. | Sept 04 | 5,583,797 | | 5,583,797 |
| Unigroup Ltd. | Oct 04 | 17,209,951 | | 17,209,951 |
| Unigroup Ltd. | Nov 04 | 18,803,085 | | 18,803,085 |
| Unigroup Ltd. | Dec 04 | 20,620,561 | | 20,620,561 |
| Unigroup Ltd. | Jan 05 | 33,007,020 | | 33,007,020 |
| Unigroup Ltd. | Feb 05 | 37,385,530 | | 37,385,530 |
| Unigroup Ltd. | Mar 05 | 52,828,023 | | 52,828,023 |
| Unigroup Ltd. | April 05 | 47,820,606 | | 47,820,606 |
| Unigroup Ltd. | May 05 (invoice missing) | 7,073,056 | | 7,073,056 |
| Unigroup Ltd. | May 05 | 7,073,506 | | 7,073,506 |
| *Total Unigroup:* | | *247,405,609* | | *247,405,609 (in the balance sheet 244,319,529 is expensed)* |
| | | | | |
| Scandor Far East Ltd. | Aug 05 | 1,171,423 | | 1,171,423 |
| *Total Scandor:* | | *1,171,423* | | *1,171,423* |
| | | | | |
| *Combined total:* | | *263,675,902* | *3,774,710* | *267,450,623* |

*Incorrect tax declarations*

In tax declarations for the respective period above, Scandinavian Net Logistics AB reported incorrect incoming VAT in the amount that appears above. The incorrect information consists of the fact that the company based the incoming VAT on untrue invoices. There was a risk that tax would be erroneously credited or paid back to the company in the amount stated.

SWEDISH NATIONAL ECONOMIC CRIMES BUREAU | **APPLICATION FOR A SUMMONS** | Page 6 (12)
---|---|---
| Date | Doc. No.
| August 8, 2008 | C04-1-50-06

*Unverified income/expenses (September 1, 2004 – August 31, 2005)*

Scandinavian Net Logistics AB ignored its bookkeeping obligations pursuant to the Bookkeeping Act by not sufficiently confirming what the booked income of about SEK 291,363,644 (net revenue, Internet trade) concerns. According to the Bookkeeping Act, it must be clear what a business event concerns. From the bookkeeping it is not clear what these business events concern. It is not clear what the company sold or who the other party was.

The company booked expenses from/in connection with Internet trade in the amount of approx. SEK 244,000,000. According to the bookkeeping, the Unigroup invoices were entered into the books as the basis for these expenses. The Unigroup invoices are untrue and by rights the company via Factor Europé Ltd. made extensive payments to would-be merchants. It is also not clear from the bookkeeping which merchants received money, how much they received or when the business events took place. Through this procedure, the bookkeeping obligation according to the Bookkeeping Act was ignored.

*Profit distribution/expenses not booked (September 1, 2004 – August 31, 2005)*

Scandinavian Net Logistics AB ignored its bookkeeping obligation according to the Bookkeeping Act by not booking and confirming the profit distributions (preliminary or final) that arose in accordance with the secret joint venture agreement described above under criminal plan. These distributions/payments can be estimated at approx. 20 percent of the total revenues of the processing activity (approx. SEK 295,000,000) or about SEK 60,000,000. It is not clear from the bookkeeping that such a profit distribution occurred and how it was calculated or paid out. The lack of the agreement in the company's accounting information meant that a very important agreement for the company was not available. That meant that the company's actions according to the agreement could not be followed in the bookkeeping or otherwise evaluated by outside parties.

These profit distributions were concealed through the construction with Factor Europé Ltd. whose purpose was primarily to prevent insight into how profits and other payment streams assignable to the joint venture agreement were handled and by the untrue bookkeeping measures with the Unigroup invoices. By concealing the profit distributions/payments significant sums could be utilized by Johansson, Ahrsjö and Rosengren for concealed profit distribution, new investments, "black loans," kickbacks, etc. which were not booked or confirmed in another manner in Scandinavian Net Logistics AB's bookkeeping. These payments took place from Factor Europé Ltd. directly or through Factor Europé Ltd. to people, companies or bank accounts to obstruct investigation and discovery of how the profits were handled. As a part of the criminal plan, the bank accounts at First International Curacao Bank in the Netherlands Antilles were used and then in particular through accounts belonging to the company Verzi Maestro SA in Anquilla.

*The annual report September 1, 2004 – August 31, 2005*

In additions to the deficiencies in the ongoing bookkeeping as described above, Scandinavian Net Logistics AB also ignored its bookkeeping obligation in accordance with the Bookkeeping Act by allowing, in the annual report dated February 21, 2006, the invoices from Unigroup, Anwizwer IP Trade AB, Scandor Far East Ltd. and finally 5 of the Stiftare invoices to be expensed. The annual report also lacks information on the joint venture agreement and the profit distribution above with the consequence that the company's undertakings according to the agreement could not be evaluated.

| | |
|---|---|
| SWEDISH NATIONAL ECONOMIC CRIMES BUREAU | **APPLICATION FOR A SUMMONS**  Page 7 (12) |

| | |
|---|---|
| Date | Doc. No. |
| August 8, 2008 | C04-1-50-06 |

*Effects of the deficiencies in the bookkeeping*

By ignoring its bookkeeping obligation according to the Bookkeeping Act according to what is stated above, the business's course, income or position could not even be evaluated on the whole with the aid of the bookkeeping. Furthermore, the government's (the tax office) inspection activities in calculating or collecting taxes or fees have been seriously obstructed.

*The seriousness of the crime*

The bookkeeping crimes, tax crimes and obstruction of tax inspection should be deemed felonies since the law was ignored in a way that involved a very considerable sum, untrue documents were used and since the crime was committed systematically and was of a particularly dangerous nature.

*Division of responsibility (perpetrator(s) and complicity)*

It is asserted that Johansson, Ahrsjö and Rosengren intentionally in the joint criminal plan described were fully in agreement that the bookkeeping obligation according to the Bookkeeping Act would have to be ignored according to what was described above. With this insight concerning the criminal plan, Johansson, Ahrsjö and Rosengren together and in consultation/collusion conducted the business at the company for the periods in question above and in the manner described above with the intent of producing untrue invoices and submitting them to bookkeeping, hiding profit distributions and not booking them, including defective and misleading information concerning earnings in the bookkeeping, etc., submitting tax declarations with incorrect information and finally that the annual report was consequently misleading.

Johansson together with Ahrsjö particularly encouraged the crime by taking the initiative and participating in producing the joint venture agreement and how the profit distribution would be handled. Johansson also particularly encouraged the crime by, as representative and owner, involving the company Factor Europé Ltd. in the criminal plan and controlling its payment streams and otherwise making sure that Factor Europé Ltd. contributed to the criminal plan.

Johansson also particularly encouraged the crime by issuing instructions and information to have the untrue invoices from Unigroup Ltd. manufactured.

Ahrsjö particularly encouraged the crime by taking the initiative and being responsible for seeing that the untrue invoices from Dacord Software, the Stiftare company, Anwizwer IP Trade AB and Scandor Far East Ltd. were manufactured and after that booked and when the occasion arose served as the basis for incoming VAT that was declared.

In his capacity of controller/financial manager, Ågren intentionally encouraged the crime by allowing the untrue Dacord invoices, the Stiftare invoices, the invoice from Anwizwer IP Trade AB to be booked and contributing to the incorrect VAT on these being declared. In the same capacity Ågren also intentionally encouraged the crime by creating the Unigroup invoices and after that allowing them to be booked. Ågren also intentionally encouraged the crime by aiding in the balancing of the books for the fiscal year September 1, 2004 –

SWEDISH NATIONAL ECONOMIC CRIMES BUREAU

**APPLICATION FOR A SUMMONS**

Page 8 (12)

Date
August 8, 2008

Doc. No.
C04-1-50-06

August 31, 2005 with the consequence that five Stiftare invoices, the invoice from Anwizwer IP Trade AB, Scandor Far East Ltd. and the Unigroup invoices were finally expensed in the annual report as well.

In his capacity as representative of Dàcord Software AB, Silva intentionally encouraged the actions concerning a felony bookkeeping crime and a felony tax crime by, on Ahrsjö's order, issuing the untrue invoices from Dàcord Software AB and making sure that Scandinavian Net Logistic AB received the invoices.

Eriksson intentionally encouraged the actions concerning a felony bookkeeping crime and a felony tax crime concerning the Stiftare invoices by, on someone else's order some time during the month of January 2005, ordering the Stiftare company from a seller of ready-made companies in Vetlanda to then pass on information to someone else concerning the ordered company including information about the business identification number, etc. so that the information could be used to issue the untrue invoices now at issue that served as the basis for bookkeeping and tax declarations in the manner specified above. Eriksson also intentionally encouraged the actions concerning a felony bookkeeping crime and a felony tax crime concerning the invoice from Anwizver IP Trade AB by, on someone else's order during the spring of 2005, aiding in procuring the company (Ersta Tobak as it was then) and after the procurement undertaking various steps (change of name, change of business, location, etc.) so that the company appeared to be a serious business. As a part of his encouragement, Eriksson also passed on information concerning the company to the person who gave him the order who then issued the untrue invoice from Anwizver IP Trade AB.

### Section of law

Chapter 11, section 5, of the Penal Code, 2-4, and section 10 of the Tax Penal Act (1971:69) and chapter 23, section 4, of the Penal Code.

## 5. FELONY TAX CRIME (Johansson)

As a part of the criminal plan described above in prosecution points 2-4, Johansson failed to report income that mainly came from profits described in the criminal plan.

Johansson was obliged to submit a general income tax return for the tax year 2005 to the tax office in Sweden. No return was submitted. The return should have been submitted by May 2, 2006. The failure to submit a return involved a risk that the public was deprived of taxes amounting to a significant sum. The unreported income under the income category of services can be estimated at at least SEK 15,800,000 and with a tax effect of at least SEK 9 million.

The crime should be considered a felony since the combined amount evaded is significant and was a part of a serious organized crime.

### Section of law

Sections 2-4 of the Tax Penal Act (1971:69)

SWEDISH NATIONAL ECONOMIC CRIMES
BUREAU

**APPLICATION FOR A SUMMONS**

Page 9 (12)

Date
August 8, 2008

Doc. No.
C04-1-50-06

## 6. FELONY TAX CRIME (Rosengren)

As a part of the criminal plan described above in prosecution points 2-4, Rosengren, registered in Stockholm, failed to report income for the year 2006 of approximately SEK 6,000,000 which mainly comes from profits described in the criminal plan.

In his 2006 tax return (income year/tax year 2005) to the Swedish Tax Office, Rosengren intentionally submitted incorrect information concerning his income situation as described below.

*Incorrect information concerning loan*

In his return, Rosengren declared that in 2005 he received a loan of SEK 3,813,856 from Factor Europé Ltd. as well as a loan of SEK 360,990 from Scandor East Asia Ltd. This information is incorrect and a reconstruction after the fact, where the amount received should in reality be viewed as compensation/salary according to the criminal plan in prosecution points 2-4 and should be taxed under the income category of services.

*Unreported income*

Rosengren also failed to report income under the income category of services with an additional amount of at least USD 180,000 (approximately SEK 1,260,000) relating to salary/withdrawal in accordance with the criminal plan in prosecution points 2-4. These profit funds were transferred to accounts belonging to him at First International Curacao Bank and were at his disposal in cash during the year 2005.

Rosengren failed to report compensation of SEK 550,000 under the income category of services which regards withdrawal/salary from the company Integrated Capital AB.

Through his conduct Rosengren caused a risk that the public would be deprived of taxes amounting to at least SEK 3,000,000. The crime should be considered a felony because the combined amount evaded is significant, was in certain parts based on untrue documents and was a part of a serious organized crime.

Section of law

Sections 2-4 of the Tax Penal Act (1971:69)

## 7. FELONY BOOKKEEPING CRIME, FELONY TAX CRIME and OBSTRUCTION OF TAX INSPECTION, felony (Rosengren)

In his capacity as representative of Integrated Capital, business identification number 556670-6866, headquartered in Stockholm, Rosengren intentionally ignored his bookkeeping obligations pursuant to the Bookkeeping Act by not booking the business events in an ongoing fashion during the period from November 11, 2004 – December 31, 2005. The bookkeeping was done after the fact on one occasion during the month of March 2006. Furthermore, on May 16, 2005 the company transferred SEK 550,000 to Rosengren's private account at Östgöta Enskilda Bank without it mentioning in the company's accounts that this took place or why. From the accounts, which were misleading, the transaction was booked so that the sum concerns a Factor Europé Ltd. (FE) debt.

Rosengren also failed to rightly book the payment mentioned above as salary for him with the consequence that the company did not report salary of SEK 550,000 and payroll tax of SEK 174,980 in its tax return for the reporting period May

SWEDISH NATIONAL ECONOMIC CRIMES
BUREAU

APPLICATION   Page 10 (12)
FOR A
SUMMONS
Date          Doc. No.
August 8, 2008   C04-1-50-06

2005 with risk of tax evasion.

Ignoring the bookkeeping obligation has meant that the business's course, income or position could not even be evaluated on the whole with the aid of the bookkeeping.

The crime should be considered a felony with respect to the significant sums, misleading bookkeeping, systematic nature and the fact that the crime was of a dangerous nature.

Section of a law

Chapter 11, section 5, of the Penal Code and sections 2, 4, and 10 of the Tax Penal Act (1971:69).

**8. FELONY TAX CRIME (Ahrsjö)**

As a part of the criminal plan described above in prosecution points 2-4, Ahrsjö, registered in Stockholm, intentionally failed to report to the tax office in his income tax return all income for the income year/tax year 2005 and by submitting incorrect information according to what is stated below.

In his 2006 income tax return Ahrsjö failed to report income for the year 2005 of at least SEK 3,441,337, of which SEK 1,470,000 concerns money that went through Verzi Maestro SA to Limmatur KB, SEK 1,171,337 from Scandinavian Net Logistics AB and SEK 800,000 that went via Factor Europé Ltd. to Limmatur KB. The sums paid out should rightly be considered compensation to Ahrsjö, who must be taxed under the income category of services.

There was a risk that the public would be deprived of a significant amount of taxes (SEK 1,700,000).

The crime should be considered a felony since the combined amount being evaded was significant and was part of a felony organized crime.

Section of a law

Sections 2-4 of the Tax Penal Act (1971:69).

**9. FELONY BOOKKEEPING CRIME, FELONY TAX CRIME and OBSTRUCTION OF TAX INSPECTION, felony (Ahrsjö)**

In his capacity as representative of Limmatur KB, business identification number 969649-7040, headquartered in Stockholm, Ahrsjö intentionally ignored his bookkeeping obligation pursuant to the Bookkeeping Act by not booking the sale of a condominium during the 2004 fiscal year for SEK 3,250,000, deposits to Handelsbanken of SEK 733,800 and withdrawals from Handelsbanken of SEK 662,735 as well as during the 2005 fiscal year not booking withdrawals from Handelsbanken of SEK 680,000 and deposits to Handelsbanken of SEK 318,697.

During the year 2005 invoice documents or similar documentation concerning purchases for SEK 248,802 were also missing as well as documentation in the accounts for the year 2005 for SEK 800,000

SWEDISH NATIONAL ECONOMIC CRIMES
BUREAU

**APPLICATION**
**FOR A**
**SUMMONS**
Date
August 8, 2008

Page 11 (12)

Doc. No.
C04-1-50-06

booked to account 2893 "EA own deposits." Supporting documentation is also missing for the booking of deposits during the month of March 2005 in the amount of SEK 1,000,000 (see 37, 38 and 43).

This disregard meant that the business's course, financial income or position could not even be evaluated on the whole with the aid of the bookkeeping.

Ahrsjö also, despite his obligation to do so, intentionally failed to register Limmatur KB's business for VAT in a timely fashion with the Swedish Tax Office. The business, which was liable for VAT, started on December 1, 2004, and the application concerning VAT registration was submitted August 2, 2006. There was a risk that the public would be deprived of taxes.

The crime should be considered a felony considering the significant sums, misleading bookkeeping, systematic nature and that the crime was of a dangerous nature.

Section of law

Chapter 11, section 5, of the Penal Code and sections 2, 4, and 10 of the Tax Penal Act (1971:69).

**10. INJUNCTION AGAINST CARRYING ON A BUSINESS (Johansson, Ahrsjö and Rosengren)**

Since Johansson, Ahrsjö and Rosengren grossly ignored what was incumbent upon them in business activity in accordance with what is stated above, they shall be subject to an injunction against carrying on a business pursuant to the Act (1986:436) Concerning Injunctions against Carrying on a Business.

The crime should be considered a felony considering the significant sums, misleading bookkeeping, systematic nature and the fact that the crime was of a dangerous nature.

Section of law

Sections 1–4 of the Act (1986:436) Concerning Injunctions against Carrying on a Business.

**11. SEIZURE**

The following seizure of evidence is demanded until a judgment or decision bearing legal force exists in the case. The seizure records are listed in the preliminary investigation report in what is referred to as the Net Log part, appendix D, part 4, from pages 196 – 272.

Peter Johansson
0900-2006-340: Point 5 (remaining part of note pad); 0900-2006-350: Points 2-3, 18, 22, 25, 27, 33, 35, 36, 38, 39, 42, 44, 46, 48, 51-54, 58, 60, 80, 81, 82, 83, 84, 85, 88, 89, 91-105; 0900-2006-393: Points 1-34.

Konrad Ågren
0920-06-551: Points 2-3

Peter Eriksson
0900-2006-380: Points 3, 4, 6, 7, 9

SWEDISH NATIONAL ECONOMIC CRIMES
BUREAU

**APPLICATION
FOR A
SUMMONS**
Date
August 8, 2008

Page 12 (12)

Doc. No.
C04-1-50-06

Scandinavian Net Logistics AB in bankruptcy
0900-2006-362: Points 1-58, 60-76; 0900-2006-363: Points 1-67, 69-72, 74-78, 81, 86, 88, 90-93; 0900-2006-364: Points 1-52; 0900-2006-365: Points 1-14; 0900-2006-366: Points 1-7; 0900-2006-367: Point 2; 0900-2006-370: Points 1-2; 0900-2006-371: Points 1-9, 11-33; 0900-2006-372: Points 1-6, 8-10; 0900-2006-373: Points 3-21; 0900-2006-374: Points 1-14, 16-19; 0900-2006-378: Points 1-51; 0900-2006-396: Points 1-2.

Sydsvenska Lagerbolag AB in Vetlanda
0900-2006-356: Points 2, 4

Auditor Stefan Persson
0900-2006-408: Points 1-4

Sabit Mulaj
0900-2006-516: Points 1-2

Thomas Langrot



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Anne Lutz, hereby certify that the document "ansokan om stamning" is, to the best of my knowledge and belief, a true and accurate translation from Swedish into English.

_____
Anne Lutz

Sworn to before me on

August 29, 2008

_____
Signature, Notary Public

Pamela Boyle
Notary Public, State of New York
No. 01BO6181278
Qualified in NEW YORK County
Commission Expires Jan 28, 2012

Stamp, Notary Public